PHILLIP A. TALBERT
Acting United States Attorney
LYNN TRINKA ERNCE
KURT A. DIDIER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 2:21-mc-00098-TLN-AC |
|---|---|
| Plaintiff, | **UNITED STATES OF AMERICA'S RESPONSE TO STEVEN ZINNEL'S CLAIM OF EXEMPTIONS AND REQUEST FOR HEARING** |
| v. | |
| STEVEN ZINNEL, | |
| Defendant and Judgment Debtor. | |
| TD AMERITRADE CLEARING, INC., | |
| Garnishee. | |

**CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. APPLICABLE STANDARDS ....................................................................................... 1

III. ARGUMENT .................................................................................................................. 2

    A. The IRA Is Not Exempt From Garnishment. ..................................................... 2

    B. The United States Properly Served Zinnel. ....................................................... 3

    C. Zinnel Owes The Money And Is Procedurally Barred From Arguing He Does Not. ...................................................................................................................... 5

    D. The United States Can Garnish The Entire IRA Because It Is Not A Trust Asset. ................................................................................................................... 8

        1. Upon Ferris' Death, The Beneficiary Designation Vested The IRA In Zinnel. ...................................................................................................... 8

        2. The IRA Is Not An Asset Of The Castana Trust. ................................... 9

IV. CONCLUSION ............................................................................................................. 10

## I. INTRODUCTION

In the nearly seven years that defendant and judgment debtor Steven Zinnel has been in prison for his federal crimes, he has paid less than $1,000 towards his $3,014,891 judgment.[1] After discovering recently that Zinnel is the sole designated beneficiary of his mother Ardith Ferris' TD Ameritrade individual retirement account (IRA), which vested in Zinnel upon his mother's death in September 2016, the United States commenced this garnishment action under the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001-3308 (FDCPA) to enforce the judgment and recover the approximately $1.5 million in the IRA to pay down Zinnel's fine and the restitution owed to his victims.

Zinnel objects to the garnishment and has requested a hearing on the grounds that: (1) the IRA is exempt property; (2) the United States did not properly serve him with the garnishment documents; and (3) Zinnel does not owe any money under his criminal judgment because the United States forfeited over $3 million of his assets. He also argues that the retirement accounts are part of his mother's Castana Trust and should be distributed equally to him and his brother, David Zinnel. Zinnel's arguments all are baseless and incorrect as a matter of law. Therefore, the Court should deny his claim of exemptions, overrule his objections, deny his request for a hearing, and enter a final order of garnishment for 100% of the IRA, so that all of the funds can be used to pay restitution to Zinnel's victims.

## II. APPLICABLE STANDARDS

The Federal Debt Collection Procedures Act ("FDCPA") "sets forth the 'exclusive civil procedures for the United States . . . to recover a judgment on . . . an amount that is owing to the United States on account of . . . restitution.'" *United States v. Mays,* 430 F.3d 963, 965 (9th Cir. 2005) (quoting 28 U.S.C. §§ 3001(a)(1), 3002(3)(b)) (alterations in original). The Mandatory Victims Restitution Act ("MVRA") provides that the United States may enforce a judgment in accordance with the practices and procedures for enforcing a civil judgment under the FDCPA. 18 U.S.C. § 3664(m)(1)(A)(i); 18 U.S.C. § 3613(a), (f). "A court may issue a writ of garnishment against property . . . in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a).

---

[1] The judgment requires Zinnel to pay a $1,500 special assessment, a $500,000 fine, and $2,513,319 of restitution, for a total $3,014,819 of criminal monetary penalties owed. ECF 386, 653.

UNITED STATES' OPPOSITION TO STEVEN ZINNEL'S REQUEST FOR HEARING

1

After the Court issues a writ of garnishment, the United States serves the writ on the garnishee and the judgment debtor, along with instructions to the garnishee to submit a written answer to the writ, and instructions to the judgment debtor on how to object to the garnishee's answer and obtain a hearing on the objections. 28 U.S.C. § 3205(c)(3). The garnishee must file its answer with the Court and serve its answer on the judgment debtor and the United States. *Id.*, § 3205(c)(4).

The judgment debtor or the United States may file a written objection to a garnishee's answer and request a hearing within twenty (20) days after receipt of the answer. 28 U.S.C. § 3205(c)(5). The objecting party must state the grounds for the objection and bears the burden of proving those grounds. *Id.* Where the judgment is not by default, the issues for the Court at the garnishment hearing are limited to: (1) determining the validity of the judgment debtor's claim of exemption; and (2) the United States' compliance with statutory requirements for issuance of the writ of garnishment. 28 U.S.C. § 3202(d). The statutory clerk's notice of instructions to judgment debtors states that they also can explain to the Court why they believe they do not owe the money that the United States says is owed. 28 U.S.C. § 3202(b); *see* ECF 5-3 at 3.

### III.     ARGUMENT

The Court should overrule Zinnel's objections in their entirety and deny his request for hearing because: the IRA is not exempt; the United States properly served Zinnel with garnishment documents; Zinnel owes $3,014,819 in criminal monetary penalties in addition to the criminal forfeiture; and the IRA passed directly to Zinnel as the sole designated beneficiary, and is not an asset of the Castana Trust.

**A.     The IRA Is Not Exempt From Garnishment.**

The United States may enforce a restitution order through a writ of garnishment against "all property or rights to property of the [defendant]," excluding a limited list of exempt property. 18 U.S.C. § 3613(a). The following types of property are exempt from garnishment: (1) wearing apparel and school books; (2) fuel, provisions, furniture, and personal effects not to exceed $9,790 in value; (3) books and tools of a trade, business, or profession not to exceed $4,890 in value; (4) unemployment benefits; (5) undelivered mail; (6) certain annuity and pension payments; (7) workmen's compensation; (8) judgments for support of minor children; (9) certain service-connected disability payments; and (10) assistance under the Job Training Participation Act. 18 U.S.C. § 3613(a)(1).

Zinnel claims exemptions (1)-(5), (7) and 10.  ECF 23 at 3-4; ECF 20 at 1.  However, on their face and as a matter of law, none of these exemptions apply to the IRA.  Therefore, the Court should deny Zinnel's claim of exemptions and his request for hearing.

### B. The United States Properly Served Zinnel.

The Court should overrule Zinnel's objection that the United States did not serve him with the required garnishment documents because the United States properly served him, and his arguments that he did not receive documents and was prejudiced as a result are meritless.

The FDCPA requires the United States to provide the judgment debtor with notice of the commencement of garnishment proceedings.  28 U.S.C. § 3202(b) (specifying language to be contained in notice to be provided to judgment debtor).  Counsel for the United States must serve a copy of the notice and a copy of the writ of garnishment application on the judgment debtor.  28 U.S.C. § 3202(c).  Once the Clerk of Court issues the writ of garnishment, the United States must serve the garnishee and the judgment debtor with a copy of the writ, instructions explaining the requirement that the garnishee must submit a written answer to the writ, and instructions to the judgment debtor for objecting to the answer of the garnishee and obtaining a hearing on the objections.  *Id.*  The FDCPA requires that the writ be served in accordance with the Federal Rules of Civil Procedure and authorizes nationwide service of process.  28 U.S.C. § 3006.  The Federal Rules authorize service by mail to a person's last known address.  Fed. R. Civ. P. 5(b)(2)(C).

The United States commenced this garnishment action by filing its application for a writ of garnishment on the TD Ameritrade individual retirement account on April 2, 2021.  ECF 1-2.  The Clerk of Court issued the writ of garnishment and the Clerk's notice of instructions to judgment debtor on April 5, 2021.  ECF 3.

On April 7, 2021, the United States served Zinnel's appeals attorney, Guy Michael Tanaka, by FedEx: its writ application; the writ of garnishment; the clerk's instructions to Zinnel regarding the writ, objecting to the garnishee's answer and claiming exemptions; the request for hearing form; information regarding the availability of magistrate jurisdiction; and the form by which to consent or decline to magistrate jurisdiction.  ECF 5; 28 U.S.C. § 3202(c).

UNITED STATES' OPPOSITION TO STEVEN ZINNEL'S REQUEST FOR HEARING

3

On April 20, 2021, the United States re-served Zinnel the entire writ package, plus the related case order, by certified mail to his last known address, FCI Sheridan, P.O. Box 5000, Sheridan, Oregon, 97378, which is the address for inmates at FCI Sheridan.[2]  ECF 9; Fed. R. Civ. P. 5(b)(2)(C) (authorizing mail service to recipient's last known address).  That service package was received at Sheridan on April 26, 2021.[3]

On April 28, 2021, Zinnel signed and served a Notice of Change of Address to FPC Sheridan, P.O. Box 6000, Sheridan, Oregon, 93738-6000, which is the address for the Satellite Camp at FCI Sheridan.[4]  ECF 16. That same day, he also signed and served his request for hearing (ECF 20), special appearance notice (ECF 17), recusal motion (ECF 18), motion to appoint co-counsel (ECF 19), request to transfer venue (ECF 21) waiver of physical presence (ECF 22), and claim of exemptions (ECF 23). All eight of these documents were filed on May 3, 2021.  ECF 16-23.

On May 3, 2021, the United States served Zinnel with garnishee TD Ameritrade's writ acknowledgment and answer at the P.O. Box 5000 address.  ECF 15.  That package was received at Sheridan on May 6, 2021.[5]

Based on Zinnel's change of address notice, on May 14, 2021, the United States re-served by certified mail all the documents that it previously served on Zinnel (via his attorney and P.O. Box 5000) to P.O. Box 6000, and included copies of the Postal Service delivery confirmations for the previous service packages.  ECF 28.  The all-inclusive service package the United States sent to Zinnel at P.O. Box 6000 was received at Sheridan on May 17, 2021.[6]

---

[2] *See* How to send things here, Inmate Mail https://www.bop.gov/locations/institutions/she/ (address for inmates at the FCI) (last visited 6/1/2021).

[3] *See* Delivery Confirmation at https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=3&text28777=&tLabels=70131090000120876922%2C%2C&tABt=false (last visited 6/2/2021).

[4] *See* How to send things here, Inmate Mail https://www.bop.gov/locations/institutions/she/ (address for inmates at the Camp) (last visited 6/1/2021).

[5] *See* Delivery Confirmation at https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=2&text28777=&tLabels=70180360000065863531%2C (last visited 6/2/2021).

[6] *See* Delivery Confirmation at https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=3&text28777=&tLabels=70180360000065863555%2C%2C (last visited 6/2/2021).

Zinnel signed and served by mail ten more pleadings on May 16, 2021 – the day before the United States' service package was received at the P.O. Box 6000 address. ECF 29-38. He signed and mailed an additional four pleadings on May 17, 2021 – the same day that the United States' service package was received at the P.O. Box 6000 address. ECF 40-43.

All told, despite his complaints that the United States did not properly serve him, Zinnel was able to prepare, sign and serve twenty-two pleadings before ever receiving the United States' service package mailed to his new P.O. Box 6000 address. Zinnel's contentions that he did not receive the United States' earlier mailings, or that he was prejudiced because the United States initially served him at P.O. Box 5000, rather than P.O. Box 6000, are implausible and unfounded. Therefore, the Court should overrule his objection to the garnishment on service of process grounds and deny his hearing request.

### C. Zinnel Owes The Money And Is Procedurally Barred From Arguing He Does Not.

The Court should overrule Zinnel's objection that the United States cannot garnish the IRA because he does not owe the over $3 million in restitution the United States says he owes. ECF 20 at 8. Zinnel claims that, because the United States seized and forfeited assets exceeding $3 million, the forfeited assets, plus the minimal amount he has paid through the IFRP, have fully paid the special assessment, fine, and restitution, and the United States has over-collected on his debt. ECF 37 at 2. Not only is Zinnel incorrect as a matter of law, but he is procedurally barred from making this argument.

First, Zinnel's argument is legally incorrect because it fails to recognize that the Court ordered both the payment of criminal monetary penalties of the assessment, fine and restitution against Zinnel (ECF 653 at 7-9) and forfeiture of his assets, which are separate and distinct remedies with different purposes, and that both forfeiture and restitution are enforceable. As the Ninth Circuit explained in *United States v. Newman*, 659 F.3d 1235 (9th Cir. 2011):

> Congress conceived of forfeiture as *punishment* for the commission of various crimes. The purpose of restitution . . . however, is not to punish the defendant, but to *make the victim whole again* by restoring to him or her the value of the losses suffered as a result of the defendant's crime.

*Id.* at 1241 (internal citations and quotations omitted, emphases in original). Thus, "defendants may be required to pay restitution and forfeit the same amounts." *Id.* (quoting *United States v. Boulware*, 384

F.3d 794, 813 (9th Cir. 2004)).  The Ninth Circuit has soundly rejected Zinnel's double-recovery argument, by making clear that:

> Because "restitution and forfeiture are distinct remedies, ordering both in the same or similar amounts does not generally amount to a double recovery . . . Paying restitution plus forfeiture at worst forces the offender to disgorge a total amount equal to twice the value of the proceeds of the crime. Given the many tangible and intantible costs of criminal activity, this is in no way disproportionate to the harm inflicted upon government and society by the offense.

*Id.* (quoting *United States v. McGinty*, 610 F.3d 1242, 1247-48) (10th Cir. 2010)).  Thus, the Ninth Circuit held that requiring defendants to pay both restitution and criminal forfeiture "is not an impermissible double recovery" (*Id.* at 1241) and the district court erred to the extent it reduced or eliminated criminal forfeiture because of restitution.  *Id.* at 1242.

Likewise, in *United States v. Davis,* 706 F.3d 1081 (9th Cir. 2013), the Ninth Circuit found that ordering a defendant to pay both forfeiture and restitution to the federal government did not result in an impermissible double recovery, and the defendant was not entitled to any offset, because:

> The two payments represent different types of funds: punitive and compensatory. They are different in nature, kind, and purpose. Money levied as a punitive fine does not "double" the money intended to compensate a loss any[]more than the addition of apples to one's store doubles the orange stock. Nor is the collection of forfeiture and restitution based on the same crime an impermissible doubling insofar as a defendant is concerned.

*Id.* at 1084 (citing *Newman* 659 F.3d at 1241).  Accordingly, Zinnel's argument that he does not owe the money because the United States seized and forfeited his assets fails, and the Court should overrule his objection.[7]

---

[7] Forfeited assets become property of the United States. *See* 18 U.S.C. § 982(a)(1) (property is forfeited to the United States); 21 U.S.C. § 853(c) (title to forfeited property vests in United States at the time of the crime giving rise to the forfeiture).  The Civil Asset Forfeiture Reform Act (CAFRA) leaves to the Attorney General (acting through the Chief of the U.S. Department of Justice's Money Laundering and Asset Recovery Section) discretion to remit or restore forfeited funds to victims who incurred a pecuniary loss (*See* 21 U.S.C. § 853(i)(1); 28 C.F.R. 9.1(b)(2), 9.8), 18 U.S.C. § 981(e)).  "Requiring district courts to attempt to apply forfeited funds toward restitution would not carry out CAFRA's mandate, but rather, would conflict with the grant of discretion CAFRA expressly and specifically gives to the [Attorney General]." *United States v. Bright,* 353 F.3d 1114, 1124 (9th Cir. 2004).  Likewise, "[n]othing in the MVRA requires district courts "to reach out and order the government to transfer forfeited funds from government entities to victims.  If anything, there is some indication to the contrary." *Id.* (citing 18 U.S.C. § 3664(p)).  "Although CAFRA and the MVRA evince Congress' concern that crime victims receive appropriate restitution, neither statute mandates the transfer of forfeited funds to victims." *Id.* at 1125.  And even if the Attorney General were to decide to remit or restore forfeited assets to Zinnel's victims, forfeited funds can only be paid towards restitution,

Alternatively, or additionally, the Court should overrule Zinnel's objection that he does not owe the money because he is procedurally barred from making that argument here. This Court's judgments in this case have always included four separate monetary components: restitution, fine, forfeiture, and special assessment. In the 2014 judgment, the restitution amount was not reduced or otherwise affected by the forfeiture. *See* Criminal Case, ECF 386. In 2018, the Ninth Circuit upheld on appeal each monetary component of the Court's judgment. *Id.,* ECF 431.

On remand for resentencing on the confinement component of his sentence, Zinnel filed pro se papers asking the Court to compel the government to use its forfeiture funds to pay Zinnel's restitution creditors and, he hoped, reduce Zinnel's restitution obligation. *Id.,* ECF 409. This Court struck that filing because it decided not to allow Zinnel to proceed both pro se and with appointed counsel. *Id.*, ECF 428. Zinnel appealed the order to strike. *Id.*, ECF 434, 436. The Ninth Circuit affirmed. *See United States v. Zinnel*, Case No. 18-10061, ECF 17 (9th Cir. Nov. 8, 2018).

In 2019, after a multi-day resentencing, the Court again entered a judgment that included four separate monetary components: restitution, fine, forfeiture, and special assessment. Criminal Case, ECF 653. The Court did not adopt Zinnel's view that assets that the government had collected for forfeiture should in any way operate to reduce or discharge Zinnel's restitution obligation. At this writing, Zinnel's appeal of his resentencing is pending and has been submitted on the papers. His brief, which he has also partially filed in this Court, does not include any claim that his restitution obligation should be somehow affected by the amount of criminal proceeds that he forfeited. *See id.,* ECF 667. Indeed, Zinnel argued to the Ninth Circuit that his term of incarceration is too long because, in part, "The goal of obtaining restitution is better served by a non-incarcerated and employed defendant." *Id.,* ECF 667 at 50.

The law is equipped to deal with a litigant to complains of issues in district court but fails to raise them before the Ninth Circuit. In 2018, the Ninth Circuit affirmed the restitution component of the

---

and cannot be used to pay his $500,000 fine. *See United States v. Trotter,* 912 F.2d 964, 966 (8th Cir. 1990) (defendant cannot use forfeited funds to offset or satisfy fine); *United States v. Judge,* 413 Fed. App'x. 340, 342 (2d Cir. 2011) (defendant could not offset his fine for the amount forfeited, whether forfeiture was civil or criminal, because criminal and civil forfeiture statutes require forfeiture to be in addition to any other penalty).

judgment. Thus, in 2019, this Court was entirely correct to reimpose each monetary component of its original judgment. Since then, Zinnel has failed to present to the Ninth Circuit his meritless theory that money collected pursuant to one separate monetary penalty (forfeiture) can somehow be made to reduce or discharge his obligation under another monetary penalty (restitution). Thus, he has forfeited this issue. *See United States v. McChesney*, 871 F.3d 801, 809–10 (9th Cir. 2017) (issue not raised in earlier appeal is forfeited in subsequent litigation); *United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008) (forfeiture of issue by failure to appeal applies to restitution).

### D. The United States Can Garnish The Entire IRA Because It Is Not A Trust Asset.

According to garnishee TD Ameritrade, Steven Zinnel is the owner of the TD Ameritrade IRA as the sole beneficiary of Ardith Ferris' account. ECF 8. Zinnel objects that the IRA is an asset of Ferris' Castana Trust and should be split and distributed equally between him and his brother, David. He is incorrect because, under California law, the beneficiary designation effected a non-probate transfer of the IRA to Zinnel upon Ferris' death in September 2016, and because Ferris never took the steps required to add the IRA to the Castana Trust, so the IRA is not a trust asset.

#### 1. Upon Ferris' Death, The Beneficiary Designation Vested The IRA In Zinnel.

The beneficiary designation on record at TD Ameritrade identifies Zinnel as the sole beneficiary of the IRA. ECF 11-1 at 2. Under California law, "[a] provision for a nonprobate transfer on death in an . . . individual retirement plan . . . is not invalid because the instrument does not comply with the requirements for execution of a will, and this code does not invalidate the instrument." Cal. Prob. Code § 5000(a). This includes a "written provision that moneys or other benefits due to, controlled by, or owned by a decedent before death shall be paid after the decedent's death to a person whom the decedent designates either in the instrument or in a separate writing . . ." *Id.* § 5000(b)(1).

The comments to Probate Code section 5000 make clear that the purpose of the statute is to allow transfers upon death that avoid probate. *See id.,* cmt. 3 ("The sole purpose of this [Section 5000] is to prevent the transfers covered by the section from being treated as testamentary"). Thus, "[s]ection 5000 explicitly recognizes the validity of nonprobate transfers upon death . . . in an . . . individual retirement plan . . ." *Estate of Petersen*, 28 Cal. App. 4th 1742, 1751 (1994) (holding that an annuity

UNITED STATES' OPPOSITION TO STEVEN ZINNEL'S
REQUEST FOR HEARING

8

contract fits the broad description of section 5000 and "the written instructions for payment to the survivor upon the death of the owner or spouse should be given effect").

Under Probate Code section 5000, when Ferris died in September 2016, her interest in the IRA immediately became 100% vested in Zinnel directly, by operation of law. *See Estate of Davis*, 171 Cal. App. 3d 854, 857-58 (1985) (upon her death, title to decedent's two IRAs did not become an asset of her estate, but rather, vested and passed to respondent, whom she had designated as the beneficiary of the accounts); *see also Gossett v. Jackson,* 2019 WL 1782863, at *5 (Apr. 24, 2019) (holding that superior court's determination that an IRA with beneficiary designation was a nonprobate asset, and that the IRA was to be distributed equally to the two named beneficiaries, was not an appealable order). Therefore, the United States can garnish the entire 100% of Zinnel's interest in the IRA. 28 U.S.C. § 3205.

## 2. **The IRA Is Not An Asset Of The Castana Trust.**

Zinnel incorrectly argues the IRA became a Trust asset. Specifically, that the IRA distribution, though governed by its beneficiary designation, nonetheless constituted unspecified remainder property under Article 5.4 of the Trust and Article 3.1[8] of Ferris' will. *See* ECF No. 11, p. 2. ¶ 4f.

Trusts are contracts and should be interpreted as such. *Goldin v. Bartholow*, 166 F.3d 710, 715 (5th Cir. 1999). Ferris' Trust, by its express terms, is to be construed in accordance with California law. ECF No. 11-1, p. 29, Article 8.10. Under California law, interpretation of an unambiguous trust term is solely a judicial function to be performed without any further extrinsic evidence. *Ammerman v. Callender*, 245 Cal.App.4th 1058, 1073, 200 Cal.Rptr.3d 38, 49 (2016). The salient terms of Ferris' Trust are clear; indeed, her treatment of another Trust asset demonstrates she understood the meaning of her own trust.

Article 2.2 of the Trust specifies how Ferris, as trustee, was to add property to her Trust. This article, entitled Additions to Trust ECF No. 11-1, p. 11, states, "Any additions to the trust shall be made by designating in writing the property to be added." Assets could also become trust property by the "titling of any *account,* deed, or similar asset in the name of the trustee, as trustee of the trust. . . ." Emphasis added. According to the plain meaning of Article 2.2, accounts, such financial or retirement

---

[8] Article 3.1 of the will does not apply as the Trust has not, to the government's knowledge, been revoked, terminated, or declared invalid.

UNITED STATES' OPPOSITION TO STEVEN ZINNEL'S
REQUEST FOR HEARING

9

accounts constitute specific assets requiring written acceptance by (at the time) Ferris as trustee. The difference between a specific asset such as the IRA, and unspecified remainder items is significant.

Specific assets pass to the Trust beneficiaries pursuant to Article 5.3, not 5.4. ECF No. 11-1, p. 16. Article 5.3 incorporates by reference Schedule 1 of the Trust. Schedule 1 sets forth the specific assets to be distributed upon Ferris' death. *Id.*, at p. 33. The Schedule 1 asset list reads "None at this time." Ferris knew how to add specific assets to her Trust. She transferred title to her Rancho Cordova home to her Trust by grant deed in March 2009. *Id.*, at p. 6. Despite the Trust's plain terms and her understanding of those terms, Ferris never added the IRA to her Trust, nor did she change the IRA beneficiary designation to name herself as trustee of the Trust. Therefore, by the Trust's plain terms, the IRA never became part of the Trust.

## IV.   CONCLUSION

For all of the reasons argued herein, the Court should deny Zinnel's claim of exemptions, overrule his objections to garnishment, deny his request for a hearing, and enter a final order of garnishment for 100% of the IRA in favor of the United States.

Dated:  June 2, 2021

PHILLIP A. TALBERT
Acting United States Attorney

/s/ *Lynn Trinka Ernce*
LYNN TRINKA ERNCE
Assistant United States Attorney