**Steven Zinnel**, #66138-097

Federal Correctional Institution
FPC Sheridan
P.O. Box 6000
Sheridan, OR 97378-6000

Defendant in Pro Se

**FILED**

JUL 0 2 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>STEVEN ZINNEL,<br><br>Defendant and Judgment Debtor.<br><br>TD AMERITRADE CLEARING, INC.,<br>(and its Successors and Assignees)<br><br>Garnishee. | Case No.: 2:21-mc-00098-**TLN**<br>Criminal Case No.: 2:11-cr-00234-TLN<br><br>**DEFENDANT STEVEN ZINNEL'S**<br>REPLY TO UNITED STATES OF<br>AMERICA'S RESPONSE TO STEVEN<br>ZINNEL'S CLAIM OF EXEMPTIONS<br>AND REQUEST FOR HEARING [ECF #47] |

Defendant and alleged judgment debtor Steven Zinnel ("Zinnel")
hereby Replies to the United States of America's Response to
Steven Zinnel's Claim of Exemptions and Request for Hearing
[ECF #47] as follows:

///

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES

I.   INTRODUCTION

To paraphrase Adlai Stevenson, "If the government lawyers stop lying about me, I will stop telling the truth about them." Both in this case, and the underlying criminal case, the government lawyers, now at six, have lied to this court, cheated, and tried to win at all costs.  There is a Latin legal principle that says "False in uno, falsus in omnibus," which translates to "False in one thing, false in everything." As demonstrated herein, this Latin legal principle applies in Zinnel's cases.

Zinnel opposes the government's latest specious actions for many compelling reasons.  First, Zinnel does not owe any money in the underlying Criminal Case and the government has actually over-collected $135,310.14 in the Criminal Case that should be returned to Zinnel. Second, Zinnel as a trust beneficiary, has no legal title or ownership interest in trust assets.  Third, the criminal monetary penalties assessed in the underlying criminal case have not become a debt yet under the FDCPA until Zinnel's available challenges are resolved.  Fourth, Plaintiff United States of America and its attorneys have not complied with statutory requirements for the issuance of the post judgment remedy.  Fifth, the property the United States is seeking is exempt under an applicable exemption. Sixth, the Sacramento Superior, Probate Division will decide the question of the Castana Trust's ownership of assets.

1   On a clarification matter, as this Memorandum cites

2   court-filings in four (4) different cases filed in the

3   United States District Court, Eastern District of California,

4   (Sacramento), Zinnel will refer to court-filings in the cases:

5       United States v. Steven Zinnel,
        Case No. 2:11-cr-00234-TLN      as "Criminal Case"

6

7       United States v. Steven Zinnel / TD Ameritrade,
        Case No. 2:21-mc-00098-TLN-AC   as "Misc. Case #1"

8       United States v. Steven Zinnel / David Zinnel, Castana,
        Case No. 2:21-mc-00143-TLN-CKD  as "Misc. Case #2"

9

10      United States v. Steven Zinnel / David Zinnel,
        Case No. 2:19-mc-00242-TLN      as "Subpoena Case"

11

12  Based on this Memorandum, the attached exhibits, and

13  all the court-filings in the above deliniated cases, the

14  court should stop all collection efforts by the government,

15  order the government to return to Zinnel the $135,310.14

16  that it has over-collected in the Criminal Case, order the

17  Bureau of Prisons to stop collecting Inmate Financial

18  Responsibility Payments from Zinnel, and terminate the

19  Writ of Continuing Garnishment issued in this case.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

3

1    II.    ZINNEL DOES NOT OWE ANY MONEY IN THE UNDERLYING
          "CRIMINAL CASE" AND THE GOVERNMENT HAS ACTUALLY
2           OVER-COLLECTED $135,310.14 THAT SHOULD BE RETURNED

3       On May 6, 2019, Zinnel was resentenced for a second
4 time to the longest sentence in the history of the United
5 States for Bankruptcy Fraud. Zinnel's 152-month prison
6 sentence exceeds the longest sentence ever in a bankruptcy
7 fraud case by 25%. (see Criminal Case ECF #585-9, pgs. 2-5).
8 Similarly situated bankruptcy fraud defendants were sentenced
9 to an average of 19 months imprisonment with the longest
10 prison sentence being 78 months. (see Criminal Case
11 ECF nos. 585-7, pgs. 3-26 and 615, pgs. 11-14). Nevertheless,
12 on May 15, 2019 the district court filed a Second Amended
13 Judgment in Criminal Case. (see Criminal Case ECF #653).
14 The Second Amended Judgment ordered Zinnel to pay a
15 Special Penalty Assessment of $1,500, Victim Restitution of
16 $2,513,319, and the statutory maximum fine of $500,000.
17 (Criminal Case ECF #653). The total ordered is thus
18 $3,014,819. Attached hereto as Exhibit A is a true and
19 correct copy of the U.S. Courts Case Inquiry printed on
20 1/11/21 that reflects the Total Ordred was $3,014,819. The
21 printout reflects that since Zinnel has been incarcerated,
22 for almost eight (8) years now, the Bureau of Prisons
23 has collected $25 from Zinnel as of 1/11/21, through the
24 Inmate Financial Responsibility Program pursuant to the
25 operative judgment. (Criminal Case ECF #653).

26       In April of 2014, Zinnel and the government agreed and
27 stipulated to restitution so that the funds the government

1  had marshalled to date, $3,025,210 as of April 2014, would
2  be immediately paid to the restitution recipients including
3  $150,000 to each of Zinnel's children so they both had
4  money for college. (see Criminal Case ECF #615, pg. 359;
5  Exhibit B). On April 1, 2014, Zinnel's attorney Suzanne
6  Luban sent an email to government attorney AUSA Kevin
7  Khasigian memorializing the agreement. (see Criminal Case
8  ECF #586-4, pg. 10). Attached hereto as Exhibit B is a
9  true and correct copy of Suzanne Luban's April 1, 2014
10 email. The same day, Zinnel's attorney and two of the
11 government attorneys entered into a fromal Stipulation and
12 Order Re: Restitution that provided Zinnel's children with
13 $150,000 each for college. (see Criminal Case ECF nos.
14 343 and 586-4, pgs. 11-13). Attached hereto as Exhibit C
15 is a true and correct copy of the Resitution Stipulation.

16     When Zinnel moved to stay the sale of real property
17 forfeited prior to sentencing, the government opposed the
18 motion to stay. (Criminal Case ECF nos. 314, 586-4, pgs. 2-5)
19 Attached hereto as Exhibit D is a true and correct copy of
20 relvant portions of the government's opposition to the
21 Motion to Stay. Plaintiff's Opposition filed on March 3, 2014
22 stated:

23         "The only way that he would be prejudiced by
           forfeiture and liquidation of these assetes
24         would be that they could generate funds that
           the Attorney General could in his discretion
25         direct to Zinnel's victims (including his
           ex-wife). Zinnel's spite is a sentencing
26         factor, not a basis for a motion to stay."
           (Exhibit D, p. 1)
27

                               5

1  The court-filed Opposition to the Motion to Stay was signed

2  by and filed by Plaintiff's lawyer AUSA Kevin Khasigian.

3  (Criminal Case ECF #314).

4      Rule 11 of the Federal Rules of Civil Procedure imposes

5  a duty upon lawyers who sign court-filings.  With each

6  court-filing by a lawyer for the government, Rule 11

7  creates a certification that the "legal contensions are

8  warranted by existing law" and that "the factual contensions

9  have evidentiary support."  Barrels of ink have been spilt

10 in judicial opinions, scholarly journals, trade publications,

11 and legal education conferences on Rule 11 and Zinnel will

12 not spill any more ink regarding the Rule 11 certification

13 and sanctions that may be imposed here.

14     In Plaintiff's Opposition to the Motion to Stay, AUSA

15 Kevin Khasigian represented to the court, restitution

16 recipients, and Zinnel that any funds forfeited from Zinnel

17 can be used to pay restitution recipients and the government

18 and its lawyers wanted to use forfeited funds to pay the

19 restitution recipients right away.  However, contrary to

20 the government lawyers' lofty representations to the court

21 about getting the victims paid, it took the government until

22 March and June of 2016 to sell the property.  Therefore, it

23 took the government 756 days to sell the property that the

24 government lawyers represented to the court on March 3, 2014

25 was "expensive to maintian."  (Criminal Case ECF nos. 615,

26 p. 359; 314).

27 ///

6

1   Additionally, in Plaintiff's Opposition to Zinnel's

2  Motion to Stay Forfeiture, AUSA Kevin Khasigian wrote, and

3  four government attorneys certified under Rule 11 the following:

4      "After all, forfeiture is designed to create a
5      pool of assets from which victims can be reimbursed."

6      "Delaying foreefeiture 'will only prolong the ability
       of [Defendant's] victims to receive distributions...
       and would serve to further harm [them].'
7      See United States v. Davis, No. 07-cr-011, 2009 WL
       2475340, at *3 (D. Conn. June 15, 2009)."
8

9      "Simply put, the sooner the properties are sold the
       better off Zinnel's victims will be."

10     [Exhibit D, Criminal Case ECF #314, p. 5]

11     Therefore, four (4) government lawyers have represented

12  and certified under Rule 11 in April of 2014, that all

13  forfeited funds in the Criminal Case would be used to pay

14  the restitution recipients including $150,000 to each of

15  Zinnel's children for college.  Zinnel's two children have

16  now graduated from college but yet the government lawyers

17  who are sitting on $3,149,604.14 in marshalled funds, refuse

18  to pay the restitution recipients.  In agravation, the same

19  government lawyers are attempting double-dip by trying to

20  collect in two peniding garnishment proceedings.

21     Four government lawyers have represented to Judge Troy

22  L. Nunley, Zinnel's lawyers, and to Zinnel in a court-filing

23  in April 2014 that "forfeiture is designed to create a

24  pool of assets from which victims can be reimbursed" and

25  that the government lawyers wanted to get the restition

26  recipients paid right away.  (Exhbit D; Criminal Case ECF #314).

27  The same government lawyers should be stopped from taking a

    contrary position here.

1   On September 21, 2016, Plaintiff's lawyer AUSA Kevin
2   Khasigian sent an email to Zinnel's attorney Suzanne Luban
3   admitting Plaintiff United States had marshalled $3,149,604
4   in assets in Zinnel's Criminal Case, but "No funds have
5   been applied to restitution or the fine." (emphasis added).
6   (Criminal Case ECF #586-4, p. 19).   Attached hereto as
7   Exhibit E is a true and correct copy of AUSA Kevin Khasigian's
8   September 21, 2016 email.   The September 16, 2016 email was
9   a sentencing exhibit and was brought to the court's attention
10  in Zinnel's Sentencing Memorandum.   (Criminal Case ECF nos.
11  586-4, p. 19, 615, p. 360).

12  After Zinnel received AUSA Khasigian's representations
13  to another lawyer in an email regarding the funds Plaintiff
14  had marshalled for the restitution and fine, over the next
15  year, Zinnel wrote several letters to Plaintiff's lawyers
16  trying to get Plaintiff United States to pay the restitution
17  recipients, including Zinnel's children paid.   Plaintiff's
18  counsel did not respond to Zinnel's letters.   Therefore, on
19  December 5, 2017, Zinnel filed a Motion to Enforce the
20  Judgment and Hold Plaintiff and its lawyers in contempt of
21  court for failing to pay the restitution recipients including
22  Zinnel's children $150,000 for college.   (Criminal Case
23  ECF nos. 409, 586-4, pgs 21-40).   Attached hereto as Exhibit
24  F is a true and correct copy of Zinnel's Notice of Motion and
25  Motion to Enforce the Judgment and hold Plaintiff and its
26  attorneys in contempt of court.
27

8

1    The Department of Justice, Asset Forfeiture and
2  Money Laundering Section ("AFMLS") published in 2016 an
3  "Asset Forfeiture Policy Manual" that is a compilation of
4  policies governing the Department of Justice Asset Forfeiture
5  Program.  The purpose of the Policy Manual is to provide
6  Department of Justice prosecutors with a reference manual
7  containing the policies and procedures of the DOJ.  For his
8  resentencing in May 2019, Zinnel filed relevant portions of
9  the AFMLS "Asset Forfeiture Policy Manual" as a sentencing
10 exhibit.  (Criminal Case ECF #586-4, pgs. 58-68),  Attached
11 hereto as Exhibit G is a true and correct copy of the
12 relevant portions of the Policy Manual that Zinnel filed
13 with the court with Zinnel's hand-written notations on the
14 pages.  The DOJ "Asset Forfeiture Policy Manual" states in
15 relevant part:

16    This procedure enables the Attorney General to transfer
17    forfeited funds to a court for satisfaction of a
       criminal restitution order.  (Exhibit G; 586-4 p. 59)

18    Potential victims must be notified of the opportunity
19    to file a petition for remission.  (Ex. G; 586-4 p. 60)

20    Restoration...The Restoration Procedures enable the
       government to complete the forfeiture.  This permits
21    victims to obtain fair compensation from the
       forfeited assets, in accordance with the court's
22    restituion order.  (Ex. G; 586-4 p. 63)

23    Payment will be made only in accordance with the court's
       restitution order.  (Ex G; 586-4 p. 65)

24    Is a prosecutor bound, ethically or otherwise, to
25    forego forfeiture in favor of restitution? (586-4 p. 67)

26

27

1       Department of Justice policy is to collect and
2       marshall assets for the benefit of victims. (586-4 p.67)

3       Thus, a prosecutor who uses forfeiture tools as a
      means to provide remission or restoration of assets
4       to crime victims fulfills any oblegation that
      the prosecutor may have under the Justice for All
5       Act to crime victims.  (Ex. G; 586-4 p. 68)

6       The government uses forfeited property to
      recompense victims of crime.  (Ex G; 586-4 p. 68)

7

8       Attached hereto as Exhibit H are relevant portions of

9  Zinnel's Sentencing Memorandum (Criminal Case ECF #615),

10  informing the court and Plaintiff's counsel that the

11  restitution, fine, and special assessment in this case are

12  paid.

13       An attorney can never lie to another attorney

14       Plaintiff's attorney AUSA Kevin Khasigian's representations

15  to Zinnel and his attorney in the September 21, 2016 email

16  (Exhibit E; Criminal Case ECF #586-4 p. 19) and Opposition to

17  Motion to Stay (Exhibit D; Criminal Case ECF #314) are

18  party-opponent admissions which is a hearsay exception under

19  Federal Rules of Evidence 801(d)(2)

20       Not only is AUSA Kevin Khasigian an attorney, but he

21  is a federal prosecutor with a heightened duty to be honest.

22       In the Criminal Case, for Zinnel's May 2019 resentencing,

23  Zinnel briefed that an attorney can never lie to another

24  attorney.  (Criminal Case ECF nos. 615, pgs. 244-248;

25  586-7, pgs. 27-66).

26

27

1      *  Rules of professional conduct impose a duty of candor
2         to the court and opposing counsel;

3      *  In its simplest application, Rule 4.1(a) merely codifies
        a simple proposition: although lawyers are supposed to
4         be zealous partisans of their clients, they must draw
        the line at lying.  A lawyer must not make
5         misrepresentations to a court or another lawyer.
        Rule 4.1(a) recodifies the traditional rule that a
6         lawyer's word is his bond.  (Criminal Case ECF nos.
        615, p. 245; 586-7, p. 3).

7      *  The failure to disclose a material fact is an ethical
8         violation...A lawyer's responsibility to act with
        candor and honesty necessarily requires disclosure
9         of significant facts, even though the disclosure
        might not be in the interest of the client.
10       (Criminal Case ECF nos. 615, p. 245; 586-7, p. 43).

11       Here is the propper accounting:

12

Total funds with U.S. Attorney's Office
13   and the Court                         $3,150,129.14
Total ordered in judgment           -$3,014,819.00
14 Total Amount Plaintiff has over-collected   $   135,310.14

15       Zinnel addressed getting the victims paid
      at his resentencing on May 3 & 6, 2019
16

17       During his resentencing proceeding, Zinnel told the

18 court and Plaintiff's counsel that "if the litigation ends

19 today, then there is no execuse for the Government or for

20 AUSA Matthew Segal not to get the victims paid."

21 Attached hereto as Exhibit I are true and correct copies

22 of relevant pages of Zinnel's resentencing in the Criminal

23 Case for May 3, 2019 and May 6, 2019 with Zinnel's hand-

24 written notations on them.  Zinnel told the court that

25 he wants to stop litigating.  (Ex I, p. 315).  However,

26 Zinnel also stated his resolve to fight for what's right

27 is still strong and Zinnel will litigate if necessary.

Ex, I, p. 315).

1    Zinnel told the court that this litigation can end

2  today at this resentencing if just punishment is imposed and

3  the sentence promotes respect for the law.  And if Zinnel

4  was sentenced to what similarly situated bankruptcy fraud

5  defendants receivd which was between 19 and 36 months of

6  imprisonment.  (Ex. I, p. 315).

7      Zinnel further stated:

8    "If this right sentence is imposed, the litigation
     will stop.  This case will end today.  I will be
9    unhappy.  I will be angry.  I will grumble loudly.
     I will have a bitter taste in my mouth for the
10   rest of my life of how justice was served in this
     case, but I will go away.  I will live a law
11   abiding life.  I will do everything in my power not
     to be in the United States Government's cross hairs
12   again.  I will stay out of any United States
     Courthouse."   (Exhibit I, p. 315 & 316)
13

14   ***

15   "I want my life, my work, my family to mean somehting.
     My present circumstances don't determine where I
16   can go.  They merely determine where I can start.
     I plead with you to end this case today.  Stop the
17   horror that's been inflicted on me and my loved ones.
     My incarcerationg has been long and wrong."
18   (Exhibit I, p. 316)

19   "Your Honor, every saint has a past, every sinner
     has a future.  I plea for compassion.  I plea for
20   a just sentence.  I plea to end this case today.
     Justice is not the way we punish those who do
21   wrong.  It is the way we try to save them."
     (Exhibit I, p. 317)

22   "Courage and conviction are rare qualities in a man.
     God has blessed me with both.  I trust God's
23   perfect plan and timing.  I believe that suffering is
     part of something bigger.  My children, my family, and
24   I have sufferec excessively in this case for a long
     time now.  However, justice, like the will of God,
25   does not always manifest itself in the spur of the
     moment.  You've got to wait it  out, and when it
26   does, I will still be standing without a doubt.
     I implore you to end this case today with a sentence
27   that is reasonable, rational, and right."
     (Ex. I, p. 317 & 318)

1   Thereafter, Judge Troy L. Nunley sentenced Zinnel to
2   almost thirteen (13) years in prison which is the longest
3   sentence in the history of the United States for Bankruptcy
4   Fraud by 25%.  The litigation continues unabated.

5
6   III.   ZINNEL, AS AN ALLEGED TRUST BENEFICIARY, HAS NO
        LEGAL TITLE OR OWNERSHIP INTEREST IN TRUST ASSETS

7   In this case, Plaintiff improperly seeks to garnish
8   property now held by Castana Trust.  This includes a
9   TD Ameritrade IRA account ending in *0613.  This, the
10  government cannot do.  Under California law, a trust
11  beneficiary has no legal title or ownership interest in
12  trust assets.  Saks v. Damon Raike & Co., 7 Cal.App. 4th
13  419, 427 (1992).  Therefore, Steven Zinnel owns none of the
14  Castana Trust Assets and Steven Zinnel is not the Trustee
15  of the Castana Trust.

16
17  IV.   THE CRIMINAL MONETARY PENALTIES ASSESSED IN THE
        UNDERLYING CRIMINAL CASE HAVE NOT BECOME DEBT

18  The Criminal Case monetary penalties assesed in the
19  have not become debt yet under the FDCPA until Zinnel's
20  available judicial challenges are resolved.  Gonzalez v.
21  Department of Labor, 603 F. Supp. 2d, 137, 2009 U.S. Dist.
22  LEXIS 25921, (U.S.D.C., D. D.C March 26, 2009)  (Because
23  "the Court has concluded that Gonzalez's FECA obligation
24  is not a debt pursuant to 28 U.S.C. 3002(3)(B) until Gonzalez's
25  judicial challenges are exhausted," the district court denied
26  the United States' debt collection claim under the Federal
27  Debt Collection Procedures Act.

1    Here, Zinnel's convictions in the Criminal Case are
2  not final.  Zinnel is still exercising his right to
3  challenge his convictions, sentence, restitution, and
4  forfeiture on direct appeal before the Ninth Circuit, via
5  a Supreme Court Petition, and via a habeas corpus petition
6  under 28 U.S.C. 2255.

7
8  V.    PLAINTIFF UNITED STATES OF AMERICA AND ITS ATTORNEYS
      HAVE NOT COMPLIED WITH STATUTORY REQUIREMENTS FOR
9      THE ISSUANCE OF THE POST JUDGMENT REMEDY

10    Contrary to the government lawyer's representations,
11  any Judgments entered in the Criminal Case on either
12  March 4, 2014 or May 30, 2014 are NOT the operative judgment
13  in the Criminal Case.  On February 8, 2018, the Court of
14  Appeals for the Ninth Circuit reversed the 2014 judgment.
15  (see Criminal Case ECF #431).  On May 6, 2019, Zinnel was
16  resentenced.  On May 15, 2019, the district court filed the
17  operative judgment in the Criminal Case.  (Criminal Case
18  ECF #653).  However, since May 6, 2019, Zinnel is not aware
19  of Plaintiff United States ever perfecting the criminal  .
20  judgment against Zinnel.  This is supported by the fact
21  that in Misc. Case #1, the government lawyer filed a
22  declaration and attached as Exhibit A a document entitled
23  "United States Department of Justice Notice of Lien for
24  Fine/Restitution Imposed" that was filed with the
25  Sacramento County Recorder's office on November 7, 2014.
26  (Misc. Case #1, ECF # 53-1, p. 4).

27

1   The Notice of Lien was signed by AUSA Kurt Didier.

2   AUSA Kurt Didier misrepresented on the Notice of Lien that

3   Zinnel's Residence was 11966 Old Eureka Way, Gold River, CA

4   when the government lawyer knew Zinnel's address was his

5   place of incarceration which was FCI Terminal Island in

6   San Pedro, CA at the time the Notice of Lien was filed.

7   Not only was Zinnel never given notice of the lien filing,

8   but the Notice of Lien pre-dates the operative judgment

9   in the Criminal Case by almost five (5) years.

10      Therefore, Plaintiff United States and its army of

11  attorneys have not complied with statutory requirements for

12  the issuance of the post judgment remedy.

13

14  VI.   THE PROPERTY THE UNITED STATES IS SEEKING IS
        EXEMPT UNDER AN APPLICABLE EXEMPTION

15      To protect his interests, in the abundance of caution,

16  Zinnel has concurrently filed a Notice of Claim of

17  Exemption asserting that if any assets exist of Zinnel,

18  which he does not know after almost eight (8) years of

19  unjust incarceration, some of those assets are exempt from

20  enforcement.

21

22  VII. THE SACRAMENTO SUPERIOR COURT, PROBATE DIVISION
        WILL DECIDE THE QUESTION OF THE CASTANA TRUST'S
        OWNERSHIP OF ASSETS

23

24      The Sacramento Superior Court, Probate Division

25  is the proper court to determine the rights of all of the

26  relevant parties.  In the Misc. Case #1, Zinnel has filed

27  a Notice of Joinder giving notice that he joins and adopts

by reference David Zinnel's Reply to United States' Opposition.

VIII. THE GOVERNMENT LAWYERS CONTINUE TO LIE TO THE COURT

Many times in the Criminal Case, Zinnel has informed the court that the government lawyers continue to lie to the court in an attempt to win at all costs and malign Zinnel with the court. (for example, se Criminal Case ECF # 562, pgs. 11-18). The government attorneys are not only lawyers and officers of the court, but they have even a higher duty of candor as federal prosecutors.

Prosecutors, as servants of the law, are subject to constraints and responsibilities that do not apply to other lawyers; they must serve truth and justice first. United States v. Kojayan, 8 F.3d 1315, 1323 (9th Cir. 1993). There job is not just to win, but to win fairly, staying within the rules. Berger v. United States, 295 U.S. 78,88 (1935). The government lawyers continue to willfully advance facts prejudicial to the honor or reputation of a party; to wit Steven Zinnel.

Under the State Bar Act, an attorney may only use arguments and methods that "are considtent with truth, and may never seek to mislead the judge or any judicial officer by an artiface or false statement of fact or law." Cal. Bus. & Prof. Code 6068(d). Likewise, and attorney is prohibited "to advance facts prejudicial to the honor or reputation of a party. Cal. Bus. & Prof. Code 6068(f). Cal. Bus. & Prof. Code 6128 makes it a crime for an attorney to deceive a court or party. Rule 11 of the Federal Rules of Civil Procedure states by presenting a pleading, written motion, or other paper to the

1  court, the attorney certifies that (1) it is not being

2  presented for any improper purpose such as to harras and

3  (3) the factual contentions have evidentiary support.

4  Zinnel filed exhaustive papers on an attorney's duty of

5  candor in support of his resentencing.  (see Criminal Case

6  ECF #586-7, pgs 74).   In their specious collection efforts,

7  government lawyers AUSA Kurt A. Didier and AUSA Lynn Trinka

8  Ernce ignore their duty of candor and lie to this court.

9  The misrepresentations in the Application for Writ of
   Continuing Garnishment (Misc. Case ECF #5-1)

10

11      The lawyers represent that Zinnel has an interest in

12  accounts at TD Ameritrade Clearing Inc.  (ECF #5-1, pg. 2).

13  However, the government lawyers do not identify any account.

14  Zinnel is unaware of any account that he still has at TD

15  Ameritrade with any signifcant money in it.

16      The government lawyers represent to the court that Zinnel

17  "still owes $3,014,294" in the Criminal Case.  However, Zinnel

18  has demonstrated herein and at his resentencing in May of 2019

19  that he does not.

20      The government lawyers state Zinnel's address is

21  P.O. Box 5000, but it is not.

22  The misrepresentations in the Ex Parte Application for an
   asset restraining order in aid of judgment enforcement

23  (Criminal Case ECF #670)

24      On March 24, 2021, AUSA Kurt A. Didier filed an Ex Parte

25  Application in the Criminal Case that was chalked-full of lies.

26  Againg, a government lawyer misrepresented to the court that

27  "[Zinnel] owes over $3M in unpaid criminal monetary penalties."

28  (Criminal Case ECF #670, pg. 1).   Lawyer Didier continued with

01 his lies by stating Zinnel "is the sole beneficiary of

02 an account with a current balance of over $1.3 M."

03 (Criminal Case ECF #670, pf. 1).  This is a bald-faced lie.

04 In the government's opposition to Zinnel's recent bail motion,

05 the government attached a copy of Zinnel's mother's Trust

06 entitled "Castana Trust.  (Criminal Case ECF #668-1, pgs.

07 18-40).  The government also filed Zinnel's mom's Last Will

08 and Testament.  (Criminal Case ECF #668-1, pgs. 41-49).

09 Both the Castana Trust and will were executed in March 2009.

10 As of March 2009, the Castana Trust owned all of Ardith

11 Ferris's assets.  However, attorney Kurt Didier ignores this

12 by filing an exhibit for a TD Ameritrade account in the

13 name of Ardith Ferris that was signed on August 12, 2005.

14 (Criminal Case ECF #670-1, pg. 8).  Thus, the TD Ameritrade

15 account document pre-dates the creation of the Castana Trust

16 by almost four (4) years.  Compare Criminal Case ECF nos.

17 670-1, pg. 8 to 668-1, pg. 39.

18     In aggravation, AUSA Kurt Didier filed the Ex Parte

19 Application AFTER Zinnel filed his Reply to the Government's

20 Opposition to Zinnel's bail motion which cites binding

21 law that Zinnel as a"trust beneficiar has no legal title or

22 ownership interest in trust assets." (Criminal Case ECF

23 #669, pg. 4 citing Saks v. Damon Raike & Co., 7 Cal. App. 4th

24 419, 427 (1992).  As the Reply states, Zinnel owns none of

25 of the Castana Trust Assets and Zinnel is not the Trustee

26 of the Castana Trust.  (ECF #669).

1   AUSA Kurt Didier continues his lies by claiming Zinnel "failed

2   to disclose his future interest in an account." (Criminal Case

3   ECF #670, pg. 3).   That's absurd.   That would be like saying

4   Zinnel should have disclosed in 2019, that he was going to

5   win the California mega-millions lottery on April 3, 2061!

6   Zinnel has received no assets from the Castana Trust and

7   Zinnel has essentially no contact whatsoever with the sole

8   Trustee of the Castana Trust.

9        AUSA Kurt A. Didier also lies to the Court when he writes

10   "The United States recently discovered he is the sole beneficiary..."

11   (Criminal Case ECF 670, pg. 1.)   On December 19, 2019, AUSA

12   Kurt A. Didier filed an Application to take the deposition

13   of the Trustee of the Castana Trust Trustee.   (see Subpoena Case

14   ECF #1).   Kurt Didier subpoened 27 catagories of documents.

15   (Subpoena Case ECF #1, pgs. 7-10).   Document requests numbers

16   26 and 27 requested documents relating to any inheritance or

17   money payable to Steven Zinnel.   (ECF #1, pg. 10).   Again, in the

18   Application for Subpoena, Kurt Didier lied to the court and

19   represented that Zinnel owed over $3,000,000 when in fact

20   lawyer knew Zinnel owed nothing.   (Subpoena Case ECF #1, pg.2).

21   According to the application, the Trust's Trustee's deposition

22   was set for January 3, 2020.   Id.   Thus, the United States

23   did not just discover the Trust's, as opposed to Zinnel's,

24   TD Ameritrade Account.

25        Zinnel requests that the Court admonish the government lawyers

26   and report the misconduct of AUSA Kurt A. Didier to the State Bar

27   of California and the DOJ's Office of Professional Responsibility.

28

19

Steven Zinnel

Dated: 6/29/21

# EXHIBIT

# "A"

01/11/2021 01:40 PM

Version 7.0.1   Page 1   of   8

**U.S. Courts**
**Case Inquiry Report**
Case Number: DCAE211CR000234; Party Number: N/A; Payee Code: N/A
Show Party Details: N/A; Show Payee Details: N/A; Show Transactions: Y

Case Number    DCAE211CR000234      Case Title    USA SV DERIAN EIDSON
Summary Party Information:

| Party# | Party Code | Party Name | Account Code | Debt Type | JS Account # | Total Owed | Total Collected | Total Outstanding |
|--------|-----------|------------|--------------|-----------|--------------|-----------|-----------------|-------------------|
| 001 | CAEA029557 | STEVEN ZINNEL | CAEAPA18463 | SPECIAL PENALTY ASSESSMENT | | 1,500.00 | $25.00 | 975.00 |
| 001 | CAEA029557 | STEVEN ZINNEL | CAEAPA18463 | VICTIM RESTITUTION | | 2,513,319.00 | 0.00 | 2,513,319.00 |
| 001 | CAEA029557 | STEVEN ZINNEL | CAEAPA18463 | FINE-CRIME VICTIMS FUND | | 500,000.00 | 0.00 | 500,000.00 |
| | | | | | | 3,014,819.00 | $25.00 | 3,014,294.00 |

# EXHIBIT

# "B"

Subject:  Email Memorializing Offer

From:    Suzanne Luban (lubanlaw@sbcglobal.net)

To:      Kevin.Khasigian@usdoj.gov;

Date:    Tuesday, April 1, 2014 6:30 PM

Dear Kevin,

I appreciate all your hard work and cooperation to reach what is a fair and appropriate
stipulation as to restitution, and in particular goes a long way toward assuring that Zac
and Zayna will have resources to pay for college. Steve is personally very grateful for
that.

I just wanted to memorialize Steve's earlier offer (on 3/31/14) that if Michelle would
agree limit her own personal restitution to 20% of the total dollar amount of restitution
payable to her, and would commit to give the remainder to Zac and Zayna equally
(40% each), Steve would not object to any amount of restitution she might seek from
the Court.

I will see you in the morning.

Suzanne A. Luban
Attorney At Law
3758 Grand Ave, #4
Oakland, CA 94610
(510)832-3555
fax (510)433-1131

EX 2115

# EXHIBIT

# "C"

Case 2:21-mc-00098-TLN-AC Document 84 Filed 07/02/21 Page 25 of 64
Case 2:11-cr-00234-TLN Document 586-4 Filed 02/21/19 Page 11 of 71

Case 2:11-cr-00234-TLN Document 343 Filed 04/02/14 Page 1 of 5

1  SUZANNE A. LUBAN, SBN 120629
   Attorney At Law
2  3758 Grand Ave. #4
3  Oakland, California 94610
   Telephone 510/832-3555
4
   Attorney for Defendant
5  STEVEN K. ZINNEL

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA
9                           (Sacramento)

10 | UNITED STATES OF AMERICA,          )    CR. S 11-234-TLN
11 |                                    )
   |        Plaintiff,                  )    STIPULATION AND ORDER
12 |                                    )    RE: RESTITUTION
   |   vs.                              )
13 |                                    )
   | STEVEN K. ZINNEL, et al.,          )
14 |                                    )        Date: April 2, 2014
   |        Defendants.                 )
15 |                                    )    Judge: Hon. Troy L. Nunley
   |_____)
16

17        The United States and defendant Steven Zinnel stipulate to the entry of criminal restitution as set

18 forth below. This stipulation is entered into in light of the Court's rulings at sentencing. The parties

19 agree that none of the agreements herein waive defendant Steven Zinnel's objections prior to and at

20 sentencing to any of the guideline enhancements or sentencing determinations already imposed by the

21 Court, and the United States will not argue that a plain error standard of review applies as a consequence

22 of this stipulation. This includes, but is not limited to, whether any of the persons listed below was a

23 "victim" or suffered "loss" or the amount of the loss within the meaning of the Sentencing Guidelines.

24        Subject to the above proviso, defendant Steven Zinnel and the United States, by and through

25 their attorneys, hereby stipulate and agree that the Court shall enter a restitution order as follows:

26
27        Steven Zinnel shall be ordered to pay the following restitution amounts to the persons listed

28

                                                    1

Ex. 2121

Case 2:21-mc-00098-TLN-AC   Document 84   Filed 07/02/21   Page 26 of 64
Case 2:11-cr-00234-TLN   Document 586-4   Filed 02/21/19   Page 12 of 71

Case 2:11-cr-00234-TLN   Document 343   Filed 04/02/14   Page 2 of 5

below in the amounts stated below:

    1.    <u>First Bank</u>: $156,663.27, which represents the remainder owed to First Bank on all of its deeds of trust and any debt arising from its payment on indemnity bonds guaranteed by Mr. Zinnel;

    2.    <u>Michelle Zinnel</u>: A total of $305,058.28, which comprises:

    (a) $12,705.43 in attorneys' fees arising from the order to indemnify Ms. Zinnel for attorneys fees actually incurred by Ms. Zinnel in *General Ins. Co. of America et al. v. Corporate Control Inc. et al.*, CV-02-1020-WBS;

    (b) $156,208.85 in child support for years 2005, 2006, 2007 and 2008;

    (c) $3,773.00 in child support through March 10, 2014;

    (d) $132,371, which represents attorneys' fees expended by Michelle Zinnel for family court representation from January 2000 through December 2005;

    The parties reiterate that this stipulation does not waive any objections to guideline calculations or findings, such as that Michelle Zinnel is a "victim" or that any amounts she claims constitute "loss" under the Guidelines.

    3.    <u>Zac Zinnel</u>: $150,000.00, which shall be held in trust for the benefit of the child according to terms to be jointly proposed by the parties and approved by the court.

    4.    <u>Zayna Zinnel</u>: $150,000.00, which shall be held in trust for the benefit of the child according to terms to be jointly proposed by the parties and approved by the court.

    5.    <u>Fog Cutter Services</u>: $10,799.35;

    6.    <u>Wells Fargo Card Services</u>: $8,506.17;

    7.    <u>Travelers Casualty and Surety Co.</u>: The parties agree that restitution shall be ordered in the amount of $1,000.00, which represents Travelers' actual payment on a bond claim. The parties agree that restitution of $285,000 shall be ordered for Travelers based on an Indemnity Agreement entered into by the relevant parties on July 15, 1996.

2

EX 21 22

Case 2:11-cr-00234-TLN   Document 343   Filed 04/02/14   Page 3 of 5

8.  Arrow Financial Services: $141.50;

9.  MBNA America Bank: $3,641.15;

10. General Insurance Co. / First National Insurance Company of America / Safeco: A total of $1,442,509.28 to be distributed per the claims filed in bankruptcy court, which comprises:

(a) $1,192,509.28, which represents the judgment amount stated in the Order filed on June 23, 2004 as Docket No. 247 and the Judgment filed on October 26, 2004 as Docket No. 366 in *General Ins. Co. of America et al. v. Corporate Control Inc. et al.*, CV-02-1020-WBS;

(b) $250,000.00, which represents the collateral security amount that was ordered to cover future bond payments in the Order filed on June 23, 2004 as Docket No. 247 and the Judgment filed on October 26, 2004 as Docket No. 366 in *General Ins. Co. of America et al. v. Corporate Control Inc. et al.*, CV-02-1020-WBS; and

11. Stuart Allen Associates: Zero because this was a duplicate claim.

IT IS SO STIPULATED:

DATED: April 1, 2014                    _/S/ Suzanne A. Luban_
                                        SUZANNE A. LUBAN
                                        Counsel for Steven. K. Zinnel

DATED: April 1, 2014                    _/S/ Kevin Khasigian_
                                        KEVIN KHASIGIAN
                                        Assistant United States Attorney
                                        Counsel for Plaintiff

DATED: April 1, 2014                    _/S/ Matthew D. Segal_
                                        MATTHEW D. SEGAL
                                        Assistant United States Attorney
                                        Counsel for Plaintiff

EX 2123

3

# EXHIBIT

# "D"

Case 2:21-mc-00098-TLN-AC   Document 84   Filed 07/02/21   Page 29 of 64
Case 2:11-cr-00234-TLN   Document 586-4   Filed 02/21/19   Page 2 of 71

Case 2:11-cr-00234-TLN   Document 314   Filed 03/03/14   Page 1 of 6

1  BENJAMIN B. WAGNER
   United States Attorney
2  MATTHEW D. SEGAL
   AUDREY B. HEMESATH
3  KEVIN C. KHASIGIAN
   Assistant United States Attorneys
4  501 I Street, Suite 10-100
   Sacramento, CA 95814
5  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
6

7

8                    IN THE UNITED STATES DISTRICT COURT
9
                    FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11
   UNITED STATES OF AMERICA,              2:11-CR-00234 TLN
12
                          Plaintiff,      UNITED STATES' OPPOSITION TO
13                                        DEFENDANT ZINNEL'S MOTION FOR STAY OF
                    v.                    FORFEITURE PENDING APPEAL
14
   STEVEN ZINNEL and                      Date:  March 4, 2014
15 DERIAN EIDSON,                         Time:  9:00 a.m.
                                          Ctrm: Hon. Troy L. Nunley
16                        Defendants.

17

18                    I.    INTRODUCTION

19        Trial proved that Defendant Zinnel wrongly held and used certain assets for over a decade. His

20 motion to stay forfeiture seeks to further extend the period during which those assets will be unavailable

21 to liquidate and use to make his victim(s) whole. Zinnel has never claimed under oath that System 3,

22 Done Deal, or the Luyung Property were even his. The only way that he would be prejudiced by

23 forfeiture and liquidation of these assets would be that they could generate funds that the Attorney

24 General could in his discretion direct to Zinnel's victims (including his ex-wife). Zinnel's spite is a

25 sentencing factor, not a basis for a motion to stay.

26        Zinnel does not even bother to address *the factors* to determine whether a stay is appropriate. He

27 has failed even to attempt to make his required showing and his motion is without merit.

28        It is possible that Zinnel does not acknowledge the test for a stay because it does not favor him.

   United States' Opposition to Zinnel's Motion          1
   to Stay Forfeiture Proceedings

EX 2101                                                       BS 6002

Case 2:11-cr-00234-TLN   Document 314   Filed 03/03/14   Page 2 of 6

1   Even assuming Zinnel acknowledged the legal standards for a stay, the stay motion should be denied

2   given the very low likelihood of success of an appeal, the burden on the United States to maintain the

3   forfeited assets, the lack of any asset's intrinsic value, the value of providing this money to benefit the

4   victims, and the fact that the monetary value of the forfeited items could be returned to the defendant if

5   necessary.

6                                    **II.    BACKGROUND**

7        In light of this Court's extensive familiarity with this case, the United States will not reiterate the

8   relevant facts here but rather incorporates by reference the forfeiture briefs filed in this matter. The only

9   event that the United States will address here is the September 20, 2013 Preliminary Order of Forfeiture

10  as to Zinnel, forfeiting:

11              (1) All right, title, and interest in Done Deal, Inc., a California
                Corporation, entity number C2659844;
12
                (2) All right, title, and interest in System 3, Inc., a California Corporation,
13              entity number C2360455;

14              (3) Vacant land known as "The Luyung Property" located in Rancho
                Cordova, Sacramento County, CA, APN: 072-0450-015-0000;
15
                (4) Real property located at 11966 Old Eureka Way, Gold River, CA,
16              APN: 069-0620-054-0000; and

17              (5) A personal forfeiture money judgment of $1,297,158.20.

18  ECF No. 253.

19       Zinnel filed this motion to stay forfeiture proceedings on February 25, 2014.  ECF No. 309.

20                                   **III.    ANALYSIS**

21       Courts consider four factors to determine whether a forfeiture order should be stayed: "(1) the

22  likelihood of success on appeal; (2) whether the forfeited asset is likely to depreciate over time; (3) the

23  forfeited asset's intrinsic value to defendant; and (4) the expense of maintaining the forfeited property."

24  United States v. Riedl, 214 F. Supp. 2d 1079, 1082 (D. Haw. 2001). A stay pending appeal is an

25  extraordinary remedy for which the moving party bears a heavy burden. See e.g. Nken v. Holder, 556

26  U.S. 418, 439 (2009).[1]

27

28       _____
         [1] District courts across the country have routinely denied a defendant's request to stay a
    forfeiture order pending appeal in a criminal case. See generally United States. v. Phillips, 2013 WL.

    United States' Opposition to Zinnel's Motion          2
    to Stay Forfeiture Proceedings

    RS 6003

    EX 2102

Case 2:21-mc-00098-TLN-AC   Document 84   Filed 07/02/21   Page 31 of 64
Case 2:11-cr-00234-TLN   Document 586-4   Filed 02/21/19   Page 4 of 71
Case 2:11-cr-00234-TLN   Document 314   Filed 03/03/14   Page 4 of 6

1    To be clear, System 3 was separately forfeited as bankruptcy fraud proceeds and property

2    *involved in* money laundering crimes. The Eighth Amendment applies to the latter. Even assuming that

3    the *involved in* framework was the exclusive means of forfeiture, Zinnel's vast criminal dealings

4    involving System 3 dispose of any Eighth Amendment concerns. See United States v. Wyly, 193 F.3d

5    289, 303 (5th Cir. 1999) (forfeiture of a $4 million business used to facilitate money laundering offense

6    was not grossly disproportional to an offense involving only $175,000; Eighth Amendment analysis

7    looks not just to the value of the forfeited property in comparison to the amount laundered, but to the

8    scope and duration of the scheme, the harm caused, and the relationship of the property to the scheme).[2]

9    As to the second factor, although the local real estate market is in a period of recovery, holding

10   the real properties will harm the United States. The loan/penalties on one property continue to swell.[3]

11   Also, the United States will be required to incur expenses to maintain the property during the pendency

12   of the appeal, as well as pay for liability insurance and property taxes. These costs add to overall

13   depreciation because they will be deducted from any net equity calculation. Regarding System 3,[4] it

14   grew in the mid-to-late 2000s, but growth has stalled this decade as competition increased and clients

15   brought electrical work back in-house to cut costs. Finality in this forfeiture case would lift the cloud of

16   ownership and end the many rounds of Zinnel-led litigation, allowing System 3 to focus on satisfying its

17   client's electrical needs.

18   The third factor weighs heavily against a stay. The intrinsic value of the forfeited assets to

19   Zinnel is zero. Under oath in family court and bankruptcy, Zinnel has never claimed ownership of

20

21   [2] An independent appraisal valued the 46% minority interest in System 3 at $3,030,000.
Continuing the exclusive *involved in* forfeiture hypothetical (disregarding that System 3 was forfeited as

22   fraud proceeds), a forfeiture consistent with that valuation is not disproportional given the depth of the
fraud and money laundering schemes, which included laundering over $1 million dollars and the $4

23   million demand for the minority interest in System 3. See United States v. Aguasvivas-Castillo, 668
F.3d 7, 16-17 (1st Cir. 2012) (the forfeiture of $20 million, three-fourths of which comprised untainted

24   funds forfeited under the facilitation theory, was not grossly disproportional to the gravity of a $4.4
million food stamp fraud offense); see also Riedl, 164 F. Supp. 2d at 1200 (D. Haw. 2001) (forfeiture of

25   real property worth $1.2 million, which was 12 times the maximum fine under the sentencing guidelines,
not grossly disproportional where defendant intended to launder $2.6 million in drug proceeds), aff'd, 82

26   F. App'x 538 (9th Cir. 2003).

27   [3] The loan on Old Eureka Way has been in default since September 2010. See ECF No. 274. As
of October 29, 2013, the loan balance was approximately $291,000. Id.

28   [4] The United States does not believe Done Deal, Inc. has any value other than as a shell company
to launder money. Its corporate form will be terminated once the forfeiture order is final.

EX 2103                                          BS 6009

Case 2:21-mc-00098-TLN-AC    Document 84    Filed 07/02/21    Page 32 of 64
Case 2:11-cr-00234-TLN    Document 586-4    Filed 02/21/19    Page 5 of 71
Case 2:11-cr-00234-TLN    Document 314    Filed 03/03/14    Page 5 of 6

1   System 3 or the Luyung Property.[5] While Old Eureka Way was Zinnel's residence, he no longer resides

2   there, having been in custody since his convictions in this case. That property has no particular

3   historical or familial significance to Zinnel – it was not passed down from prior generations, for

4   example. Rather, Zinnel purchased Old Eureka in 1995 and, not surprisingly, used launder money to

5   retire a bank loan on the property in 2006.[6] See United States v. Evanson, No. 2:05-CR-805, 2008 WL

6   4335549, at *1 (D. Utah Sept. 22, 2008) (stay unwarranted where defendant failed to show that real

7   property was "unique and cannot be replaced through reimbursement from the government if he

8   succeeds on appeal").

9        Fourth factor: As the attached Declaration of IRS Special Agent Jason Lamb makes clear,[7] there

10  can be no serious dispute that real property is expensive to maintain. Expenditures for heating costs,

11  real-estate taxes, insurance, and general maintenance all continue to accrue in the absence of forfeiture

12  and sale, money that would otherwise go to Zinnel's victims. The costs associated with

13  maintaining/monitoring System 3 would likely be stratospheric; costs in the first year of the stay would

14  exceed $20,000. This Court would need to appoint a professional receiver to perform such tasks as

15  reviewing System 3's finances/operations and preparing monthly reports. Paying for such efforts would



16  be nonsensical in this case. After all, forfeiture is designed to create a pool of assets from which victims

17  can be reimbursed. Delaying forfeiture "will only prolong the ability of [Defendant's] victims to receive

18  distributions ... and would only serve to further harm [them]." See United States v. Davis, No. 07-cr-

19  011, 2009 WL 2475340, at *3 (D. Conn. June 15, 2009). Simply put, the sooner the properties are sold,

20  the better off Zinnel's victims will be. Thus, this factor also weighs in favor of denying the motion for

21  stay.

22  ///

23  ///

24

25       [5] As the trial evidence established, Zinnel hid and concealed his ownership of the Luyung
    Property. See Trial Exhibit 2001.

26       [6] See Trial Exhibit 2008. Defendant Zinnel was convicted of laundering the proceeds connected
    to the payoff of the mortgage on the Old Eureka property. See ECF No. 22, Verdict Form as to Zinnel,
27  Count 16.

28       [7] See Exhibit A, estimating $41,707.04 in annual costs (year 1) to the United States to maintain
    the forfeited assets.

EX 2104                                                      BS 6005

# EXHIBIT

# "E"

**From:** "Khasigian, Kevin (USACAE)" <Kevin.Khasigian@usdoj.gov>
**To:** Suzanne Luban <lubanlaw@sbcglobal.net>; "Segal, Matthew (USACAE)" <Matthew.Segal@usdoj.gov>; "Hemesath, Audrey (USACAE)" <Audrey.Hemesath@usdoj.gov>
**Sent:** Wednesday, September 21, 2016 11:09 AM
**Subject:** RE: sale of Zinnel properties

Suzanne:

The sale of the Luyung Property resulted in net proceeds of $82,608.15, and the sale of 11966 Old Eureka Way netted $41,786.13. The below chart identifies the assets (and net proceeds) forfeited from your client:

| Asset Description | Net Proceeds |
|---|---|
| Vacant land - "The Luyung Property" | $82,608.15 |
| 11966 Old Eureka Way, Gold River | $41,786.13 |
| System 3, Inc. | $2,800,000.00 |
| $65,534.85 First Bank Account | $65,534.85 |
| $53,362.51 Wells Fargo Bank | $53,362.51 |
| Best Build and 3 Checks | $106,312.50 |
| **Totals** | **$3,149,604.14** |

No funds have been applied to restitution or the fine.

The requested closing statements are attached to this email.

--Kevin

EX 2133

# EXHIBIT

# "F"

Case 2:21-mc-00098-TLN-AC   Document 84   Filed 07/02/21   Page 36 of 64
Case 2:11-cr-00234-TLN   Document 586-4   Filed 02/21/19   Page 21 of 71
Case 2:11-cr-00234-TLN   Document 409   Filed 12/05/17   Page 1 of 37



1 | STEVEN ZINNEL, USM #66138-097
Federal Correctional Institution,
2 | Terminal Island
PO Box 3007
3 | San Pedro, CA  90733-3007

**FILED**

DEC 05 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

4 | Defendant, In Pro Se

5 |              IN THE UNITED STATES DISTRICT COURT

6 |            FOR THE EASTERN DISTRICT OF CALIFORNIA

7 |                        (SACRAMENTO)

8 | UNITED STATES OF AMERICA          Case No. 2:11-cr-234-TLN

9 |            Plaintiff,             DEFENDANT STEVEN ZINNEL'S
                                      NOTICE OF MOTION AND MOTION TO
                                      (1) ENFORCE JUDGMENT
10 |     vs.                          (2) HOLD PLAINTIFF AND ITS
                                          ATTORNEYS IN CIVIL CONTEMPT
11 | STEVEN ZINNEL,                   (3) MOTION FOR ORDER DIRECTING
                                          THE BOP TO STOP TAKING $25.00
12 |        Defendant.                    QUARTER FROM ZINNEL TO APPLY
                                          TO RESTITUTION
13 |                                  (4) MOTION FOR ORDER DIRECTING
                                          THE BOP, COURT CLERK, AND/OR
14 |                                      PLAINTIFF TO RETURN THE $325
                                          THAT HAS BEEN TAKEN FROM
15 |                                      ZINNEL AT THE RATE OF
                                          $25.00 QUARTER SINCE HE WAS
16 |                                      REMANDED INTO THE CUSTODY
                                          OF THE BOP
17 |                                  (5) MOTION DIRECTING PLAINTIFF TO
                                          PERSONALLY SERVE DEFENDANT
18 |                                      STEVEN ZINNEL WITH ANY PAPERS
                                          PRIOR TO COURT-FILING IN
19 |                                      THIS CASE
                                      (6) MOTION TO EXTEND DUE DATE
20 |                                      OF DEFENDANT'S TIME TO ACT
                                          BY 14 DAYS
21 |                                  (7) MOTION FOR ORDER ISSUED TO
                                          THE BOP DIRECTING ZINNEL TO
22 |                                      APPEAR BY TELEPHONE
                                          AT THE HEARING
23 |                                  (8) MOTION FOR ACCURATE ACCOUNT OF
                                          FUNDS PLAINTIFF HAS MARSHALED

24 |                                  [filed concurrently with defendant's
                                      Motion to Recuse District Court Judge
25 |                                  Troy L. Nunley from presiding over
                                      any further proceedings in this case
26 |                                  and motion for case reassignment
                                      to a new District Court Judge]

27 |

28 |                                  Date:      December 14, 2017
                                      Time:      9:30 A.M.
                                      Judge:     Hon. Troy L. Nunley
                                      CtRm:      #2
                                                 [subject to change]

Ex 2.151                 Page 1

Case 2:21-mc-00098-TLN-AC   Document 84   Filed 07/02/21   Page 37 of 64
Case 2:11-cr-00234-TLN   Document 586-4   Filed 02/21/19   Page 22 of 71
Case 2:11-cr-00234-TLN   Document 409   Filed 12/05/17   Page 2 of 237

1 TO THE HONORABLE COURT, PLAINTIFF UNITED STATES OF AMERICA, ITS ATTORNEYS
  MATTHEW D. SEGAL, AUDREY B. HEMESATH, KEVIN C. KHASIGIAN, PHILLIP A. TALBERT,
2 U.S. ATTORNEY GENERAL JEFFERSON SESSIONS, THE U.S. DEPARTMENT OF JUSTICE,
  DEFENDANT DERIAN EIDSON BY AND THROUGH HER ATTORNEY BECKY S. JAMES, ANY PERSON
3 OR ENTITY THAT HAS APPEARED IN THE ABOVE-CAPTIONED CASE, JUDGMENT RESTITUTION
  RECIPIENTS ZAC ZINNEL AND ZAYNA ZINNEL, AND ANY OTHER INTERESTED PERSON:

4

5      PLEASE TAKE NOTICE that on December 14, 2017 at 9:30 AM, or as soon thereafter as this matter

6 may be heard in the above-entitled Court for hearing, Defendant Steven Zinnel ("Defendant" or "Zinnel"),

7 in pro se, will and hereby does move the Court to (1) Enforce its Judgment; (2) Hold Plaintiff United States

8 of America and its attorneys in Civil Contempt, (3) for an order directing the BOP to stop deducting $25.00

9 quarter from Zinnel to apply to restitution (4) for an order directing the BOP, court clerk, and/or Plaintiff

10 to return the $325.00 that has been taken from Zinnel at the rate of $25.00 quarter since he was remanded

11 into the custody of the BOP (5) Direct Plaintiff to personally serve defendant Steven Zinnel with any papers,

12 PRIOR to court-filing, in this case going forward,  (6) motion to extend due date of defendant's time to act

13 by fourteen (14) days, (7) motion for order issued to the BOP directing Zinnel to appear by telephone at the

14 hearing, and (8) motion for accurate account of funds plaintiff has marshaled ("Motion").  The hearing is

15 currently set in Courtroom #2 of the United States Courthouse located at 501 I Street, Sacramento, CA  95814

16 before the Honorable Troy L. Nunley (subject to change with judge reassignment).

17      The Motion should be granted for many compelling reasons. The grounds for this Motion are:

18 The court has the inherent power to enforce its judgments.  Contempt is one method of enforcing its

19 judgment. There is currently a valid enforceable Judgment in this criminal case. The Plaintiff and its

20 attorneys are aware of the Judgment. Plaintiff and its attorneys can comply with the Judgment because

21 Plaintiff has marshaled, and is holding more than enough funds, to pay out the restitution ordered in the

22 Judgment.  Plaintiff and its attorneys are willfully not paying out the money they are holding as ordered

23 by the Judgment. Plaintiff and its attorneys have violated the court order memorialized into a Judgment

24 in the above-captioned case.  The violation demonstrably fell short of substantial compliance with the

25 Judgment.  The violation was not based on a good faith and reasonable interpretation of the order.

26 Thus, it is Plaintiff and its attorneys that are actually spiteful in this case not Zinnel.  Since Plaintiff is

27 sitting on more than enough money to satisfy the Judgment restitution and the entire Judgment

28 is not being complied with, the court should order the BOP to stop deducting $25.00 a quarter from

   Zinnel and order the return of the $325.00 that has been deducted thus far from Zinnel.

EX 2152                              Page 2

Case 2:21-mc-00098-TLN-AC   Document 84   Filed 07/02/21   Page 38 of 64
Case 2:11-cr-00234-TLN   Document 586-4   Filed 02/21/19   Page 23 of 71
Case 2:11-cr-00234-TLN   Document 409   Filed 12/05/17   Page 3 of 237

1    PLEASE TAKE FURTHER NOTICE that Zinnel has concurrently filed with this Motion a Motion to Recuse

2    District Judge Troy L. Nunley from presiding over any further proceedings in the above-captioned case

3    including the instant Motion. Zinnel objects to Judge Troy L. Nunley deciding this motion and/or presiding

4    over any further proceedings in the above-captioned case. Thus, the presiding Judge, Courtroom, Date,

5    and Time may change when a new Judge is assigned to the above-captioned case. When a new Judge is

6    assigned, either the Court or Zinnel will give notice of any changes.

7       PLEASE TAKE FURTHER NOTICE that because Zinnel is currently unjustly incarcerated in federal

8    prison, not a participant in the court's CM/ECF system, and subject to institution change at any time

9    without notice by the Bureau of Prisons ("BOP"), Zinnel further moves the court for an order directing

10   Plaintiff and its attorneys to cause Zinnel to be personally served with any papers, including any opposition

11   to this Motion, PRIOR to filing the papers with the court, at the BOP institution Zinnel is actually at when

12   Plaintiff's papers/opposition are ready to be filed with the court. Prior to filing with the court, Plaintiff

13   and its attorneys can email or fax any papers to be filed with the court, including any opposition to this

14   Motion, to the BOP institution Zinnel is incarcerated within, so he can be personally served by a BOP staff

15   member with any legal papers.

16      PLEASE TAKE FURTHER NOTICE, that Zinnel moves the court to issue an order to Plaintiff and its

17   attorneys requiring them to concurrently file with the court a Certificate of Service reflecting that Zinnel was

18   personally served with their papers, including any opposition to this Motion, before filing any papers

19   and/or opposition with the court utilizing the CM/ECF system.

20      PLEASE TAKE FURTHER NOTICE, that Zinnel moves the court to be personally served with any and

21   all court orders in the above-captioned case going forward which could be accomplished by ordering

22   Plaintiff and its attorneys to personally serve Zinnel with a Notice of Entry of Order.

23      PLEASE TAKE FURTHER NOTICE that because Zinnel is currently unjustly incarcerated in federal

24   prison and subject to institution change at any time, without notice by the BOP, Zinnel further moves

25   the court for an order extending his deadline to act in this case by fourteen (14) calendar days to allow

26   Zinnel sufficient time to review documents, perform legal research, draft any papers, and file any papers

27   with the court by U.S. Mail. Per Local Rule 430.1(d), the Plaintiff's and its attorneys' opposition, if any,

28   is due within seven (7) days of this filing and Zinnel's Reply will be due on the date prescribed by the court.

EX 2153                                        Page 3

Case 2:21-mc-00098-TLN-AC   Document 84   Filed 07/02/21   Page 39 of 64
Case 2:11-cr-00234-TLN   Document 586-4   Filed 02/21/19   Page 24 of 71
Case 2:11-cr-00234-TLN   Document 409   Filed 12/05/17   Page 4 of 237

1   PLEASE TAKE FURTHER NOTICE, because Zinnel is unjustly incarcerated, he is unable to personally

2   attend the hearing. Therefore, Zinnel moves the court to appear by telephone at the hearing. Zinnel

3   requests that the court provide him with written notice of a telephone number to call in on. Due to the

4   constant and continuous Obstruction of Justice by the BOP in the form of not allowing Zinnel to participate

5   at court hearings by telephone, preventing Zinnel from performing legal research, and preventing Zinnel

6   from complying with court orders, Zinnel moves this court to issue an order to the Federal Bureau of

7   Prisons and FCI Terminal Island's Warden Felicia Ponce directing the BOP and Warden Ponce to allow

8   Zinnel to use an institution staff telephone on the date and time of the hearing so Zinnel can appear by

9   telephone at the hearing, under the court's supervisory powers to prevent obstruction of its proceedings.

10  Should the court require Zinnel's physical appearance at the hearing, Zinnel requests that the court

11  appoint the Federal Defender's Office to represent Zinnel at the hearing and Zinnel waives his physical

12  appearance at the hearing.

13  Zinnel moves the court for a transcript of the hearing and if any portion of this Motion is denied,

14  that the court's clerk be ordered to file a Notice of Appeal to the Court of Appeals for the Ninth Circuit

15  on Zinnel's behalf.

16  This Motion is based on this notice, the concurrently filed memorandum of points and authorities,

17  declaration of Steven Zinnel, index of attached exhibits, objection to Judge Troy L. Nunley from deciding

18  this Motion, the records of this case, and any oral argument permitted at the hearing on the Motion.

19  Dated: October 31, 2017

20

21  Steven Zinnel
    Defendant in pro se

22

23

24

25

26

27

28

EX 2154

# EXHIBIT
# G

# Foreword

The Asset Forfeiture and Money Laundering Section (AFMLS) is pleased to release the 2016 version of the *Asset Forfeiture Policy Manual*, a compilation of policies governing the Department of Justice Asset Forfeiture Program. The mission of the Asset Forfeiture Program is to disrupt and dismantle criminal enterprises, deprive criminals of the proceeds of illegal activity, deter crime, and restore property to victims. The purpose of the *Policy Manual* is to provide Department of Justice prosecutors, agents, and support staff with a reference manual containing the policies and procedures in support of that mission.

Since the *Policy Manual* was last published in 2013, the Department of Justice has been engaged in a comprehensive review of the policies governing the Department of Justice Asset Forfeiture Program. The purpose of this review is to ensure that federal asset forfeiture authorities are appropriately and effectively used consistent with civil liberties and the rule of law.

As a result of this review, the Department of Justice has issued a number of significant policy directives that are reflected in the *Policy Manual*. These include updates to the net equity thresholds and the Department of Justice's new structuring policy (Chapter 1), the recently-issued guidance pertaining to facilitating property (Chapter 2), and the Attorney General's January 16, 2015, order limiting adoptions of assets seized by state or local law enforcement under state law (Chapter 14). In addition, a new Chapter 13 on real property compiles the policies and guidance for real property that previously appeared throughout various chapters of the *Policy Manual*, while incorporating updated procedures. The remaining chapters have also been reviewed and updated.

This *Policy Manual* replaces and supersedes all previous versions of the *Policy Manual* and all Policy Directives issued by AFMLS, unless otherwise noted. The *Policy Manual* is published in hardcopy and available online at http://www.justice.gov/criminal-afmls/publications. Any future updates issued prior to the publication of the next hardcopy *Policy Manual* will be issued as Policy Directives.

The *Asset Forfeiture Policy Manual* sets forth the policies of the Department of Justice. It does not, however, create or confer any legal rights, privileges, or benefits that may be enforced in any way by private parties. *See United States v. Caceres*, 440 U.S. 741 (1979).

We recommend that the following format be used in citing this *Policy Manual*: *Asset Forfeiture Policy Manual* (2016), Chap. ___, Sec. ___.___. (e.g., Chap. 1, Sec. I.A).

M. Kendall Day
Chief
Asset Forfeiture and Money Laundering Section

EX 2201

# Chapter 12:
# Forfeiture and Compensation for Victims of Crime

Forfeiture is a critical tool in the recovery of illicit gains arising from financial crimes such as fraud, embezzlement, and theft. Returning forfeited assets to victims through the remission and restoration processes is a priority of the Asset Forfeiture Program. With respect to property that is judicially forfeited under the criminal forfeiture statutes, the Attorney General has the authority to grant petitions for remission or mitigation of forfeiture and restore forfeited property to victims. *See* 21 U.S.C. § 853(i)(1).[1] In civil judicial forfeitures pursuant to section 981, the Attorney General has the authority to restore forfeited assets to the victims of any offense giving rise to forfeiture. Accordingly, remission and restoration authority now exists for virtually all offenses for which a related civil or criminal forfeiture order is obtained. The federal regulations governing the remission of civil or criminal forfeiture are found at 28 C.F.R. Part 9.



In concert with this expanded remission authority, the Criminal Division initiated a procedure in 2002 called restoration. This procedure enables the Attorney General to transfer forfeited funds to a court for satisfaction of a criminal restitution order, provided that all victims named in the order otherwise qualify for remission under the applicable regulations. While remission and criminal restitution are not directly related, they may serve similar functions. Remission is discretionary relief intended to reduce the hardship that may arise from forfeiture for persons who have incurred a monetary loss from the offense underlying the forfeiture. Restitution is an equitable remedy that is intended to make crime victims whole and prevent unjust enrichment to the perpetrator. In many cases, restoration—the use of forfeited funds to pay restitution—is desirable, since the defendant may be left without assets to satisfy his or her restitution obligation following forfeiture.

Priority in the distribution of forfeited assets is given to valid owners, lienholders, federal financial regulatory agencies, and victims (in that order), who in turn have priority over official use and equitable sharing requests. *See* 28 C.F.R. § 9.9(a).

The Treasury Forfeiture Fund (TFF) has a similar procedure for remission and restoration. Please consult the *Guidelines for Treasury Forfeiture Fund Agencies on Refunds Pursuant to Court Orders, Petitions for Remission, or Restoration Requests* ("Treasury Blue Book"), available at http://www.treasury.gov/resource-center/terrorist-illicit-finance/Asset-Forfeiture/Documents/bluebook.pdf.[2]

This chapter discusses the principal policies and procedures governing the return of forfeited assets to crime victims. Section I covers the basics of remission and restoration; and Section II discusses strategies for compensating victims of large fraud offenses.

---

[1] While section 853(i) governs forfeitures under the drug abuse prevention and control laws, it is incorporated by reference in 18 U.S.C. § 982(b)(1), which extends forfeiture authority to most other criminal offenses.

[2] Treasury Forfeiture Fund member agencies include the Internal Revenue Service-Criminal Investigations (IRS-CI), U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), U.S. Secret Service (USSS), and U.S. Coast Guard.

EX 2202

## I.   Returning Forfeited Assets to Victims

### A.   Remission

Once assets have been judicially forfeited, the authority to distribute them to owners, lienholders, and victims rests solely with the Attorney General. *See* 28 C.F.R. Part 9. Potential victims must be notified of the opportunity to file a petition for remission. In judicial forfeitures, notification is the responsibility of the U.S. Attorney's Office (USAO). Known victims should be notified by mail, and potential unknown victims may be notified by publication. In appropriate cases, the USAO may modify the standard notice of the Victim Notification System (VNS) to incorporate notice of the forfeiture and a model petition for remission.[3] The notice should instruct the victims to file petitions with the USAO that handled the civil or criminal forfeiture.

The authority to decide petitions for remission in judicial cases has been delegated by the Attorney General to the Chief of the Asset Forfeiture and Money Laundering Section (AFMLS). 28 C.F.R. § 9.1(b)(2). Petitions are decided on the basis of written documentation; there is no right to a hearing on the petition. 28 C.F.R. § 9.4(g). Unsuccessful petitioners are entitled to one request for reconsideration, which is reviewed and decided by a different ruling official within AFMLS. 28 C.F.R. § 9.4(k)(3). Judicial review of a denial of remission is not available. *See United States v. One 1970 Buick Riviera Bearing Serial No. 494870H910774*, 463 F.2d 1168, 1170 (5th Cir.), *cert. denied*, 409 U.S. 980 (1972) (Attorney General has unreviewable discretion over remission or mitigation of forfeitures). Although the USAO and seizing agency must provide their recommendations as to the allowance or denial of a judicial petition for remission, the final determination rests with AFMLS. USAOs must take care not to make representations to the court or potential victims as to whether remission will be granted.

The determination of whether a victim is entitled to remission is governed by regulation. The breadth of options available for transfer of forfeited property to victims depends on the statute under which the property is forfeited. The options are broadest in criminal forfeiture, where the Attorney General has statutory authority not only to grant petitions for remission to victims of the offense underlying the forfeiture that is the basis for the forfeiture, but also to *"take any other action to protect the rights of innocent persons which is in the interests of justice* and which is not inconsistent with the provisions of [the applicable chapter or section]." 21 U.S.C. § 853(i)(1), incorporated by reference in 18 U.S.C. § 982 (emphasis added). In civil forfeitures, the statutory authority is less broadly stated, and the Attorney General's authority to remit forfeited assets does not appear to extend to other such "innocent persons ... ." *See, e.g.*, 18 U.S.C. § 981(d); 21 U.S.C. § 881(d).

In administrative forfeitures, the authority to decide petitions for remission or mitigation rests with the seizing agency.[4] It is the responsibility of the agency to notify potential victims of the opportunity to file a petition for remission. The remission decision is at the discretion of the forfeiting agency and not reviewable in court. Questions regarding administrative forfeiture policies and procedures should be directed to the forfeiting agency. When petitions have been filed for both administratively and judicially forfeited assets in the same case, the seizing agency must coordinate with the forfeiture Assistant U.S. Attorney (AUSA) assigned to the case.

---

[3] VNS is a free, computer-based system developed by the Department of Justice to provide important information to victims of federal crimes.

[4] *See, e.g.*, 19 C.F.R. Parts 171 and 172.2; 26 C.F.R. Part 403, Subpart D; 28 C.F.R. § 9.1(b)(1).

Ex 2-203

Case 2:21-mc-00098-TLN-AC   Document 84   Filed 07/02/21   Page 44 of 64
Case 2:11-cr-00234-TLN   Document 586-4   Filed 02/21/19   Page 61 of 71

Chapter 12: Forfeiture and Compensation for Victims of Crime

Many forfeiture cases begin administratively and become judicial when a party files a claim challenging the agency forfeiture. In such cases, the petition must be adjudicated by AFMLS. However, the petitioner need not submit a second petition. The seizing agency should forward the petition to the USAO to further submit to AFMLS.

### A.1   Standards for victims, 28 C.F.R. Part 9

The factual basis and legal theory underlying the forfeiture will determine who qualifies as a victim under 28 C.F.R. Part 9. The term victim means a person who has incurred a pecuniary loss as *a direct result of the commission of the offense underlying a forfeiture.* 28 C.F.R. § 9.2 (emphasis added).[5] Federal agencies can qualify as a victim under the regulations.

Victims may also recover losses caused by a related offense. 28 C.F.R. § 9.8(a)(1). *Related offense* means: "(1) Any predicate offense charged in a Federal Racketeer Influenced and Corrupt Organizations Act (RICO) count for which forfeiture was ordered; or (2) An offense committed as part of the same scheme or design, or pursuant to the same conspiracy, as was involved in the offense for which forfeiture was ordered." 28 C.F.R. § 9.2.

### A.2   Qualification to file

A victim may be granted remission of the forfeiture of property if the victim satisfactorily demonstrates that:

> (1) a pecuniary loss of a specific amount has been directly caused by the criminal offense, or related offense, that was the underlying basis for the forfeiture, and the loss is supported by documentary evidence including invoices and receipts; (2) the pecuniary loss is the direct result of the illegal acts and is not the result of otherwise lawful acts that were committed in the course of the criminal offense; (3) the victim did not knowingly contribute to, participate in, benefit from, or act in a willfully blind manner towards the commission of the offense, or related offense, that was the underlying basis for the forfeiture; (4) the victim has not in fact been compensated for the wrongful loss of the property by the perpetrator or others; and (5) the victim does not have recourse reasonably available to other assets from which to obtain compensation for the wrongful loss of the property.

28 C.F.R. § 9.8(a).

"The amount of the pecuniary loss suffered by a victim for which remission may be granted is limited to the fair market value of the property of which the victim was deprived as of the date of the occurrence of the loss." 28 C.F.R. § 9.8(b). This provision presents three issues to be determined in connection with calculating a victim's loss: (1) What property did the victim lose as a direct result of the illegal activity; (2) When was the victim deprived of it; and (3) What was the fair market value of that property at that time? The term "fair market value" is not defined in 28 C.F.R. Part 9. When the loss is property other than money, the date of the victim's loss and the fair market value of the property on that date must be decided in order to determine the victim's recoverable loss.

A victim's pecuniary loss must be supported by documentary evidence. 28 C.F.R. § 9.8(a)(1) and (2). Losses that are secondary to the principal loss, such as "interest foregone or for collateral expenses incurred to recover lost property or to seek other recompense," are not eligible for remission. 28 C.F.R. § 9.8(b).

---

[5] A *person* is "an individual, partnership, corporation, joint business enterprise, estate, or other legal entity capable of owning property." 28 C.F.R. § 9.2.

Losses are also ineligible for remission if they result from property damage or physical injuries, or from a tort associated with illegal activity that formed the basis for the forfeiture, unless the tort constitutes the illegal activity itself. 28 C.F.R. § 9.8(c). Victims who "knowingly contribute to, participate in, benefit from, or act in a willfully blind manner towards the commission of the offense, or related offense, that was the underlying basis for the forfeiture" are also ineligible for remission. 28 C.F.R. § 9.8(a)(3).

A victim need not show that his or her funds are among the funds that have been forfeited in order to establish eligibility for remission. Similarly, the tracing of a particular victim's funds into a forfeited account does not give that victim priority over other victims whose funds cannot be traced.

### A.3   Priority in multiple-victim remission cases

Priority in the distribution of forfeited assets is given to valid owners, lienholders, federal financial regulatory agencies,[6] and victims (in that order), who in turn have priority over official use requests and equitable sharing requests. In cases involving more than one victim, the ruling official will generally grant remission on a pro rata basis where the amount to be distributed is less than the value of the victims' losses. Additional exceptions are permitted only in rare situations, such as when pro rata distribution would result in extreme hardship to a victim or when a victim has better evidence of loss than other victims.[7] However, the tracing of a particular victim's funds into a forfeited account does not give that victim priority over the victims whose funds cannot be traced.

### A.4   Trustees

AFMLS may opt to hire a trustee/claims administrator in large, multiple-victim cases to assist in notifying potential victims of the opportunity to seek remission, in processing the petitions, and in making decision recommendations. 28 C.F.R. § 9.9(c). AFMLS will coordinate with the USAO and lead seizing agency during the selection process. In addition, if a trustee has been appointed in parallel regulatory or bankruptcy actions, AFMLS may approve transfer of funds for distribution to the trustee for ultimate payment to the identified victim pool.

USAOs and agencies interested in utilizing the services of a trustee or claims administrator to support the remission and restoration processes are encouraged to consult early with AFMLS. AFMLS awarded a contract to three vendors to provide claims administration support services in cases that will result in forfeited funds being returned to victims through the remission or restoration processes. This national contract simplifies procurement actions, and also streamlines petition review and payment distribution in victim cases where highly experienced and expert firms are required to handle the volume of petitioners.

### A.5   Additional grounds for denial of remission to victims

Remission to victims may be denied: (1) if determination of the pecuniary loss to be paid to individual victims is too difficult; (2) if the amount to be paid to victims is small compared to the expense incurred by the Government in deciding the victims' claims; or (3) if the total number of

---

[6] A federal financial regulatory agency is generally entitled to priority of distribution over non-owner victims for losses and expenses incurred in its capacity as receiver of a failed institution. This priority, codified in the federal regulations at 28 C.F.R. § 9.8(h), is applicable only for reimbursement of the Federal Deposit Insurance Corporation's payments to claimants and creditors of the institution and/or reimbursement of insurance fund losses under 18 U.S.C § 981(e)(3), and for fraud losses associated with the sale of assets held in receivership pursuant to section 981(e)(7).

[7] 28 C.F.R. § 9.8(e).

EX 2205

Case 2:21-mc-00098-TLN-AC  Document 84  Filed 07/02/21  Page 46 of 64
Case 2:11-cr-00234-TLN  Document 586-4  Filed 02/21/19  Page 63 of 71

Chapter 12: Forfeiture and Compensation for Victims of Crime

victims is large and the amount available for payment to victims is so small as to make granting payments to victims impractical. 28 C.F.R. § 9.8(d).

### A.6  Timeliness

Victims should file petitions for judicially forfeited assets generally within 30 days after receiving notice. However, when a victim fails to submit a valid petition within 30 days, exceptions may be allowed for good cause based on the particular circumstances of the case.

## B.  Restoration

In 2002, the Criminal Division issued procedures, known as the Restoration Procedures, designed to simplify and accelerate the return of forfeited property to victims. These procedures apply where (1) both restitution to compensate victims and a related forfeiture (either civil, criminal, or administrative) have been ordered, (2) the victims and amounts listed in the restitution order essentially conform to the victims and amounts that would have been paid through the forfeiture remission process, and (3) other property is not available to satisfy the order of restitution.

The Restoration Procedures enable the Government to complete the forfeiture and recover costs. This permits victims to obtain fair compensation from the forfeited assets, in accordance with the court's restitution order, without having to file petitions for remission with the Government and await decisions on the same. Restoration is a standardized alternative procedure to petitions for remission, designed to accommodate victims and the courts to the furthest extent possible, while still meeting the statutory and regulatory requirements for remission.

### B.1  Background

Because forfeited assets are property of the Government, courts and defendants lack authority to use them to satisfy a defendant's criminal debts, including fines or restitution obligations. *See United States v. Trotter*, 912 F.2d 964 (8th Cir. 1990). In many cases, defendants are left with little or no property after the forfeiture is completed. Thus, prior to the issuance of the Restoration Procedures, the Government often seized property, and then made it available to satisfy court-ordered restitution rather than complete the forfeiture. This process, while cumbersome, worked where the seized assets were cash or bank accounts, and where there were no competing claims for the property. However, where assets needed to be maintained and sold, or where third parties claimed an interest in the property, completion of the forfeiture was necessary, and victims were generally required to take the additional step of filing petitions for remission in order to recover any part of the forfeited assets. Under the Restoration Procedures, the Government may now forfeit property and transfer the proceeds to the court in satisfaction of the defendant's order of restitution. The Attorney General's restoration authority has been delegated to the Chief of AFMLS, pursuant to Attorney General Order No. 2088-97 (June 14, 1997).

### B.2  How the restoration process works

The Restoration Procedures require both a court order of restitution *and* an order (or declaration) of forfeiture. Because restoration decisions must be approved by the Chief of AFMLS (as delegated by the Attorney General), the USAO or court may not unilaterally direct forfeited assets to be applied to restitution. However, the Restoration Procedures allow, when requested by the USAO, preliminary

Case 2:21-mc-00098-TLN-AC  Document 84  Filed 07/02/21  Page 47 of 64
Case 2:11-cr-00234-TLN  Document 586-4  Filed 02/21/19  Page 64 of 71

Chapter 12: Forfeiture and Compensation for Victims of Crime

review of the expected restitution and forfeiture order by AFMLS so that AUSAs may advise the
court of the Government's intended distribution of the property.

To use the Restoration Procedures, the USAO must send the Chief of AFMLS a copy of the Judgment
in a Criminal Case containing the order of restitution and a copy of the forfeiture order, along with a
written request signed by the U.S. Attorney, or his or her designee, that includes the representations
set forth at Section I.B.3 below. Once the Chief of AFMLS has approved the request for restoration,
AFMLS notifies both the USAO and the custodian of the property. The custodian then transfers the
net proceeds of the forfeiture to the clerk of court for distribution pursuant to the order of restitution.

Restoration is appropriate only when the distribution pursuant to the restitution order is essentially
the same as the distribution that would be obtained through the remission process. Prosecutors
wishing to use the Restoration Procedures must work with the seizing agency, probation officer and
the court to make sure that the court's restitution order lists the names of all victims and the amount
of restitution due to each. Prosecutors also should be cognizant that restitution is generally available
for a much broader category of harms than may be satisfied through remission, which is allowed only
for pecuniary losses caused by the offense underlying the forfeiture or a related offense. Moreover,
28 C.F.R. § 9.8(b) provides that the victim's loss is limited to the fair market value of the property of
which the victim was deprived, as of the date of the loss. No allowance is made for interest forgone,
lost profits, or collateral expenses incurred to recover lost property or to seek other recompense.
Thus, restoration may not be used where a significant portion of the losses covered by the restitution
order relate to bodily harm, property damage, future expenses and collateral expenses such as legal,
accounting, or security expenditures incurred in trying to correct the harm caused by the crime. If the
restitution order is not amenable to the restoration process, the USAO will be advised and assets may
be distributed through the remission process.

### B.3 Representations

The Restoration Procedures are designed to accomplish results that are consistent with the standards
that apply to the remission of forfeited assets at 28 C.F.R. § 9.8. In order to ensure that such standards
are met, the U.S. Attorney, or his or her designee, must inform AFMLS of the following, in writing
and accompanied by a signature, as part of the request for restoration:

- All known victims have been properly notified of the restitution proceedings and are properly
  accounted for in the restitution order. This representation is intended to ensure that no victims
  have been left out of the restitution order and that all are treated fairly in the order.

- To the best of the U.S. Attorney's, or designee's, knowledge and belief after consultation with
  the seizing agency, the losses described in the restitution order have been verified, comport
  with the remission requirements, and reflect all sources of compensation received by the
  victims, including returns on investments, interest payments, insurance proceeds, refunds,
  settlement payments, lawsuit awards, and any other sources of compensation for their losses.
  This is to avoid double recovery by victims who may already have been compensated for part
  of their losses.

EX 2207

Case 2:21-mc-00098-TLN-AC    Document 84    Filed 07/02/21    Page 48 of 64
Case 2:11-cr-00234-TLN    Document 586-4    Filed 02/21/19    Page 65 of 71

Chapter 12: Forfeiture and Compensation for Victims of Crime

- To the best of the U.S. Attorney's, or designee's, knowledge and belief after consultation with the seizing agency, reasonable efforts to locate additional assets establish that the victims do not have recourse reasonably available to obtain compensation for their losses from other assets, including those owned or controlled by the defendants. This is to ensure that restoration does not confer an undue benefit on the defendant.

- There is no evidence to suggest that any of the victims knowingly contributed to, participated in, benefitted from, or acted in a willfully blind manner, toward the commission of the offenses underlying the forfeiture or a related offense. This is to prevent the return of forfeited property to those who essentially took part in the conduct that led to the forfeiture.

The USAO must ensure that the time for filing an appeal challenging either the restitution order or the forfeiture has passed, or all relevant appeals have been adjudicated, prior to submitting the restoration request to AFMLS.

Because restitution and forfeiture are mandatory and independent parts of a criminal sentence, the forfeited assets may not be used to satisfy the restitution order if other assets are available for that purpose. Typical examples of this situation might involve corporations that have extensive holdings that are not subject to forfeiture, or individuals who have property that exceeds the amount subject to forfeiture. The statutes governing restitution permit the Government to enforce the restitution order as a final judgment against almost all of the defendant's property, not just facilitating property or fraud proceeds that may be subject to forfeiture.

### B.4  Payment

If the assets are to be restored to the victims listed in the restitution order, AFMLS will notify the USAO and property custodian in writing. The custodian will then transfer the net forfeited proceeds to the clerk of court for distribution pursuant to the restitution order. Payments will be made *only* in accordance with the court's restitution order. If the forfeited assets are not sufficient to fully satisfy the order, payment will be made on a pro rata basis, according to the losses listed in the restitution order.

### B.5  Benefits

The Restoration Procedures are intended to assist AUSAs in their use of forfeited assets to compensate victims and to assist victims in their pursuit of compensation. Victims will not need to file petitions for remission, and the process of returning funds to victims will typically be faster. The forfeiture will be completed so that costs can be recovered and third-party rights extinguished. Proceeds from civil, criminal, and administrative forfeitures[a] can be handled together and applied to restitution. Forfeiture AUSAs and agents will get credit for their work, and assets will be distributed primarily as they would have been under the remission regulations.

---

[a] In administrative forfeitures involving TFF member agencies, the USAO must obtain the written concurrence of the local and/or Headquarters TFF seizing agency before AFMLS may approve restoration of forfeited funds for purposes of criminal restitution. *See Guidelines for Treasury Forfeiture Fund Agencies on Refunds Pursuant to Court Orders, Petitions for Remission, or Restoration Requests,* sections VI.B.2.a.ii; VI.B.3.b. Treasury Executive Office for Asset Forfeiture (TEOAF) policy does not permit the release of administratively forfeited funds to crime victims without the prior approval of the TFF seizing agency. *See id.* at section VI.B.2.a.ii.2.

EX 2208

Case 2:21-mc-00098-TLN-AC   Document 84   Filed 07/02/21   Page 49 of 64
Case 2:11-cr-00234-TLN   Document 586-4   Filed 02/21/19   Page 66 of 71

Chapter 12: Forfeiture and Compensation for Victims of Crime

### C. Special considerations for victims of human trafficking crimes

On May 29, 2015, the Justice for Victims of Trafficking Act was enacted. As a result, 18 U.S.C. § 1594 now directs the Attorney General to pay victim restitution orders in cases where a forfeiture occurs pursuant to section 1594. *See* 18 U.S.C. § 1594(f)(1). Accordingly, AFMLS will process requests from the USAOs in accordance with this new statutory language regardless if the victims' losses are considered "pecuniary" as defined by the relevant remission regulations. If no restitution order exists in cases where a forfeiture occurs pursuant to section 1594, AFMLS will consider petitions for remission that include a claim of lost wages (based on minimum wage) as the victim's pecuniary loss.

However, section 1594 does not allow for innocent owner or lienholder priority in petition for remission cases. *See* 18 U.S.C. § 1594(f)(2). Therefore, the USAO must resolve all outstanding innocent owner and lienholder claims through the judicial forfeiture process.

### D. Timing

Civil and administrative forfeiture actions can proceed faster than the parallel criminal case. Consequently, assets might be forfeited, equitably shared, placed into official use, or remitted to victims who file petitions long before restitution is ordered, and would not be available for application to the restitution order. To avoid this outcome, the USAO must coordinate with the seizing agency to ensure the retention of property for remission or restoration. In addition, the USAO must place a "hold" on the distribution of seized assets in the Consolidated Assets Tracking System (CATS). If assets are transferred for official use or equitable sharing prior to victim compensation, the transfer may be reversed at the discretion of the Chief of AFMLS or the Director of the Treasury Executive Office for Asset Forfeiture (TEOAF) (for seizures by TFF member agencies) to make the property available for remission or restoration.

Because CATS is not the TFF system of record, the USAO must request that the TFF preserve the asset in cases where restitution may be ordered or where remission or restoration may occur. To ensure the preservation of the forfeited property in judicial cases involving TFF agencies, the USAO must also timely notify and send a copy of the restoration request to the TFF seizing agency. *See Guidelines for Treasury Forfeiture Fund Agencies on Refunds Pursuant to Court Orders, Petitions for Remission, or Restoration Requests*, section VI.B.2.a.i.[9]

### E. Termination of forfeiture and direct payment of assets to victims

#### E.1 Overview

In some situations, it may be preferable for the USAO to move to dismiss the forfeiture proceeding and request the court to direct the property be turned over as restitution directly to the victim pursuant to 18 U.S.C. § 3663A(b)(1)(A), or be transferred to the clerk of court to be paid to the victim. This approach may be preferable to remission or restoration when the victim is entitled to restitution for non-pecuniary harm or other collateral costs that are not compensable under the remission regulations. In addition, termination of forfeiture may be desirable in multiple-victim fraud cases arising in jurisdictions with unfavorable case law concerning constructive trusts. *See* Section II, "Constructive Trusts in Multiple-Victim Fraud Cases," below. Termination of forfeiture is appropriate

---

[9] *Available at* http://www.treasury.gov/resource-center/terrorist-illicit-finance/Asset-Forfeiture/Documents/bluebook.pdf.

EX 2209

only if no final order of forfeiture has been entered, as once property is forfeited to the Government, the Attorney General is solely responsible for its disposition. 18 U.S.C. § 982(b)(1) (incorporating 21 U.S.C. § 853(i)). If payment is to be made to the victim through the clerk of court, the property subject to forfeiture must be liquid, as the clerk cannot liquidate real or personal property. For example, the default method of sale to execute a restitution judgment is a sale by the U.S. Marshals Service (USMS) at the courthouse.[10]



**E.2  Is a prosecutor bound, ethically or otherwise, to forego forfeiture in favor of restitution?**

Forfeiture and restitution are two separate components of many criminal sentences; both are mandatory upon conviction.[11] In 1996, the Mandatory Victims Restitution Act (MVRA) made restitution mandatory for most federal crimes where a victim suffers a loss. *See* 18 U.S.C. § 3663A(a)(1).[12] If a court orders restitution, it must order full restitution for the victim's loss, regardless of the defendant's ability to pay. *See, e.g., United States v. Battles*, 745 F.3d 436, 460 (10th Cir. 2014) ("The MVRA requires 'the sentencing court [to] order a defendant convicted of a felony through fraud or deceit to pay restitution to the victims of [her] illegal conduct.' *United States v. Parker*, 553 F.3d 1309, 1323 (10th Cir. 2009)"); *United States v. Newman*, 144 F.3d 531 (7th Cir. 1998) ("Under the MVRA, a defendant's financial status is relevant only to fixing a payment schedule for the mandated restitution"). Likewise, courts must order forfeiture when a defendant is convicted of a statute that provides for forfeiture as part of the penalty. *See, e.g.,* 18 U.S.C. § 982: "The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, *shall order* that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." (emphasis added); *United States v. Monsanto*, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applie[s]"); *United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014) ("Forfeiture is mandatory even when restitution is also imposed."). Given the mandatory nature of the two components of a sentence, it is entirely appropriate for a defendant to pay both a forfeiture and restitution. *See Blackman*, 746 F.3d at 143; *United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014); *United States v. Kalish*, 626 F.3d 165, 169-70 (2d Cir. 2010); *United States v. Carter*, 742 F.3d 440, 447 (9th Cir. 2013); *United States v. Torres*, 703 F.3d 194, 204 (2d Cir. 2012). And defendants have no right to a credit against a restitution order for the amount forfeited. *See United States v. Newman*, 659 F.3d 1235, 1241-43 (9th Cir. 2011) (5th Cir. 2009); *United States v. Pescatore*, 637 F.3d 128, 127 (2d Cir. 2011); *United States v. Alalade*, 204 F.3d 536 (4th Cir. 2000).

The Justice for All Act, 18 U.S.C. § 3771, obligates "officers and employees of the [Department of Justice] and other departments and agencies engaged in the detection, investigation or prosecution of crime [to] make their best efforts to see that crime victims are … accorded the rights …" under the act,[13] including the right to full and timely restitution as provided by law. The perceived tension between forfeiture and restitution emerges when, as is often the case, a defendant lacks the financial ability to pay both the forfeiture and restitution. When a defendant lacks the resources to make full restitution, Department of Justice (Department) policy is to collect and marshal assets for the benefit

---

[10] *See* 28 U.S.C. § 3203(g)(1)(A)(i).

[11] *See, e.g.,* 18 U.S.C. § 982(a)(1) and 28 U.S.C. §2461(c); *see also* 18 U.S.C. §3663A (Mandatory Victims Restitution Act).

[12] "Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense …"

[13] 18 U.S.C. § 3771(c)(1).

EX 2210

Case 2:21-mc-00098-TLN-AC   Document 84   Filed 07/02/21   Page 51 of 64
Case 2:11-cr-00234-TLN   Document 586-4   Filed 02/21/19   Page 68 of 71

Chapter 12: Forfeiture and Compensation for Victims of Crime



of victims using available means.[14] These means include discontinuance of a forfeiture before a final order and asking the court to direct the custodian to turn over "liquid assets" (e.g., assets that do not require a sale to convert the property to cash) to the clerk of court to be applied to restitution; the forfeiture of the defendant's assets and the handling of victim claims through the petition for remission or mitigation process; or the completion of the forfeiture action and the restoration of forfeited assets to victims through a restoration process approved by AFMLS.

At present, there is only a limited ability to restrain assets prior to trial solely for the purpose of restitution.[15] The restraint or seizure mechanisms provided by the asset forfeiture statutes are often the only effective mechanisms to prevent a criminal defendant from dissipating assets prior to sentencing. As there are at least three means whereby restrained or forfeited property may be turned over to victims, there is nothing improper in seeking forfeiture in cases where the prosecutor knows early on that a defendant is unlikely to be able to pay restitution if the assets are forfeited. Restraint and forfeiture do not preclude those same assets from being turned over to victims. Indeed, without the restraint and seizure mechanisms of the forfeiture statutes, a victim has much less chance of ever receiving restitution.

Thus, a prosecutor who uses forfeiture tools as a means to provide remission or restoration of assets to crime victims fulfills any obligation that prosecutor may have under the Justice for All Act to crime victims.[16] Various courts have acknowledged this use of the forfeiture statutes. *See United States v. Kaley,* 134 S.Ct. 1090, 1094 (2014) ("The Government also uses forfeited property to recompense victims of crime ..."); *United States v. Lavin,* 299 F.3d 123 (2d Cir. 2002) (instead of pursuing forfeiture, Government used seized funds to satisfy restitution order); *United States v. O'Connor,* 321 F. Supp. 722 (E.D. Va. 2004) (although defendant has no right to use forfeited funds to satisfy a restitution order, the Government may, pursuant to 21 U.S.C. § 853(i)(1), apply the forfeited funds for benefit of the victims through restoration or remission).

---

[14] *See also* Attorney General's Guidelines for Victim and Witness Assistance, Art. V, Sec. H.2 (rev. May 2012).

[15] Under 18 U.S.C. § 1345(a)(1), the pre-trial restraint of assets is authorized in fraud-type cases, but only in limited circumstances.

[16] Adverse court of appeals decisions in some circuits have made the administrative and civil forfeiture of fraud proceeds impractical in cases that involve large numbers of victims and that must be filed in those circuits. *See* Sec. II.

EX 2211

# EXHIBIT
# H

| | |
|---|---|
| 1   STEVEN ZINNEL, X-1858541 |  |
| 2   Sacramento County Main Jail | **FILED** |
| 3   651 I Street | APR 1 8 2019 |
| 4   Sacramento, CA 95814 | CLERK, U.S. DISTRICT COURT |
| 5 | EASTERN DISTRICT OF CALIFORNIA |
| 6   Defendant in Pro Se | BY _____ DEPUTY CLERK |

7

8                 IN THE UNITED STATES DISTRICT COURT

9

10                 EASTERN DISTRICT OF CALIFORNIA

11

12

| 13   UNITED STATES OF AMERICA | Case No. 2:11-cr-234-TLN |
|---|---|
| 14 | |
| 15        Plaintiff, | **DEFENDANT STEVEN ZINNEL'S** |
| 16   v. | **SENTENCING MEMORANDUM** |
| 17 | **AFTER REMAND** |
| 18   STEVEN ZINNEL, | <u>SENTENCING DATE</u> |
| 19 | |
| 20        Defendant. | Date: May 2, 2019 |
| 21 | Time: 1:30 PM |
| 22 | Court: Hon. Troy L. Nunley |

23

24      Defendant Steven Zinnel ("Zinnel") hereby submits his Sentencing Memorandum after

25 remand from the Ninth Circuit Court of Appeals, in Support of his forthcoming resentencing: [1]

26      • *Because we can:*

27             *The motto of power since the idea of power over others was born in our kind.*

28      • *Distrust all in whom the impulse to punish is strong.* Friedrich Nietzsche

29      • *The degree of civilization in a society can be judged by entering its prisons.*

30          Russian writer Fyodor Dostoevsky

---

[1] Zinnel has filed twenty-two (22) volumes of Exhibits in support of this Sentencing Memorandum (see ECF nos. 585, 586, and the exhibits concurrently filed). Herein, Zinnel will refer to the Exhibits by Volume number and the exhibit number on the bottom left of each page of the exhibits. e.g. (Vol. ___, Ex. ___).

1   the government including California *Business and Professions Code* § 6068(d) and § 6068(f).

2   (Vol. 18, Ex. 2625-2663).


3   **25. Provide restitution to any victims of the offense - 18 U.S.C. § 3553 (a)(7)**

4

5        Congress has mandated that sentencing judges **shall** consider "the need to provide

6   restitution to any victims of the offense." 18 U.S.C. § 3553 (a)(7). The Ninth Circuit teaches

7   "the district court's goal of obtaining restitution for the victims of Defendant's offense, 18 U.S.C.

8   § 3553(a)(7), is better served by a non-incarcerated and employed defendant." *United States v.*

9   *Menyweather*, 447 F.3d 625, 634 (9 CA, 2006) (en banc).


10        When Zinnel moved to stay the sale of real property forfeited prior to sentencing, the

11   government opposed the motion to stay. (Vol. 15, Ex. 2101-2107). The government's opposition

12   filed March 3, 2014, stated: *"The only way that he would be prejudiced by forfeiture and*

13   *liquidation of these assets would be that they could generate funds that the Attorney General*

14   *could in his discretion direct to Zinnel's victims (including his ex-wife). Zinnel's spite is a*

15   *sentencing factor, not a basis for a motion to stay."* (Vol. 15, Ex. 2101, lines 22-25). Zinnel

16   agreed to restitution so that Zinnel could get his children Zac and Zayna Zinnel money for

17   college. (Vol. 15, Ex. 2115). The government and Zinnel stipulated to $150,000 each to Zac

18   and Zayna Zinnel (Vol. 15, Ex. 2121-2123). The Judgment awarded Zac and Zayna Zinnel

19   $150,000 each. (Vol. 15, Ex. 2125). However, contrary to the government lawyers' lofty

20   representations to the Court about "getting the victims paid," it took the government until March

21   and June of 2016 to sell the property. (Vol. 15, Ex. 2131 & 2132). Therefore it took the

22   government 756 days to sell the property that the government represented to the Court on March

23   3, 2014 was "expensive to maintain." (Vol. 15, Ex. 2101-2107).

1    On September 21, 2016, government lawyer AUSA Kevin Khasigian sent an email to
2    Zinnel's lawyer Suzanne Luban admitting the government was sitting on $3,149,604.14. (Vol.
3    15, Ex. 2133). Over the next year, Zinnel wrote several letters to the government trying to get
4    the government to pay his children $150,000 each per the Judgment. The government lawyers
5    failed to respond. Therefore, on December 5, 2017, Zinnel filed a Motion to Enforce the
6    Judgment and Hold Plaintiff and its lawyers in contempt of court for failing to pay the restitution
7    recipients including Zinnel's children. (Vol. 15, Ex. 2151-2181). AUSA Matthew D. Segal
8    opposed the motion which is no surprise.    (Vol. 15, Ex. 2190-2191). Even though the
9    government opposed Zinnel's motion to stay calling Zinnel "spiteful," AUSA Matthew D. Segal
10   talked out of the other side of his mouth in opposing Zinnel's Motion to Enforce the Judgment
11   by writing that the U.S. Dept. of Justice Asset Forfeiture Policy Manual states: *The USAO must
12   ensure that the time for filing an appeal challenging either the restitution order or the forfeiture*
13   *has passed, or all relevant appeals have been adjudicated, prior to submitting the restoration*
14   *request to AFMLS."* (Vol. 15, Ex. 2191). Therefore, it is the government that is spiteful in
15   opposing Zinnel's motion to stay pending appeal when they claim that it is DOJ policy not to pay
16   out restitution money the government is sitting on during the pendency of appeal.

17

18

19
20
21
22
23
24
25
26
27
28

# EXHIBIT
# I

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

          Plaintiff,

                         Case No. 2:11-cr-00234

     vs.

                         Sacramento, California
STEVEN ZINNEL,              May 3, 2019
                         1:30 p.m.

          Defendant.

_____ /


JUDGMENT AND SENTENCING - VOLUME TWO - P.M. SESSION
BEFORE THE HONORABLE TROY L. NUNLEY
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:         UNITED STATES ATTORNEY
                         501 I Street, Suite 10-100
                         Sacramento, California 95814
                         BY:   MATTHEW M. SEGAL
                              AUDREY HEMESATH
                              Assistant U.S. Attorneys


For the Defendant:          Steven Zinnel
                         (Appearing pro se)


Court Reporter:             DIANE J. SHEPARD, CSR 6331, RPR
                         Official Court Reporter
                         501 I Street, Rm 4-200
                         Sacramento, California 95814
                         (916) 554-7460

Proceedings reported by mechanical stenography, transcript
produced by computer-aided transcription.

```
 1    sitting some place to hold for my children.  I simply said that
 2    there is a fiduciary that will hold the money in trust.
 3    So on getting the victims paid, one thing it goes to ending
 4    litigation. I know there is no doubt in anybody in this
 5    courtroom or most other people that know about this case that if
 6    I don't get a sentence that allows me to be released from the
 7    courtroom and/or within days and no supervised release, there is
 8    no doubt there's going to be a Zinnel VI direct appeal. It's
 9    not out of spite.  I just know when I look at those bankruptcy
10    fraud tables and what these -- Andrew Fastow got -- by the way,
11    the Ninth Circuit didn't reach substantively reasonableness last
12    time but they may very well this time.  I briefed that
13    extensively.
14    But my point is on this is if the litigation ends today,
15    then there is no excuse for the Government or for Matt Segal not
16    to get the victims paid.
17         I do know in Jeff Skilling's case, one of the reasons why
18    that the Government agreed to end the litigation was there was
19    about $50 million in victim money that had been tied up for
20    14 years, something like that.  That's a number that sticks in
21    my head.  But I'm not making that representation if it's exactly
22    14 years.
23              MR. SEGAL:  Your Honor, he's inviting bargaining in
24    front of you.
25              THE DEFENDANT:  I'm not --
```

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

                          Case No. 2:11-cr-00234

    vs.

                          Sacramento, California
STEVEN ZINNEL,                May 6, 2019
                          8:30 a.m.

        Defendant.

_____/


JUDGMENT AND SENTENCING - VOLUME THREE
BEFORE THE HONORABLE TROY L. NUNLEY
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:         UNITED STATES ATTORNEY
                        501 I Street, Suite 10-100
                        Sacramento, California 95814
                        BY:   MATTHEW M. SEGAL
                             AUDREY HEMESATH
                        Assistant U.S. Attorneys


For the Defendant:          Steven Zinnel
                        (Appearing pro se)


Court Reporter:             DIANE J. SHEPARD, CSR 6331, RPR
                        Official Court Reporter
                        501 I Street, Rm 4-200
                        Sacramento, California 95814
                        (916) 554-7460


Proceedings reported by mechanical stenography, transcript
produced by computer-aided transcription.

1   my life to start today.  It's more than past time.  I want to
2   create new happy memories.

3      This case for all intents and purposes has been in
4   continuous litigation since June 8, 2011.  92.8 months.
5   7.7 years.  There's been a trial.  There's been multiple appeals
6   there.  There is still a pending Supreme Court petition, lots of
7   law and motion, lots of court filings.  There's been two
8   sentencing proceedings.  There can be another appeal.  There can
9   be a 2255.  There can be a new trial, there could be a third
10  resentencing.  There could be a new judge.

11     In other words, lots of past litigation and potential for
12  future litigation.  I want to make it clear.  I do not want to
13  litigate anymore, but my resolve to fight for what's right as
14  I've demonstrated is still strong, and I will litigate if
15  necessary.

16     It is possible that this litigation can end today at this
17  resentencing if just punishment is imposed.  The sentence
18  promotes respect for the law.  And I'm sentenced to what
19  similarly situated bankruptcy fraud defendants receive which is
20  between 19 and 36 months of imprisonment.  And based on my
21  69 months of incarceration to date, no term of supervised
22  release.

23     If this right sentence is imposed, the litigation will stop.
24  This case will end today.  I will be unhappy.  I will be angry.
25  I will grumble loudly.  I will have a bitter taste in my mouth

1   for the rest of my life of how justice was served in this case,

2   but I will go away. I will live a law abiding life. I will do

3   everything in my power to not be in the United States

4   Government's cross hairs again. I will stay out of any United

5   States courthouse.

6       I seek your mercy, Your Honor. I told you what has happened

7   to my loved ones. I'm humiliated. I'm humbled. I have shame.

8   I have regret. I do not want my life to be defined by what is

9   on the internet right now based upon the Government's

10  misrepresentations and lies. That is not who I am.

11      Your Honor, I am a difference maker. I know it is my

12  purpose in life to make a positive difference. I hope that

13  God's purpose for me is to make a positive difference outside of

14  prison. But if need so, I will. But I trust God. I've done

15  some really good things in the first 55 years of my life, but

16  now I've had a whole first half life fired. My life right now

17  is smoldering ashes. I, like many men and women who have had

18  terms of incarceration, am seeking to live my second-half life

19  productively and law abiding. I want the world to be better

20  because I was here.

21      I want my life, my work, my family to mean something. My

22  present circumstances don't determine where I can go. They

23  merely determine where I can start. I plead with you to end

24  this case today. Stop the horror that's been inflicted on me

25  and my loved ones. My incarceration has been long and wrong.

1    Your Honor, every saint has a past, every sinner has a

2    future.  I plea for your compassion.  I plea for a just

3    sentence.  I plea to end this case today.  Justice is not the

4    way we punish those who do wrong.  It is the way we try to save

5    them.

6        While locked in a six-by-eight concrete box at the

7    Sacramento County Main Jail, I read a devotional that said when

8    you're wondering what to do with your worst nightmare -- and

9    this case, at this juncture, is certainly my worst nightmare --

10   you have to choose faith or fear.  I choose faith.  I choose to

11   believe that God is up to something good even though I can't see

12   it.  I believe God will sustain you and whatever problem you

13   have.  It's a two-part test -- or two-part proposition.  Trust

14   God and do your best.  I trust God and I've done my best.

15       I drafted a Supreme Court petition.  I filed objections to

16   the PSR.  I filed a sentencing memorandum.  I filed exhibits.

17   I've argued my case.  I've finally been able to allocute.  I've

18   done my best, and that is who I am.

19       Courage and conviction are rare qualities in a man.  God has

20   blessed me with both.  I trust God's perfect plan and timing.  I

21   believe that suffering is part of something bigger.  My

22   children, my family and I have suffered excessively in this case

23   for a long time now.  However, justice, like the will of God,

24   does not always manifest itself in the spur of the moment.  It

25   doesn't come when you think it should.  You've got to wait it

1    out, and when it does, I will still be standing without a doubt.

2    Your Honor, I seek your mercy. I seek some measure of

3    justice. I implore you to end this case today with a sentence

4    that is reasonable, rational and right.

5    I end where I began.  Where I am is not who I am.  I am

6    Steve Zinnel, and I have something to say.

7            THE COURT:  All right.  Thank you, Mr. Zinnel.

8    Mr. Segal.

9            MR. SEGAL:  Thank you, Your Honor.

10    Your Honor, I want to begin by apologizing to Court for

11    trying to be heard while the defendant was arguing yesterday.

12            THE COURT:  You mean Friday.

13            MR. SEGAL:  Earlier in the proceeding.  And I've tried

14    to be quiet today as the Court has noticed.

15    I want to say that at the beginning of this whole thing the

16    Court indicated to the defendant that you were particularly

17    interested in whether he had any remorse or essentially

18    understanding of the wrongfulness of his actions.

19    And because he got to speak his heart for all of these

20    hours, and it's now 9:41, we know that the defendant does not

21    have any understanding that what he did with Done Deal, with

22    System 3, with Derian Eidson, with the Wilberts was wrong or

23    illegal.

24    He talks about the suffering of his mother.  I think the

25    Court remembers that at the beginning of the stream of checks

## CERTIFICATION OF SERVICE

### By United States Mail

I hereby certify that at the time of service, I was over the age of 18.  I further certify that on ___6/29/21___

I served a true and correct copy of the foregoing on:
AUSA Lynn Trinka Ernce
AUSA Kurt A. Didier
U.S. Attorney's Office, ED CA
501 I Street, Suite 10-100
Sacramento, CA  95814

Attorney for Plaintiff


K. Greg Peterson
K. Greg Peterson, A Professional Law Corporation
455 Capitol Mall, Suite 325
Sacramento, CA  95814

Attorney for Third-Party Claimant David Zinnel

by United States Mail, in a sealed envelope with the postage thereon fully prepaid, and then depositing the foregoing with prison authorities at FPC Sheridan, 27072 Ballston Road, Sheridan, OR  97378.

Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to a court, the court deems the pleading constrctively "filed" on the date it is signed.  Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); Houston v. Lack, 487 U.S. 266, 270-271, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Steven Zinnel, #66138-097
FPC Sheridan
P.O. Box 6000
Sheridan, OR  97378-6000