PHILLIP A. TALBERT
United States Attorney
LYNN TRINKA ERNCE
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>STEVEN ZINNEL,<br><br>　　　Debtor.<br><br>TD AMERITRADE CLEARING, INC.,<br><br>　　　Garnishee. | Case No. 2:21-mc-00098 TLN AC<br><br>**UNITED STATES OF AMERICA'S RESPONSE TO STEVEN ZINNEL'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS FOR FINAL ORDER OF GARNISHMENT**<br><br>**[Local Rule 304(d)]**<br><br>Criminal Case No. 2:11-cr-00234-TLN |

　　　All of defendant's objections to the magistrate judge's findings and recommendations lack merit. The Court should overrule all objections and enter a final order of garnishment requiring garnishee TD Ameritrade Clearing, Inc. to pay $1,012,047.08[1] to the Clerk and $150,000 to the United States. This will result in full payment of defendant's $500,000 fine, all victim restitution, and the negotiated $150,000 litigation surcharge, resolving all of the United States' claims in this garnishment action, the related garnishment action against the Castana Trust (Case No. 2:21-mc-00143), and the state probate court case.

---

[1] This amount is $1,008.98 less than the $1,013,056.06 the United States previously requested because: (1) the clerk took $983.98 previously applied to the special assessment and reapplied it to restitution because that amount was paid after the special assessment expired in March 2019, five years after entry of judgment (18 U.S.C. § 3013(c)); and (2) defendant made a $25 payment in May 2022.

**The Court Has Already Denied Defendant's Evidentiary Hearing Request**

Nobody agreed at the June 3 settlement conference that the Court would hold an evidentiary hearing to determine the amount defendant owes.[2] Instead, counsel for the United States made clear on the record that the United States would be proceeding to seek a final order of garnishment. Transcript at 29:2-4.  In any event, the Court already has denied defendant's request for a hearing on what he owes. ECF 89, 110.  It is the law of this case that Zinnel owed a $1,500.00 special assessment, a $500,000.00 fine, and restitution of $2,513,319.00, for total criminal monetary penalties owed of $3,014,819.00, plus the over-$3 million of assets the Court ordered forfeited. *Id.*  In recommending denial of defendant's hearing request, Magistrate Judge Claire ruled that the payment of criminal monetary penalties and forfeiture "are separate and distinct remedies with different purposes, and both forfeiture and restitution are independently enforceable." ECF 89 at 5.  Thus, "defendants may be required to pay restitution and forfeit the same amounts" and "requiring defendants to pay both restitution and criminal forfeiture 'is not an impermissible double recovery.'" *Id.* (quoting *United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011)). Judge Claire therefore found that defendant "clearly owes the money at issue." *Id.* at 5. The Court adopted the findings and recommendations and denied defendant's hearing request. ECF 110.

The United States was under no obligation to apply any of the forfeited assets to restitution; it could have enforced the entire $3,014,819.00 in criminal monetary penalties in addition to forfeiting over $3 million of defendant's assets.  But, instead, at the United States Attorney's Office's request, the Attorney General, acting through the DOJ Money Laundering and Asset Recovery Section ("MLARS"), engaged in the remission process and exercised discretion to approve payments from forfeited assets to the victims who submitted petitions.[3]  At the United States Attorney's Office's request, the Clerk of Court credited the forfeiture payments to reduce the restitution defendant owes, which is why he now owes $1,012,047.08, comprised of the $500,000.00 fine and $512,047.08 of restitution.[4]

---

[2] The term "evidentiary hearing" does not appear anywhere in the settlement conference transcript. *See generally* Transcript.

[3] MLARS determined that remission, not restoration, was appropriate.  Although defendant's victims were notified of the opportunity to file a remission petition, only some of them did.  Remission petitions are confidential and defendant is not entitled to any information regarding that process.

[4] Forfeited assets cannot be used to pay the $500,000.00 fine, and there are no other victim remission petitions pending, so no other forfeited assets will be available to further reduce restitution.

| | |
|---|---:|
| **Total Victim Restitution Owed** | $2,513,319.00 |
| **Less: Remission/Bankruptcy Payments[5]** | (2,000,262.94) |
| **Less: Transfer from Special Assessment** | (983.98) |
| **Less: Zinnel May 2022 Payment** | (25.00) |
| **Remaining Restitution Balance** | $512,047.08 |
| **Add:  Fine** | 500,000.00 |
| **Total Owed** | $1,012,047.08 |

**The Court Should Approve The United States' Litigation Surcharge Request**

The Court should overrule defendant's objections to the United States' request for a litigation surcharge.  The Federal Debt Collection Procedures Act ("FDCPA") entitles the United States to recover a surcharge of 10% of the amount of the debt in connection with the recovery of the debt, to cover its litigation and enforcement costs.  28 U.S.C. § 3011(a).  "Debt" is defined to include a defendant's criminal monetary penalties, including the assessment, fine, and restitution. 28 U.S.C. § 3002(3)(B). To qualify for a litigation surcharge, the United States' debt recovery action must arise under the FDCPA's pre-judgment remedies or post-judgment remedies. 28 U.S.C. § 3011(a); *United States v. Gonzales*, No. 1:20-mc-00033-BAM, 2020 WL 4463364, at *2 (E.D. Cal. Aug. 4, 2020) (citing *United States v. Sackett*, 114 F.3d 1050, 1053 (10th Cir. 1997)).  The United States' garnishment action is an FDCPA post-judgment remedy under 28 U.S.C. § 3205.

The Court already has ruled that defendant owed $3,014,819.00 in criminal monetary penalties, which is the full amount ordered in the judgment.  ECF 89, 100, 330, 386.  When the United States filed this action back in April 2021, defendant still owed $3,014,294.00.[6]  *See* ECF 1 at 2.  Thus, the United States' writ application requested a $301,429.40 litigation surcharge.  *Id.*  Although it was not required to do so, the United States agreed at the June 3, 2022 settlement conference to compromise the litigation surcharge by reducing it to $150,000.00 to facilitate settlement. Transcript at 6:10-14.

---

[5] Less than $30,000 of this amount represents payments to victims in Zinnel's bankruptcy case.

[6] Zinnel had made only $525 in payments before the United States filed this action.  The remission payments to victims that MLARS approved were made between February and May 2022.  Defendant's complaints that it has taken so long for the United States to apply forfeited assets to restitution ignore that: (1) the United States was not required to apply forfeited assets to restitution; and (2) the United States Attorney's Office cannot submit any restoration request to MLARS until all appeals challenging restitution or forfeiture have been adjudicated. *See* MLARS 2021 Asset Forfeiture Policy Manual, p. 170, *https://www.justice.gov/criminal-afmls/file/839521/download* (last visited 7/10/22).  MLARS determined that remission, not restoration, was appropriate here, and the remission process takes substantial time to complete.  *See id.* at pp. 164-166 (describing remission process).

UNITED STATES' RESPONSE TO STEVEN ZINNEL'S
OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

3

To date, defendant has filed over 40 motions, objections, and requests in what should have been a fairly straightforward garnishment action. The Court should approve the United States' request for a litigation surcharge of $150,000 so that it can recoup some of its litigation and enforcement costs.

### The Court Already Has Denied Defendant's Request To Transfer This Case

The Court should overrule defendant's objection to the findings and recommendations on grounds that the case should be transferred to another district because the Court already denied his transfer request over a year ago.

The FDCPA allows a debtor to request a transfer within 20 days after receiving the clerk's notice of the garnishment action. 28 U.S.C. § 3004(b)(2). Defendant requested a transfer to the District of Oregon on May 3, 2021 (ECF 21) and the Court denied the transfer request on May 10, 2021. ECF 27. Section 3004(b)(2) does not allow for more than one transfer request and, even if it did, defendant's current transfer request is untimely, having been made well over a year after he received the clerk's notice, and on the verge of the entire garnishment action being resolved. 28 U.S.C. § 3004(b)(2); *see United States v. O'Brien,* 851 Fed. Appx. 236, 239 (2d Cir. 2021) (declining to decide whether transfer is mandatory under 3004(b)(2) because transfer request was untimely).

Moreover, transfer to another district is not mandatory as defendant asserts. Although *United States v. Peters*, 783 F.3d 1361, 1363-64 (11th Cir. 2015) and *United States v. Nash,* 175 F.3d 440, 442 (6th Cir. 1999) both found that transfer under section 3004(b)(2) is mandatory,[7] there is no controlling Ninth Circuit authority on the issue, most district courts that have considered the issue have found that section 3004(b)(2) is discretionary and that courts have authority to modify garnishment procedures under section 3013, and to deny transfers for good cause.

For example, in 2021, in *United States v. Montijo,* the court held that "§ 3004(b)(2) does not deprive this court of its authority, under § 3013, to vary 'the use of any enforcement procedure under this statute.'" *United States v. Montijo,* No. 17-CR-518 (BCM), 2021 WL 2470507, at *3 (S.D.N.Y. May 19,

---

[7] Courts have distinguished both *Peters* and *Nash* because they involved federal tax crimes in violation of Title 26, and did not involve restitution under the Mandatory Victims Restitution Act. Additionally, *See United States v. Castellano*, No. 01-CR-30042-DWD, 2022 WL 1541686, at *2 (S.D. Ill. May 16, 2022); *United States v. Poulsen,* No. 2:06–CR–129–ALM–1, 2010 WL 184294, at *5 (S.D. Ohio May 3, 2010).

UNITED STATES' RESPONSE TO STEVEN ZINNEL'S
OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

4

2021). The court further found that there was good cause to deny the defendant's request to transfer the case to Southern California because he was not incarcerated; due to the ongoing COVID-19 pandemic, any necessary hearing would be held remotely, eliminating any risk or inconvenience of travel; and the court had determined that the defendant was not entitled to a hearing. *See id.* (collecting cases where courts have found transfer to be discretionary under section 3013 and denied transfer upon a showing of good cause). Those same factors are present here and warrant denial of defendant's transfer request.

In another recent case, *United States v. Castellano,* the court denied defendant's transfer request noting that "the bulk of district courts that have considered the FDCPA's transfer provision in collection cases arising from a restitution order arising under the MVRA have found that the transfer provision is not absolute." *United States v. Castellano*, No. 01-CR-30042-DWD, 2022 WL 1541686, at *2 (S.D. Ill. May 16, 2022) (collecting cases). The court held that transfer was inappropriate where, among other things, the staff in the U.S. Attorney's office had performed a detailed financial investigation into the defendant and that knowledge was not easily transferred to another district and "there is a strong relationship between the forum community and the subject litigation; the underlying criminal offense [occurred in this district] and the government chose to prosecute the action here." *Id.* at *3; *see also United States v. Sethi*, No. 08-CV-00418, 2014 WL 4651649, at *2 (D. Colo. Sept. 18, 2014) (explaining that "[t]he great bulk of authority" has found § 3004(b)(2) is not mandatory, and holding that transfer can be denied under that provision if good cause is shown) (collecting cases).[8]

---

[8] *See, e.g., EEOC v. 5042 Holdings Ltd.*, 2013 WL 1636577, at *6 (N.D. W. Va. Apr. 16, 2013) (holding that transfer "is not mandatory" and denying transfer because it would delay and frustrate the government's collection efforts); *Federal Trade Comm. v. Affiliate Strategies, Inc.*, 2012 WL 2449869, at *1–2 (D. Kan. June 26, 2012) (noting that "[m]ost courts have concluded that [§ 3004(b)(2)] is not mandatory" and finding that government established good cause to deny transfer in interest of judicial economy and because transfer would be overly burdensome for the government); *United States v. Gipson*, 714 F. Supp. 2d 571, 576 (E.D. Va. 2010) (holding that "[i]n sum, a debtor is ordinarily entitled to transfer of a FDCPA collection proceeding to the debtor's district of residence upon a timely motion under § 3004(b)(2)," but "a district court may, for good cause, deny the motion to transfer, and transfer typically should be denied where the fact-specific circumstances of the collection proceeding show that granting the request would frustrate the government's efforts to collect," and granting the motion to transfer); and *United States v. Woods*, 2010 WL 2510083 (E.D.N.C. Apr. 9, 2010) (holding that § 3004(b) "is in the nature of a venue provision and is not jurisdictional," that it is not mandatory, and transfer of case would be "inconsistent with this Court's inherent and statutory authority to enforce its own judgments").

UNITED STATES' RESPONSE TO STEVEN ZINNEL'S
OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

5

The Court should overrule defendant's objection that this case should be transferred to the Central District of California because his transfer request is untimely, transfer under section 3304(b)(2) is discretionary, and good cause exists to deny transfer. Coupled with his various motions to recuse and disqualify the District Judge, and to withdraw the reference to the Magistrate Judge, defendant's transfer request is nothing more than a transparent and coordinated attempt to remove this garnishment action from this Court's docket and to delay and frustrate the United States' efforts to collect on his judgment. This Court, "which has presided over this case to date, is in the best position to ensure that its judgment is enforced in an efficient manner using all means available under federal law." *United States v Woods,* No. 5:05–CR–00131–FL, 2010 WL 2510083, at *2 (E.D.N.C. Apr. 9, 2010); *see Poulsen,* 2010 WL 184294, at *5 ("This Court is familiar with this case and is in the best position to adjudicate post-judgment proceedings").

## Conclusion

The Court should overrule all of defendant's objections, adopt the findings and recommendations in full, and enter a final order of garnishment that:

    A.    Directs Garnishee to pay $1,012,047.08 to the Clerk of the United States District Court;

    B.    Approves a $150,000.00 litigation surcharge payable to the United States pursuant to 28 U.S.C. § 3011(a);

    C.    Directs Garnishee to pay the $150,000.00 litigation surcharge to the United States; and

    D.    Directs Garnishee to hold any funds remaining in the TD Ameritrade accounts after full payment of the $1,162,047.08 to the United States pending further order of this Court.[9]

Dated: July 11, 2022

PHILLIP A. TALBERT
United States Attorney

By: /s/ *Lynn Trinka Ernce*
LYNN TRINKA ERNCE
Assistant United States Attorney

---

[9] Defendant's brother, David Zinnel, has filed a motion to enforce the agreements he and defendant made at the settlement conference. ECF 142. The court took the motion under submission. ECF 146. Their agreements relate only to the characterization and treatment of any remaining funds in the TD Ameritrade accounts after the United States has been paid in full, so the motion has no bearing on the United States' request that the Court enter a final order of garnishment and should not delay the Court's decision to adopt the findings and recommendations for a final garnishment order.