1  STEVEN ZINNEL
2  41 W HWY 14, Unit # 2484
   Spearfish, SD 57783

3  E. firsthalfsteve@gmail.com

4  In pro se

5

**FILED**

AUG 2 2 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

6

7  **IN THE UNITED STATES DISTRICT COURT**

8  **EASTERN DISTRICT OF CALIFORNIA**

9  UNITED STATES OF AMERICA,            Case No.: 2:21-mc-00098-TLN-AC

10         Plaintiff,                   Criminal Case No.: 2: 1 1-cr-00234-TLN

11         v.

12 STEVEN ZINNEL,                       **DEFENDANT STEVEN ZINNEL'S**
                                        **COMPREHENSIVE INDIVIDUAL**
13         Defendant and [**alleged**]  **STATUS REPORT PURSUANT TO THE**
                                        **COURT'S AUGUST 8, 2025 ORDER (ECF #169)**
14         Judgment Debtor.

15 ─────────────────────────────

16 TD AMERITRADE CLEARING, INC.,

17 Garnishee.

18 ─────────────────────────────

19     Defendant Steven Zinnel (hereinafter "Zinnel") hereby submits his Comprehensive

20 Individual Status Report pursuant to the Court's August 8, 2025 Order (ECF #169). Zinnel met and

21 conferred with Government counsel AUSA Lynn Trinka Ernce, Michael Brumbaugh Kenneth

22 Gregory Peterson, and Schwab counsel Melanie Vartabedian on August 15, 2025 via a four-page

23 letter with six exhibits attached. Government counsel AUSA Lynn Trinka Ernce has issued an *edict*

24 to Zinnel that she intends to draft and file the joint status report. Zinnel does not agree with AUSA

25 Lynn Trinka Ernce's *edict* and thus submits his own comprehensive individual Status Report:

26

27

28

1    **1.  <u>DOCKET CITATIONS IN THIS STATUS REPORT</u>**

2              On a clarification matter, as this Status Report cites court-filings in different cases filed in

3    the United States District Court, Eastern District of California, (Sacramento), Zinnel will refer to

4    court-filings in the cases:

5    - • The criminal case entitled *United States v. Steven Zinnel*, U.S.D.C. ED CA Case No.

6         2:11-cr-00234-TLN as "**<u>Criminal Case</u>**;"

7    - • The garnishment case entitled *United States v. Steven Zinnel / TD Ameritrade Clearing,*

8         *Inc., (Garnishee)* U.S.D.C. ED CA Case No. 2:21-mc-00098-TLN-AC as "**<u>Misc. Case</u>**

9         **<u>#1</u>**;"

10   - • *United States v. Steven Zinnel / David Zinnel, Castana Trust (Garnishee),* U.S.D.C. ED

11        CA Case No. 2:21-mc-00143-TLN-AC as "**<u>Misc. Case #2</u>**;"

12   - • The appeal case entitled *Steven Zinnel v. United States of America and Jennifer Zinnel /*

13        *Michael Brumbaugh,* United States Court of Appeals in and for the Ninth Circuit Case

14        No. 22-16128 as "**<u>Appeal</u>**."

15   - • All references to "Transcript" are to the Transcript of the Proceedings of the Settlement

16        Conference held on June 3, 2022, before the Hon. Kendall J. Newman, Chief Magistrate

17        Judge as contained in the docket at ECF #134, in which a partial agreement was reached

18        between the Government and Zinnel with everyone agreeing that there would be an

19        future evidentiary hearing before the Court for a determination whether the Government

20        owed Zinnel money or whether Zinnel owed the Government and how much and whether

21        the Government was entitled to any Litigation Surcharge;

22

23   ///

24   ///

25   ///

26   ///

27   ///

28

1

2.  **RESPONSE TO THE COURT'S QUESTIONS CONTAINED IN ITS AUGUST 8, 2025**

2      **ORDER (ECF #169)**

3

4      1)  As to Judge Troy L. Nunley's August 8, 2025 Order concerning the Ninth Circuit's

5          Published Opinion, Judgment, and Mandate regarding the appropriate remedy (ECF #169,

6          pages 2 & 3) and Judge Troy L. Nunley writing in his August 8, 2025 order that *Pursuant*

7          *to the Ninth Circuit's mandate, **the Court intends to direct the United States to return***

8          ***$650,000** to TD Ameritrade,* (emphasis added) is that instead, Plaintiff United States of

9          America **MUST be ordered** to pay defendant Steven Zinnel $650,000.00 in U.S. Currency

10         (i.e. cash) within ten (10) days because as explained below and Exhibit 5, attached hereto,

11         Zinnel's deceased mom Ardith Ferris' TD Ameritrade Clearing, Inc. rollover IRA Acct 782-

12         830613 is in fact now closed and thus no new funds can be deposited into the account.

13

14         The funds and assets that were in Zinnel's deceased mom Ardith Ferris' TD Ameritrade

15         Clearing, Inc. rollover IRA Acct 782-830613 was in part, Steven Zinnel's inheritance from

16         his mom, who died on September 21, 2016 from a massive heart attack in her church's

17         parking lot. Zinnel's opinion, belief, and viewpoint it the stress that prosecutors AUSA

18         Matthew D. Segal and AUSA Audrey Benison Hemesath and Judge Troy L. Nunley asserted

19         on Zinnel's mom, resulted in her untimely death. For over a decade now, Zinnel has prayed

20         to God many times asking God that when Judge Troy L. Nunley and AUSA Matthew D.

21         Segal die, that God judges both of them harshly and sentences them to burn in hell for

22         eternity. Zinnel trusts God and defers to him to finally judge and sentence Judge Troy L.

23         Nunley and AUSA Matthew D. Segal.

24  ///

25  ///

26  ///

27  ///

28

Exhibit 3 attached hereto, evidences a global settlement was reached between Steven Zinnel, Michael Brumbaugh, the Castana Trust dated March 4, 2009, the Estate of David Zinnel, and Jennifer Zinnel in November of 2024, that Steven Zinnel would receive ALL proceeds from the litigation between Steven Zinnel and the United States of America in this garnishment Case, Misc. Case #1, garnishment Misc. Case #2, and the Appeal (see Exhibit 3). As a result of the global settlement that was reached between Steven Zinnel, Michael Brumbaugh, the Castana Trust dated March 4, 2009, the Estate of David Zinnel, and Jennifer Zinnel in November of 2024, that Steven Zinnel (see Exhibit 3), Michael Brumbaugh, the Castana Trust dated March 4, 2009, the Estate of David Zinnel, and Jennifer Zinnel **no longer have a dog in this fight** and Michael Brumbaugh should not be required to participate any further in Misc. Case #1 or Misc. Case #2.

Zinnel completely agrees with Michael Brumbaugh's Status Report emailed to Zinnel on August 15, 2025 by attorney Kenneth Gregory Peterson wherein attorney Peterson correctly stated that all previous disputes and /or issues between Steven Zinnel and Michael Brumbaugh, the Castana Trust dated March 4, 2009, the Estate of David Zinnel, and Jennifer Zinnel have been resolved by way of the Settlement Agreement and Stipulation and Order and any unresolved issues in this matter are solely between the Plaintiff United States of America and Defendant Steven Zinnel. Zinnel also completely agrees with Michael Brumbaugh that he should not be required to take any further action in this garnishment case and Misc. Case #2. Zinnel also agrees with Michael Brumbaugh that the garnishment case entitled *United States v. Steven Zinnel / David Zinnel, Castana Trust*, U.S.D.C. ED CA Case No. 2:21-mc-00143-TLN-AC ("Misc. Case #2") should be dismissed by the court forthwith.

///
///
///
///

1    Similarly, because Charles Schwab in its capacity as successor in interest to TD Ameritrade

2    Clearing, Inc., (Garnishee) complied with the Court's order issued on November 22, 2024,

3    (Exhibit 4, ECF #161, page 4) and Charles Schwab in its capacity as successor in interest to

4    TD Ameritrade Clearing, Inc., (Garnishee) counsel's email to Zinnel dated July 21, 2025,

5    confirmed Zinnel's deceased mom Ardith Ferris' TD Ameritrade Clearing, Inc.   rollover

6    IRA Acct 782-830613 is in fact now closed (see Exhibit 5)  and thus no new funds can be

7    deposited into the account. Thus, Charles Schwab in its capacity as successor in interest to

8    TD Ameritrade Clearing, Inc., (Garnishee) **no longer has a dog in this fight** and Charles

9    Schwab in its capacity as successor in interest to TD Ameritrade Clearing, Inc., (Garnishee)

10   should not be required to participate any further in Misc. Case #1.

12   Thus, now **the ONLY two dogs in this fight are Plaintiff United States of America and**

13   **alleged judgment debtor defendant Steven Zinnel.** Zinnel has constantly maintained that

14   he did not owe the United States of America any money whatsoever when the Government

15   filed this Garnishment action over four years ago on April 2, 2021 (ECF #1) and in fact as

16   of the date of the filing of this Status Report, **the Government has now over-collected**

17   **$1,329,341.00, which is now <u>sitting the Government's Piggy Bank</u>**, and thus not a claw-

18   back from any restitution recipients, from what the Judge Troy L. Nunley  ordered Zinnel to

19   pay,  not  just  $650,000.00,  and  Zinnel  is  owed  a  refund  from  the  Government  of

20   $1,329,341.00; A position Zinnel is still adamant about today.

22   With the settlement protections offered to Zinnel by *Federal Rules of Evidence* Rule 408,

23   Zinnel informs the Government and the Court that this case could settle without any further

24   litigation if the Government agrees to pay Zinnel, in U.S. Currency (i.e. cash), an amount

25   well North of $650,000.00 but perhaps a few degrees South of $1,329,341.00, within ten

26   (10) days,  this case can settle now.

If the Government does not agree, the Government must be ordered to pay Zinnel $650,000.000 in U.S. Currency (i.e. cash) within ten (10) days pursuant to the Ninth Circuit's June 9, 2025 Published Opinion, Judgement, and Mandate and the global settlement that was reached between Steven Zinnel, Michael Brumbaugh, the Castana Trust dated March 4, 2009, the Estate of David Zinnel, and Jennifer Zinnel in November of 2024 (see Exhibit 3), then Zinnel and the Government can litigate going forward in the District of South Dakota and the United States Court of Appeals in and for the Eighth Circuit if necessary, as to whether the Government owes Zinnel an additional $679,341.00 ($1,329,341.00 - $650,0000.00) via an evidentiary hearing which the Government and Zinnel agreed to in their partial settlement placed on record in front of the Hon. Kendall J. Newman, Chief Magistrate Judge on June 3, 2022 contained in the docket at ECF #134, pages 3, 5, 6, 19, 20, 29, 25, 7, 9, 10, 11, 15, 18.

If Zinnel and the Government cannot settle on an amount that the Government will pay Zinnel within ten (10) days, over and beyond the $650,000.00 ordered by the Ninth Circuit's June 9, 2025 Published Opinion, Judgement, and Mandate, then this garnishment case must be transferred to the District of South Dakota, Western Division, (Rapid City) forthwith. Zinnel has a pending Motion to transfer the case to the District of South Dakota, Western Division (Rapid City) that is set for hearing on September 24, 2025, at 10 AM before Magistrate Allison Claire. (ECF #170).

2) Zinnel's response to Judge Troy L. Nunley's August 8, 2025 Order regarding outlining how [the parties] intend to proceed in this action, including whether Zinnel intends to file a renewed motion to transfer the proceedings. Zinnel has a pending Motion to transfer the case to the District of South Dakota, Western Division (Rapid City) that is set for hearing on September 24, 2025, at 10 AM before Magistrate Allison Claire. (ECF #170).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

Contrary to the applicable law and the true facts in this case, incredulously, or perhaps not based on the government's conduct, Government attorney AUSA Lynn Trinka Ernce, who lies, cheats, and tries to win at all costs, [1] has informed Zinnel that the *United States intends to seek a new final garnishment order.* [2] However, **this cannot happen for many compelling reasons.** First, the Ninth Circuit (ECF #164) and the district court (ECF #169; Exhibit 6) vacated the Final Order of Garnishment (ECF #149).    Therefore, **and dispositively**, there is no court order authorizing the government to retain the $650,000 it unlawfully obtained and there is no court order authorizing the government to receive a $150,000 litigation surcharge.    Second, the Ninth Circuit (ECF #164) ordered the government to return $650,000. Third, Judge Troy L. Nunley in his August 8, 2025 order wrote and *the district court the Court intends to direct the United States to return $650,000* (ECF #169; Exhibit 6). Fourth, this case must be ordered transferred to the District of South Dakota, Western Division (Rapid City) so **an evidentiary hearing occurs as required by 28 *U.S.C.* §3202(d), Zinnel's timely request (ECF #20), and the agreements made in the Settlement Conference by the parties and most importantly government attorney AUSA Lynn Trinka Ernce** (see Transcript). Fifth, United States District Judge Camela C. Theeler of the District of South Dakota, Western Division (Rapid City) will soon be required to conduct an evidentiary hearing, as required by 28 *U.S.C.* §3202(d), Zinnel's timely request, and the agreement between the parties to determine how much of the $1,329,341.00 the government unlawfully over-collected must be returned to Zinnel.

22    ///
23    ///
24    ///
25

26    [1] In Zinnel's opinion, belief, and viewpoint.

27    [2] It is noteworthy and relevant that ALL of AUSA Lynn Trinka Ernce's bullshit and frivolous arguments on appeal were completely and unequivocally rejected by the Ninth Circuit.

28

In aggravation, in the Criminal Case, on July 5, 2022, Zinnel filed a *Motion for a Judicial Determination of Amount Due,* (Criminal Case ECF nos. 705 & 715, Exhibits 7 & 8) and biased, bad, and three-time reversed on appeal Judge Troy L. Nunley [3] denied Zinnel's motion. (Criminal Case ECF #716; Exhibit 9). [4]

**Therefore, there has NEVER been a judicial determination in either this garnishment case (Misc. Case #1) or the Criminal case as to why government has marshalled and over-collected $4,344,160.00 from Zinnel** when **$3,014,819.00 was the Total Amount Ordered by Judge Troy L. Nunley to be paid by Zinnel in the Criminal Case** (ECF #20, p. 7; ECF #84, p. 4;  Criminal Case, ECF #386, pgs. 1 & 6).   Furthermore, **the government has NEVER explained** to Zinnel or the court, why it marshalled and collected **$4,344,160.00 from Zinnel** when **$3,014,819.00** was the Total Amount Ordered by Judge Troy L. Nunley to be paid by Zinnel   in the Criminal Case (ECF #20, p. 7; ECF #84, p. 4;  Criminal Case, ECF #386, pgs. 1 & 6).   Zinnel's position that he has maintained for years now, the government has now over-collected **$1,329,341.00 that must be returned to Steven Zinnel with interest.**

If the Government DOES NOT AGREE to pay Zinnel within ten (10) days, in U.S. Currency (i.e. cash), an amount well North of $650,000.00 but perhaps a few degrees South of $1,329,341.00, Zinnel will continue to litigate ***until the cows come home*** in the District of South Dakota and in the United States Court of Appeals in and for the Eighth

---

[3] Zinnel's opinions, beliefs, and viewpoints.

[4] In Zinnel's Reply Brief to the government's opposition to Zinnel's Motion for Judicial Determination of the Amounts Due, filed on August 19, 2022, **Zinnel wrote he was** *quite confident that Judge Troy L. Nunley  and Magistrate Allison Claire  would be completely reversed on appeal by the Ninth Circuit Court of Appeals* (Criminal Case ECF #715, pg. 2; Exhibit 8, pg. 2).  Zinnel was determined to be right on June 9, 2025 when in a Published Opinion, the Ninth Circuit reversed Judge Troy L. Nunley  for the third time in an appeal in Zinnel's case.

Circuit if necessary. Pursuant to the Ninth Circuit's June 9, 2025 Published Opinion, Judgement, and Mandate, this garnishment case. Misc. Case #1, must be transferred to the District of South Dakota, Western Division, (Rapid City). Zinnel has a pending Motion to transfer the case to the District of South Dakota, Western Division (Rapid City) that is set for hearing on September 24, 2025, at 10 AM before Magistrate Allison Claire. As Zinnel told Judge Troy L. Nunley during his resentencing hearing in the Criminal Case on May 6, 2019 (Criminal Case, ECF #660):

> I recognize that if this case does not end today, there will be continuous vigorous litigation in the foreseeable future in this case.

> I want to end this long and painful chapter in my life. I want to end the suffering on me and the people that are important to me. We've endured much. I want to move on with my life, and I want others to move on as well. I'm sick and tired of constantly working on legal work involving this case. **Quite frankly, it has been a rough decade.** I want the second half of my life to start today. It's more than past time. I want to create new happy memories.

> This case for all intents and purposes has been in continuous litigation since June 8, 2011. 92.8 months. 7.7 years. There's been a trial. There's been multiple appeals there. There is still a pending Supreme Court petition, lots of law and motion, lots of court filings. There's been two sentencing proceedings. There can be another appeal. There can be a 2255. There can be a new trial, there could be a third resentencing. There could be a new judge.

> In other words, lots of past litigation and potential for future litigation. I want to make it clear. **I do not want to litigate anymore, but my resolve to fight for what's right as I've demonstrated is still strong, and I will litigate if necessary.**

> It is possible that this litigation can end today at this resentencing if just punishment is imposed. The sentence promotes respect for the law. And I'm sentenced to what **similarly situated bankruptcy fraud defendants receive which is between 19 and 36 months of imprisonment.** And based on my 69 months of incarceration to date, no term of supervised release.

> If this right sentence is imposed, the litigation will stop.

> If this right sentence is imposed, the litigation will stop. This case will end today. I will be unhappy. I will be angry. I will grumble loudly. I will have a bitter taste in my mouth for the rest of my life of how justice was served in this case, but I will go away. I will live a law abiding life. I will do everything in my power to not be in the

1

*United States Government's cross hairs again. I will stay out of any United States courthouse.*

2

3

4

*I seek your mercy, Your Honor. I told you what has happened to my loved ones. I'm humiliated. I'm humbled. I have shame. I have regret. I do not want my life to be defined by what is on the internet right now based upon the Government's misrepresentations and lies. That is not who I am.*

5

6

7

8

9

*Courage and conviction are rare qualities in a man. God has blessed me with both. I trust God's perfect plan and timing. I believe that suffering is part of something bigger. My children, my family and I have suffered excessively in this case for a long time now. However, justice, like the will of God, does not always manifest itself in the spur of the moment. It doesn't come when you think it should. You've got to wait it out, and when it does, I will still be standing without a doubt.*

10

11

*Your Honor, I seek your mercy. I seek some measure of justice. I implore you to end this case today with a sentence that is **reasonable, rational** and **right**.*

12

13

*I end where I began. Where I am is not who I am. I am Steve Zinnel, and I had something to say.*

14

Shortly thereafter, Judge Troy L. Nunley  resentenced Zinnel to a **draconian and savage**

15

**sentence of** 152 months imprisonment (Criminal Case ECF #651) which is still the longest sentence

16

for a bankruptcy fraud conviction in the history of the United States by 25%. Seventeen years and

17

eight month and twelve years, eight months in prison **is a long time even if you say it fast**.

18

19

In aggravation, The Administrative Office of the United States Courts, Annual Reports of the

20

Director, Criminal Defendants Sentenced  After Conviction by Offense, Table D-5 for the periods

21

ending 2010 through 2017  represents to the district court judges and  public that the Median

22

Sentence for Bankruptcy Fraud was 1.58 years and the *Sweet Spot* being one year to three years

23

imprisonment with around 50% of the Bankruptcy Fraud defendants getting no prison time

24

25

whatsoever and Zinnel was the only defendant sentenced to seventeen years eight months

26

imprisonment. (Criminal Case, ECF #585-5, pg. 65; Exhibit 10).  Again, ASUAs Matthew D. Segal

27

and Audrey Benison Hemesath represented on appeal to the Ninth Circuit that Zinnel's case was *the*

28

1  *mine run of roughly similar cases.* (Government Answering Brief at page 154.)   Also again, at

2  Zinnel's March 4, 2014 sentencing, biased, bad, and three times reversed on appeal Judge Troy L.

3  Nunley   was able to easily compare Zinnel to Letantia Bussell as Judge Troy L. Nunley made the

4  following finding: "*This case is factually similar to Bussell.*" (Criminal Case ECF #585-5, pg. 58).

5  As Zinnel informed Judge Nunley, Ms. Bussell was sentenced to 3 years in prison after standing

6
7  trial for Bankruptcy Fraud and Money Laundering. (Vol. 5, Ex. 1006; Vol. 7, Ex. 1223; ECF 307-

8  1, p. 52).   Therefore, the Court easily compared Zinnel's facts and conduct to that of Letantia

9  Bussell, but ignored the disparity between Bussell's 3 year sentence for sophisticated bankruptcy

10  fraud and Zinnel's seventeen year eight month term.   This resulted in Judge Nunley sentencing

11  Zinnel to six times as much time in prison as "factually" similar Bussell.

12
13          The litigation continues between the government and Zinnel which has been constant and

14  continuous since June 8, 2011 when Zinnel was indicted and will continue in the foreseeable future

15  if the Government refuses to settle.

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

## 1. **WRITTEN TEST FOR PROSPECTIVE ASSISTANT U.S. ATTORNEYS**

Zinnel recently came across what he believes is the written test for prospective members of the United States Attorney's Office. As a preamble to the written test, the United States Attorney's Office informed the applicants:

> The Federal Government is the world's strongest litigant, who is represented by the world's largest law firm, the Department of Justice, with approximately 6,300 Assistant United States Attorneys (AUSAs) employed by the U.S. Department of Justice across the 94 federal judicial districts who are supported by plenty of alphabet agencies such as the FBI, DEA, IRS, DHS, SEC and ATF all of which have unlimited resources to successfully prosecute anyone and put them in prison for a long time. As an Assistant U.S. Attorney, you have the power to chew up any man or woman you want, and totally destroy their lives and their family, all with total impunity, with our unlimited resources and an *InJustice* system firing on all cylinders.

After the preamble, the first question to the budding AUSA, is to require the applicant to match the words in the column on the left with the appropriate response and the column on the right:

| In | - | White |
|---|---|---|
| Up | - | **Oppose** [5] [6] |
| Hot | - | Down |
| Black | - | Out |
| **Criminal Defendant Motion** | - | Cold |

AUSAs Matthew D. Segal, Audrey Benison Hemesath, and Lynn Trinka Ernce obviously aced the application test and took the DOJ's manta to heart over the years.

---

[5] (Especially if defendant is incarcerated with only a chisel and a stone tablet to draft motions in a limited prison law library)

[6] No emphasis added.

**2. <u>KEY LAW RE FREEDOM OF SPEECH, OPINIONS AND BELIEFS  ARE NOT ACTIONABLE, LITIGATION PRIVILEGE, AND FEDERAL JUDGES ARE PUBLIC FIGURES</u>**

Zinnel has completed the record-setting draconian and savage prison sentence that Judge Troy L. Nunley imposed and Zinnel is no longer on Supervised Release.  Therefore, neither Judge Troy L. Nunley nor Magistrate Allison Claire  nor government prosecutors AUSA Matthew D. Segal, AUSA Audrey Benison Hemesath,  AUSA Lynn Trinka Ernce have any legal ability or mechanism  to punish or abuse Zinnel any further.  Therefore, in what should be Zinnel's **final motion filing with the United States District Court for the Eastern District of California**, Zinnel is saying what he has been wanting to say for well over a decade exercising his freedom of speech rights, expressing his opinions, beliefs, and viewpoints, none of which are actionable, while also enjoying the absolute protection of the Litigation Privilege, and knowing federal judges are considered public figures under the law.

**2.1 <u>Freedom of Speech</u>**

U.S. Constitution, First Amendment. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

California Constitution, Article I, section 2(a). Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.

Thus, Zinnel is free to exercise his right to freedom of speech and petition the Government for a redress of grievances herein.

///

///

///

## 2.2 Opinions, Beliefs, Viewpoints are not Actionable

Opinions are protected by the First Amendment and cannot be the basis of a defamation claim. They are considered a form of protected speech, which cannot be proven or disproven. The Supreme Court, in *Milkovich v. Lorain Journal Co.*, 479 US 1, (1990), defined an opinion as "an expression of a viewpoint, which may be supported by reason or evidence, but which is incapable of being proved true or false." The case dealt with a defamation lawsuit against a newspaper, and the court ruled that statements of opinion are protected by the First Amendment unless they imply a false statement of fact.

California appellate courts have held the same. Opinions are not actionable. *Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260. "A representation is an opinion "'if it expresses only (a) the belief of the maker, without certainty, as to the existence of a fact; or (b) his judgment as to quality, value … or other matters of judgment."' *Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 606-607 (2014)

## 2.3 Litigation Privilege

California's litigation privilege is an incredibly powerful tool that effectively immunizes conduct if it is reasonably related to litigation. California's litigation privilege is a unique legal doctrine that provides immunity for statements made during litigation or in anticipation of litigation. The litigation privilege protects conduct even if it is "alleged to be fraudulent, perjurious, unethical, or even illegal." *Kashian v. Harriman*, 98 Cal.App.4th 892, 920 (2002). *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990) (quoting Prosser, Law of Torts (3d ed. 1964, p. 797); see id. at 213 ("The principal purpose of section [47(b)] is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (internal citations omitted). "To effectuate its vital purposes, **the litigation privilege is held to be absolute in nature**." Id. at 215. (emphasis added).

In California, the litigation privilege is covered under *Civil Code* Section 47b. This common law doctrine grants protection from civil liability for certain communications and actions that are made in connection with or in preparation for legal proceedings. Contrary to popular belief among lawyers, application of the litigation privilege is not limited to civil lawsuits. **The privilege applies to various legal contexts, including any judicial proceeding**. The California Court of Appeal recently held that **the litigation privilege even applied in a *criminal* trial** involving charges of extortion. *People v. Toledano*, 36 Cal.App.5th 715, 728 (June 24, 2019) ("Thus, the litigation privilege may apply to criminal prosecutions of extortion."); id. at 730 ("The trial court, however, had a sua sponte duty to give a correctly phrased instruction on Toledano's affirmative defense that his actions were protected under the litigation privilege.")

The above gives rise to two key questions. First, when does conduct fall within the protections of the litigation privilege? Second, are there any recognized exceptions to the litigation privilege?

As to the first question, **the litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings**; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg* at 212. The privilege applies during court proceedings and encourages open communication and evidence presentation in both formal court settings and related judicial procedures such as administrative hearings or depositions. While, for example, pleadings are an obvious example of privileged communications, application of the litigation privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1241 (2007) (internal quotations omitted); see *Rusheen v. Cohen*, 37 Cal.4th 1048, 1058 (2006). For example, in *Rubin v. Green*, 4 Cal.4th 1187, 1191 (1993), a resident of a mobile home park, "Green," and a law firm she hired, mailed a "notice of intention to commence action" to the park's owner, Rubin,

alleging various defects with operation of the park. Pre-litigation communications, such as these, are often covered by the litigation privilege.

Thus, Zinnel is free to exercise his right to freedom of speech herein and has absolute protection under the Litigation Privilege as codified under California *Civil Code* Section 47b.

### 2.4 Judges are considered public figures

Federal judges are considered public figures for defamation purposes. Courts have consistently held that judges, as public officials with significant roles in the judicial system, are subject to the higher "actual malice" standard established in *New York Times Co. v. Sullivan* (1964) for defamation claims. This means that to succeed in a defamation lawsuit, a judge must prove that the defamatory statement was made with knowledge of its falsity or with reckless disregard for its truth. This standard applies because **judges, due to their prominent positions, are deemed to have assumed the risk of public scrutiny and comment**.

### 3. ZINNEL WILL NOT BE NICE OR RESPECTFUL TO JUDGES, WHO ARE NOT IMPARTIAL AND ARE IN FACT BIASED IN FAVOR OF THE GOVERNMENT AND VIEW THEMSELVES AS A PART OF TEAM USA NOR GOVERNMENT FEDERAL PROSECUTORS ALL OF WHOM HAVE PUT ZINNEL IN PRISON, DESTROYED ZINNEL'S FAMILY, STOLE ZINNEL'S MONEY AND ASSETS, AND WHO CHEAT, LIE, AND WIN AT ALL COSTS

Zinnel will not be nice or respectful to judges, who are not impartial and are in fact biased in favor of the government and view themselves as a part of Team USA nor government federal prosecutors all of whom have put Zinnel in prison for almost a decade, destroyed Zinnel's family, stole Zinnel's money and assets, and who cheat, lie, and win at all costs.

Further, the United States has an adversarial legal system. In this system, two opposing parties—typically the plaintiff and defendant in civil cases or the prosecution and defense in criminal cases—present their arguments, evidence, and witnesses before what should be a neutral judge or jury; Biased, bad, and three-time reversed on appeal Judge Troy L. Nunley is not a neutral judge. [7] In the United States legal system, the judge is supposed to act as an impartial referee, ensuring fair proceedings, while the jury (if present) or judge determines the outcome based on the presented evidence and arguments. This contrasts with inquisitorial systems, where the court plays a more active role in investigating the facts. The adversarial approach emphasizes competition between the parties to advocate for their respective positions, aiming to uncover the truth through this process.

**Zinnel feels compelled to state that the Honorable Kendall J. Newman treated all parties, including Zinnel, fairly, impartially, and professionally during the Settlement Conference he presided over in this case on June 3, 2022 which Zinnel appreciates and acknowledges. In Zinnel's opinion, Magistrate Newman is a fair and impartial judge, who has empathy and who is decent human being.**

///
///
///
///
///
///
///

---

[7] Zinnel's opinions, beliefs, and viewpoints.

1    **4.  STATUS REPORT, RELEVANT BACKGROUND, AND ARGUMENT**

2           Zinnel is still in litigation with United States of America (hereinafter "government")

3    regarding this Garnishment Action in which the government sought to Garnish funds from Zinnel's

4    deceased mom Ardith Ferris' TD Ameritrade Clearing, Inc. Rollover IRA Acct 782-830613. Zinnel

5    has constantly maintained four over four (4) years now that he did not owe the United States of

6    America any money whatsoever when the Government filed this Garnishment action ago on April

7    2, 2021 and in fact as of the date of the filing of this Status Report, the Government has now **over-**

8    **collected $1,329,341.00**, which is now sitting the Government's *Piggy Bank*, and thus not a claw-

9    back from any restitution recipients, from what the Court ordered Zinnel to pay, not just

10   $650,000.00, and **Zinnel is owed a refund from the Government of $1,329,341.00**; A position

11   Zinnel is still adamant about today.

12          Following Zinnel's criminal conviction at trial for bankruptcy fraud in 2013, in reliance on

13   the government's representation to Zinnel and his attorney that all forfeited assets would be applied

14   to restitution, Zinnel stipulated to restitution in the amount of $2,513,319 so each of Zinnel's

15   children would have $150,000 for college. (ECF #20, p. 9 & ECF #138, p. 7 & 8; Criminal Case,

16   ECF #586-4, p. 10). [8]  Thereafter, on May 30, 2014, the district court issued an Amended Judgment

17   ordering the following:

18

19       Restitution              $2,513,319.00
         Fine                     $  500,000.00
20       Special assessment       $      1,500.00
            Total Amount Ordered  $3,014,819.00
21
     (ECF #1, p. 2; ECF #20, p. 7; ECF #84, p. 4;  Criminal Case, ECF #386, pgs. 1 & 6).)
22
23   ///

24   ///

25   ///

26
     ───────────────────────
27   [8] All ECF citations herein are to the  electronic docket in the garnishment case entitled *United States v. Steven Zinnel /*
     *TD Ameritrade Clearing, Inc., (Garnishee)* U.S.D.C. ED CA Case No. 2:21-mc-00098-TLN-AC unless otherwise
28   noted, and all page numbers are those imprinted by the Court's docketing software.

1         The Department of Justice's Asset Forfeiture Policy Manual is a compilation of policies

2   governing the Department of Justice Asset Forfeiture Program. The purpose of the Policy Manual

3   is to provide Department of Justice prosecutors with a reference manual containing the policies and

4   procedures of the DOJ and states in relevant part:

5

6         This procedure enables the Attorney General to transfer forfeited funds to a court
          for satisfaction of a criminal restitution order. (ECF #84, pgs. 9-10 & 42)...

7         Payment will be made only in accordance with the court's restitution order. (ECF
          #84, pgs. 9-10 & 48). Department of Justice policy is to collect and marshal assets

8         for the benefit of victims. (ECF #84, pgs. 9-10 & 50). Thus, a prosecutor who uses
          forfeiture tools as a means to provide remission or restoration of assets to crime

9         victims fulfills any obligation that the prosecutor may have under the Justice for
          All Act to crime victims. (ECF #84, pgs. 9-10 & 51). The government uses forfeited

10        property to recompense victims. (ECF #84, pgs. 9-10 & 51).

11  The following payments apply to the $3,014,819.00

12

13        Bankruptcy Payments           <$   30,000.00>
          Less BOP IFRP payments      <$        525.00>

14          Payments               <$   30,525.00>

15

16        This left an outstanding balance in 2014 of court-ordered restitution and fine of $2,984,294.

17  ($3,014,819 - $30,525 in payments).

18  Ha

19        However, by September 21, 2016, as represented by government lawyer AUSA Kevin

20  Khasigian, the government had marshaled $3,149,604.14 (ECF # 84, pgs. 8 & 34) to be applied

21  against the outstanding balance of Court Ordered Monetary Penalties of $2,984,294 which

22  **constituted an over-collection of $165,310.14 prior to the government filing its first**

23  **garnishment action on April 2, 2021 seeking an additional $3,315,723.40 from Zinnel.** (ECF #1,

24  p. 2; ECF #138, p. 13).

25        Thus, seven years after the May 30, 2014 Amended Judgment in the Criminal Case, on April

26  2, 2021 the government filed this garnishment writ action (ECF #1), but delayed providing Zinnel

27  with notice of the action for twenty (20) days.  On April 22, 2021, while incarcerated by the

28

1 | government in Sheridan Oregon, Zinnel received notice of the action and forms from the
2 | government to request an evidentiary hearing and transfer of the case to the district he was
3 | incarcerated in. (ECF #20, p. 6; ECF #32, p. 2). In its application for writ of garnishment, the
4 | government gave no credit for the $3,149,604.14 the government had already marshaled. (ECF #20,
5 | p. 8; ECF #84, p. 11; ECF #138, p.13). Instead, in its writ application the government claimed
6 | Zinnel still owed $3,315,723.40 calculated:

| | |
|---|---|
| Restitution | $2,513,319.00 |
| Fine | $ 500,000.00 |
| Special assessment | $ 1,500.00 |
| 10% Litigation Surcharge | $ 301,429.40 |
| Less BOP IFRP payments | <$ 525.00> |
| Total Claimed Owed | $3,315,723.40 |

(ECF #1, p. 2; ECF #138, p. 13)

On April 14, 2021, garnishee TD Ameritrade Clearing, Inc. filed on Acknowledgment of Service and Answer but did not serve Zinnel with its Acknowledgment of Service and Answer. (see Exhibit 1 attached hereto; ECF #8, and ECF #8, pg. 4).

While incarcerated in Sheridan, Oregon by the government, on April 28, 2021, Zinnel timely requested an evidentiary hearing to determine the amount of his assets the government had marshaled, how much he owed, **if any**, requested to have the case transferred to the District of Oregon where he resided pursuant to 28 *U.S.C.* §3004(b)(2), and objected to the government's request to recover a litigation surcharge of ten percent. (ECF nos. 20, 21, & 31).    Zinnel also objected to Judge Troy L. Nunley presiding over the case, but his objection was never ruled on. (ECF #18). Noteworthy, the government did not oppose, respond, or object in any way to Zinnel's timely request to transfer the case to the District of Oregon under 28 *U.S.C.* §3004(b)(2).

Nevertheless, Magistrate Allison Claire denied the mandatory transfer required under 28 *U.S.C.* §3004(b)(2) wherein she only cited the inapplicable federal venue statute of 28 *U.S.C.* §1391(b). (ECF #27). Zinnel timely filed Objections to Magistrate Allison Claire's erroneous ruling denying the mandatory transfer of the case to the District of Oregon pursuant to 28 *U.S.C.*

1    §3004(b)(2), which the government also did not respond to, thus Zinnel preserved the issues and

2    matters for appeal. (ECF nos. 32 & 74). However, District Court Judge Troy L. Nunley never ruled

3    on Zinnel's timely objections which is also reversible error.

4            On July 20, 2021 Magistrate Allison Claire issued an Order and Findings and

5    Recommendations denying the evidentiary hearing. (ECF #89). Defendant Zinnel, David Zinnel,

6    and the Government all timely objected to her recommendations (ECF nos. 103, 98, & 101).

7    However, on September 20, 2021 Judge Nunley adopted in full the Findings and Recommendations

8    of Magistrate Allison Claire filed on July 20, 2021, but did not acknowledge or consider Zinnel's

9    timely objections which is reversible error. (ECF #110).

10            Zinnel appealed Judge Nunley's order. (ECF #111), but since the garnishment case had not

11    been concluded, the Ninth Circuit found the appeal was premature. (ECF #116).

12            On June 3, 2022 a Settlement Conference was conducted before Chief Magistrate Judge

13    Kendall J. Newman (ECF #128; ECF #134) and Zinnel renewed his request for an evidentiary

14    hearing and accounting from the Government as well as a transfer of the case to the district in which

15    he resides.   (Transcript pgs. 5, 6, 16, & 17).

16
17            During the settlement conference, a partial settlement agreement was reached, with a path

18    forward on the issues of outstanding restitution owed, if any, owed, outstanding fine owed, if any,

19    and the amount of a litigation surcharge, if any. The transfer of the case to the federal judicial

20    district in which Zinnel lives also remained unresolved. (Transcript pgs. 3, 5, 6, 25, & 27). The

21    government did, however, agree to a ceiling amount of restitution, fine, and litigation surcharge for

22    Zinnel and the government to litigate during further proceedings in the case. Magistrate Judge

23    Newman memorialized that the parties reached a partial settlement and a path forward for continued

24    litigation between the government and Zinnel. (Transcript pgs. 3, 6, 25, & 27).

25    ///

26    ///

27

28

1    Below are key and dispositive matters from the June 3, 2022 court-supervised Settlement

2    Conference:

3

4    The parties reached an agreement --not a complete resolution of this case -- but an agreement on a path forward. (Transcript, p. 3).

5    The parties agreed to a number of material terms in Case No. 2:21-mc-0098... which help set forth a path forward between the Government and Defendant, Steven Zinnel.

6    (Transcript, p. 27);

7    Steve Zinnel doesn't agree he owes the government any additional money, he believes that that may have already been satisfied. Or if there is any money owed, it

8    may be for a fine but not for any restitution. But that is for him to litigate with the

9    government (emphasis added) (Transcript, p. 5);

10   The government asserts a **maximum exposure** from the Ameritrade account of $513,056 in restitution, $500,000 in fine [a total of $1,013,056.] (emphasis added)

11   (Transcript, p. 6);

12   The government was seeking a litigation surcharge of $301,429, but as part of the agreement here today and the resolution, **the government agrees the maximum**

13   **exposure for Steven Zinnel on that Ameritrade account, they're reducing their litigation surcharge to $150,000.** (emphasis added) (Transcript, p. 6);

14
     So the total exposure [by Zinnel] is **$1,163,056**. **Again, no agreement**
15   **by Steve Zinnel** that the government is entitled to that amount, and the government agrees that would be the maximum they're seeking from

16   the Ameritrade account. (emphasis added) (Transcript, p. 6);

17   Ameritrade is not to distribute any assets until it gets an order from the *federal court as to what, **if anything**, the federal government is entitled to*. (emphasis added)

18   (Transcript, p. 7);

19   THE COURT: Ms. Ernce and the government is agreeing that a satisfaction of that

20   $1,163,056 would fully satisfy the government's claims against Mr. Zinnel as well as any liens they've asserted against the trust or otherwise. Am I correct about that, Ms.

21   Ernce?

22   MS. ERNCE: That is correct. (Transcript, p. 11);

23   MR. STEVEN ZINNEL: Three things, your Honor, quickly. Again, I just want to clarify. I agree -- I'm stipulating that the Court has jurisdiction – limited jurisdiction

24   to make this settlement, but I strongly dispute that the Eastern District has jurisdiction, and I will continue to litigate that by me consenting today, I am not

25   consenting and waiving my jurisdictional and venue argument. (Transcript, pgs. 17 & 18);

26
     MR. STEVEN ZINNEL: Okay. Not only do I want an accounting from David Zinnel,
27   but I want an accounting from the government.
     (Transcript, p. 18);

28

THE COURT: And that's a separate issue that we purposefully haven't gotten into. That is still your right in the action against the government, and I'm sure that is part of agreed bone of contention. To be ultimately decided by Judge Claire is the evidence and issues sufficient, and ultimately Judge Nunley is --. (Transcript, p. 18);

MR. STEVEN ZINNEL: I believe under the law the government owes me an accounting. (Transcript, pgs. 18 & 19);

THE COURT: And that, again, I'm not deciding that legal issue right now.

THE COURT: I agree that's an **issue for another day** for **you and Ms. Ernce to litigate** and decide, let Judge Claire and Judge Nunley decide. (emphasis added) (Transcript, p. 19);

Okay. And that's the only reason. If you want to send him documents now, you can't submit those to Ameritrade at this point. But then you've got them signed and dated and stuff **once the actions resolve between Ms. Ernce and Steven Zinnel**.   (emphasis added) (Transcript, Pp. 27).

Very good. All right. Folks, we have an agreement. I think that helps with a path forward. (emphasis added)  (Transcript, p. 25)

Thus, during the Settlement Conference, after steadfastly maintaining its specious position for over a year of constant litigation, in both District Court and State of California Probate Court that Zinnel owed $3,315,723.40 including a litigation surcharge, during the Settlement Conference on June 3, 2022, government lawyer AUSA Lynn Trinka Ernce, in a binding admission on behalf of her client Plaintiff United States of America, admitted, without any explanation or accounting, that at least $2,152,667.34 had magically disappeared. (Transcript; ECF #138, pgs. 13 & 14). **This demonstrates there was, and still is, a need for an evidentiary hearing as required by 28 *U.S.C.* §3202(d)** and Zinnel's timely request. Further, the government refused to explain why the $3,149,604.14 the government had marshaled in the Criminal Case as of September 21, 2016 had not satisfied all of the restitution, fine, and special assessment.  (Transcript; ECF #138, pgs. 13 & 14). Nor did the government provide any accounting. (Transcript; ECF #138, pgs. 13 & 14). Nor did the government explain why they are entitled to an unlawful 14.81%, as opposed to 10% under the statute, Litigation Surcharge of an arbitrary **$150,000.00** ostensibly under  28 *U.S.C.* § 3011(a).

(Transcript ECF #134; ECF #138, p. 13 & 14). The government is not entitled to any Litigation Surcharge because when the government filed its garnishment action on April 2, 2021, Zinnel's outstanding debt was not only satisfied, but overpaid by $165,310.14 . (ECF #20, p. 8; ECF #84, p. 11; ECF #138, p. 6 ).

The Sixth Circuit held in *United States v. Pioch*, 5 F.4th 640 (6th Cir. 2021) that when the government initiates an action or proceeding under FDCPA subchapter B or C to recover debt owed to the United States, the United States is entitled to recover a surcharge of 10% **of the outstanding debt** under § 3011(a) and not total amount of restitution and fine ordered in the criminal judgment at sentencing. In this case, Zinnel **did not** have an *outstanding debt* to the government when the government filed this garnishment action on April 2, 2021. Therefore, there can be no Litigation Surcharge whatsoever.

Notwithstanding, within a week of the settlement conference, on June 10, 2022, the government erroneously filed a Request for Findings and Recommendations for Final Order of Garnishment. (ECF #135). Before Zinnel even received the government's Request in the mail, on June 13, 2022, Magistrate Allison Claire issued a Findings and Recommendations for Final Order of Garnishment recommending that the United States' Request for Findings and Recommendations for Final Order of Garnishment be granted in its entirety with the maximum exposure ceiling amount of restitution, fine, and litigation surcharge recommended despite the lack of any supporting evidence proffered by the government. (ECF #137). Thus, Zinnel never had an opportunity to say *you can't do that.* [9]

In response, Zinnel served objections to Magistrate Allison Claire's Findings and Recommendations for Final Order of Garnishment. (Misc. Case #1, ECF #138). On July 18, 2022, Judge Nunley overruled Zinnel's objections and issued a final disposition order adopting Magistrate Allison Claire's Findings and Recommendations for Final Order of Garnishment. (ECF #149).

---

[9] Magistrate Judge Newman stated at the June 3, 2022 Settlement Conference:
   *If and when Ms. Ernce files for order to final. I think you're welcome to file something saying "Oh, you can't do that until I get a final accounting." Again, that's between you, Judge Claire, and Judge Nunley.* (Transcript p. 29)

1         Zinnel appealed Judge Troy L. Nunley's and Magistrate Allison Claire's unlawful refusal

2    to transfer both garnishment cases as required by 28 *U.S.C.* § 3004(b)(2). (see ECF #151). Zinnel,

3    a non-attorney, prosecuted his appeal In Pro Se. In a Published Opinion, issued on June 9, 2025,

4    (see ECF #164), the United States Court of Appeals for the Ninth Circuit vacated the Judge Troy

5    L. Nunley's unlawful final order of garnishment in the government's application for a writ of

6    garnishment under the *Federal Debt Collection Procedures Act of 1990* (FDCPA), seeking to seize

7    funds from a TD Ameritrade Clearing, Inc., Individual Retirement Account. The panel held that the

8    district court erred in denying Zinnel's timely motion to transfer the garnishment proceedings to the

9    district in which he resided. Agreeing with the Sixth and Eleventh Circuits, the panel held that the

10   plain language of section 3004 of the FDCPA imposed **a mandatory obligation on the district**

11   **court to transfer the proceedings.** (emphasis added). Further, the panel held that the proper

12   remedy was to vacate the final garnishment order. Disagreeing with the Sixth Circuit, the panel

13   held that the Supreme Court's opinion in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,

14   523 U.S. 26 (1998), [cited by non-attorney In Pro Se Zinnel in his Opening Brief on Appeal,]

15   foreclosed the contention that a district court's violation of §3004(b)(2) was amenable to harmless

1   error analysis; rather, it was the type of violation that necessarily affected the debtor's "substantial

2   rights." 28 *U.S.C.* § 2111. [10] [11] [12] [13] [14] [15]

3   _____

4   [10] Zinnel knew Magistrate Allison Claire and Judge Troy L. Nunley made reversible error when they both refused to
comply with their mandatory obligation under 28 *U.S.C.* 3004(b)(2) and transfer both garnishment cases. On June 9,

5   2025, the Ninth Circuit issued a Published Opinion completely vindicating Steven Zinnel and finding that Steven
Zinnel's legal contentions were sound regarding the underlying garnishment writ action Judge Troy L. Nunley,

6   Magistrate Allison Claire, Magistrate Kendall J. Newman presided over. Magistrate Allison Claire cited the federal
venue statute 28 *U.S.C.* § 1391. As the Ninth Circuit noted, neither Magistrate Allison Claire nor Judge Troy L. Nunley

7   addressed 28 *U.S.C.* §3004(b)(2). WTF? Zinnel was outraged, which he expressed to Magistrate Allison Claire and
Judge Troy L. Nunley that the cases were not transferred to the District of Oregon especially since the Government is

8   the one who forced Zinnel against my will to live in Oregon. Zinnel was quite confident that Judge Troy L. Nunley,
who is so bad and so biased in favor of the government, in Zinnel's opinion and belief, would be reversed on appeal.
Zinnel is not a lawyer, but he learned to read well enough in elementary school to know what the statute Congress

9   enacted in 28 *U.S.C.* §3004(b)(2) of the Federal Debt Collection Procedure Act mandates.

10              If the debtor so requests, within 20 days after receiving the notice described in section 28 *U.S.C.*
               3202(b), the action or proceeding in which the writ was issued **shall** be transferred to the district

11             court for the district in which the debtor resides.

12  [11] Judge Troy L. Nunley is the named judge in the Published Opinion as being reversed which is what he gets for rubber-
stamping Magistrate Allison Claire unlawful orders.

13

14  [12] In all three appeals involving Zinnel, **Judge Troy L. Nunley has been reversed all three times** by the Ninth Circuit
because he does not follow the law, in Zinnel's opinion and belief, and he tramples on Zinnel's "substantial rights."

15

16  [13] AUSA Lynn Trinka Ernce and the Department of Justice should have done the right and ethical thing and conceded
error on appeal and not draft and file an Plaintiff Brief full of bullshit saying for many reasons Zinnel had nothing

17  coming. AUSA Lynn Trinka Ernce was flat out wrong and the Ninth Circuit in a Published Opinion unequivocally
rejected each of AUSA Lynn Trinka Ernce's bullshit and unlawful positions. *The incredible thing about bullshit, is it*

18  *always sounds like bullshit.* Quote of Brandon Tartikoff, an American television executive who was head of the
entertainment division of NBC from 1981 to 1991.

19  [14] Zinnel is diametrically opposed to most of what President Donald J. Trump says and does, but Zinnel totally agrees
the Department of Justice is weaponized and tries to win at all costs instead of seeking justice. Below is a compilation

20  of quotes from President Donald J. Trump regarding his claims of a "weaponized" Department of Justice (DOJ), based
on publicly available information from reputable sources:

21
    •   "Unfortunately in recent years, a corrupt group of hacks and radicals within the ranks of the American
22      government obliterated the trust and good will built up over generations. They weaponized the vast powers of
        our intelligence and law enforcement agencies to try and thwart the will of the American people."
23
    •   Pardoning Scott Jenkins: Trump pardoned former Virginia Sheriff Scott Jenkins, who was convicted of bribery,
24      citing a "Corrupt and Weaponized Biden DOJ". Trump claimed the justice system under Biden was more about
        pursuing personal vendettas than fairness.
25
26  •   Executive Order: Trump signed Executive Order 14147, "Ending the Weaponization of the Federal
        Government," which requires the Attorney General to review activities of departments and agencies exercising
27      civil or criminal enforcement authority over the last four years.

28  _____

After the Ninth Circuit awarded costs on appeal to Zinnel on June 9, 2025, Zinnel filed an application for $28 in costs on appeal with the Ninth Circuit. After sleeping on the government's rights past the due date of any motion to challenge the $28, AUSA Lynn Trinka Ernce drafted an expensive motion to deny Zinnel's application for costs awarded that Zinnel did not even bother to oppose over $28. The Ninth Circuit granted AUSA Lynn Trinka Ernce's expensive motion. AUSA Lynn Trinka Ernce, the government and Judge Troy L. Nunley get their proverbial *asses kicked on appeal*, by a non-lawyer pro se appellant, and yet **AUSA Lynn Trinka Ernce spent thousands of dollars in U.S. taxpayers money to pay for her to draft her motion and for three appellate judges to rule on it, all to challenge Zinnel's simple request for $28 costs on appeal** which the Ninth Circuit ordered that he recover. Zinnel prays to God that God judges AUSA Lynn Trinka

---

- "The real crimes were on the other side, as nothing happens to them. Cannot allow this miscarriage of justice!"

[15] Zinnel is diametrically opposed to most of what President Donald J. Trump says and does, but Zinnel totally agrees the Federal Judges, like Judge Troy L. Nunley and Magistrate Allison Claire are biased, unfair, unhinged, and do not follow the law: President Donald J. Trump has frequently criticized federal judges, calling them "crooked" and "monsters." He has also suggested that judges who oppose him should be impeached, reflecting his contentious relationship with the judiciary. Below is a compilation of quotes from President Donald J. Trump where he has criticized or attacked federal judges, based on publicly available information from various sources.

- Judge Esther Salas: "We're used to being appealed, but keep it on the merits. Stop demonizing us. Stop villainizing us."

- Judge John Coughenour: "What kind of people do these things? It's just so disgusting."

- On Judge James Robart "The opinion of this so-called judge, which essentially takes law-enforcement away from our country, is ridiculous and will be overturned!"

- On Judge Tanya Chutkan (2023, Federal Election Interference Case): "The Washington DC judge overseeing the four-count election interference charges brought by Smith is highly partisan and VERY BIASED and UNFAIR."

- On Judge Juan Merchan (2024, Hush Money Case): "This Judge, by issuing a vicious 'Gag Order,' is wrongfully attempting to deprive me of my First Amendment Right to speak out against the Weaponization of Law Enforcement. He is suffering from an acute case of Trump Derangement Syndrome."

1   Ernce harshly when she dies and that God sentences her to burn in hell for eternity, with hard labor.

2   AUSA Lynn Trinka Ernce is such a bad lawyer, bad human being, a liar, a win at all costs

3   government attorney, and a *piece of shit* in Zinnel's opinion, belief, and viewpoint.

6                                        **ARGUMENT**

7   **I.    THE DISTRICT COURT ERRED IN MAY 2021 WHEN IT DID NOT HOLD AN**
        **EVIDENTIARY HEARING, AS REQUIRED BY 28 *U.S.C.* §3202(D), THAT**
8       **ZINNEL TIMELY REQUESTED, TO DETERMINE WHAT AMOUNTS HAD**
        **BEEN MARSHALED FROM ZINNEL'S ASSETS AND WHAT, IF ANYTHING,**
9       **WAS STILL OWED TO SATISFY THE RESTITUTION AND FINE ORDER**

10          The district court erred when it did not hold an evidentiary hearing, as required by 28 *U.S.C.*

11   §3202(d), and timely requested by Zinnel, when the government lawyers made judicial admissions

12   and representations in writing that forfeited assets from Zinnel would be used to pay the restitution

13   recipients and fine.

15          Zinnel timely requested the mandatory evidentiary hearing mandated by 28 *U.S.C.* §3202(d)

16   for an accounting and a court determination of how much of the $3,149,604.14  (ECF #20, p. 8;

17   ECF #84, p. 11; ECF #138, p.13) the government had marshaled must be credited to the court-

18   ordered restitution of $2,513,319.00 and the fine of $500,000.00 (ECF #1, p. 2; ECF #20, p. 7; ECF

19   #84, p. 4;  Criminal Case, ECF #386, pgs. 1 & 6). Zinnel proffered compelling evidence that he did

20   not owe any of the $3,014,294.00 the government claimed he still owed on April 2, 2021, and in

21   fact, the government had over-collected at least $165,310.14   that the district court should have

22   ordered returned to Zinnel in the garnishment writ proceedings. (ECF nos. 20 & 84).

24          After filing a garnishment writ action, and thereafter litigating and maintaining for over a

25   year that Zinnel still owed $2,513,319.00 in restitution, a $500,000.00 fine, and a special assessment

26   of $1,500.00, all of which was disputed by Zinnel, during a court-supervised settlement conference

27   on June 3, 2022,  the government without any explanation or accounting, agreed the *maximum*

*exposure* Zinnel faced was for alleged outstanding restitution was $513,056.00 and an alleged outstanding fine of $500,000.00 for a total of $1,013,056 as a path forward for continued litigation which included providing documentation and an accounting by the government. (Transcript, p. 6). Further, without explanation, the government agreed the *maximum exposure* of Zinnel for a litigation surcharge was an arbitrary $150,000.00. (Transcript, pgs. 6, 18, & 19). However, during the settlement conference, Zinnel constantly and consistently maintained his position from the start that that he did not owe the government any additional money, as all of his financial obligations in the Criminal Case had been satisfied by September 21, 2016. (ECF #84, pgs. 4, 5, 8, & 34; ECF #138, pgs. 25 & 44). Alternatively, if there was any money owed, it would only be for the fine, not for restitution or special assessment. (Transcript, p. 5). It was agreed by the Government and Zinnel that they would litigate with in the future and have Judge Nunley decide how much Zinnel owed in the Criminal Case if any. Thus, the settlement conference resulted in a partial settlement and a path forward regarding future litigation between Zinnel and the Government (Transcript, pgs. 3, 5, 6, 25, & 37).

Thus, after steadfastly maintaining its specious position for over a year of constant litigation, in both District Court and State of California Probate Court, that Zinnel owed $3,315,723.40 including a litigation surcharge, government lawyer AUSA Ernce, in a binding admission on behalf of her client Plaintiff United States of America, admitted that at least $2,152,667.34 had magically disappeared. (Transcript p. 6; ECF #138, pgs. 13 & 14). This demonstrates there was, and still is, a need for an evidentiary hearing as required by 28 *U.S.C.* §3202(d). Further, the government failed to explain why the $3,149,604.14 that the government had marshaled in the Criminal Case as of September 21, 2016 had not satisfied ALL of the restitution, fine, and special assessment. (Transcript; ECF #138, pgs. 13 & 14). Nor has the government provided any accounting. (Transcript, pgs. 18, 19, & 29; ECF #138, pgs. 13 & 14). Thus, the district court erred when it did not hold an evidentiary hearing, as required by 28 *U.S.C.* §3202(d) and timely requested by Zinnel.

Through its garnishment action, the government unlawfully obtained an additional $1,162,047.08 comprised of the disputed maximum ceiling of $1,012,047.08 for restitution and fine agreed by the government and Zinnel during the June 3, 2022 Settlement Conference to be resolved in an evidentiary hearing plus the maximum ceiling of $150,000 for a disputed litigation surcharge. (SER-008; ECF #149, p. 2). Therefore, as of August 1, 2022, the government had marshalled $4,344,160.00 from Zinnel.

According to the government in its Answering Brief in the Appeal on pg. 5, between February and May of 2022, the government used part of its marshalled funds from Zinnel to pay $2,000,262.94 to the restitution recipients. If true, the government is in possession of $2,343,897.06. ($4,344,160.00 - $2,000,262.94). Thereafter, the government instructed the District Court Clerk to pay restitution recipients an additional $512,047.08 in August 2022. Thus, the government is still sitting on $1,861,849.98 ($2,373,897.06 - $512,047.08). From this amount, the $500,000 court-imposed maximum fine goes to the federal treasury which leaves the government still holding $1,329,341.00 in excess of the criminal penalty judgment relief. Thus, the District Court for the District of South Dakota should fashion relief **by ordering the government to return $1,329,341.00 to Zinnel.** Doing so does not require any funds whatsoever to be clawed back from the restitution recipients, which the government and Zinnel agree are now paid in full.

Thus, a controversy exists and this Court can give the Zinnel effective relief by ruling in Zinnel's favor and ordering the government to return to Zinnel the $1,329,341.00 that the government over-collected and is in possession of. Government attorney AUSA Lynn Trinka Ernce has informed Zinnel that the *United States intends to seek a new final garnishment order.* However, this cannot happen until this case is transferred to the District of South Dakota, Western Division (Rapid City) and an evidentiary hearing occurs as required by 28 U.S.C. §3202(d), Zinnel's timely

request (ECF #20), and the agreements made in the Settlement Conference, including and importantly agreements made by government attorney AUSA Lynn Trinka Ernce (see Transcript).

Once this case is transferred to the District of South Dakota, Western Division (Rapid City) United States District Judge Camela C. Theeler of the District of South Dakota, Western Division (Rapid City) will be required to conduct an evidentiary hearing, as required by 28 *U.S.C.* §3202(d), Zinnel's timely request (ECF #20), and the agreement between the parties to determine how much of the $1,329,341.00 the government unlawfully over-collected must be returned to Zinnel.

In aggravation, in the Criminal Case, on July 5, 2022, Zinnel filed a *Motion for a Judicial Determination of Amount Due,* (Criminal Case ECF nos. 705 & 715, Exhibits 7 & 8) and biased, bad, and three-time reversed on appeal Judge Troy L. Nunley [16] denied Zinnel's motion. (Criminal Case ECF #716; Exhibit 9). [17] **Therefore, there has NEVER been a judicial determination in either this garnishment case (Misc. Case #1) or the Criminal case as to why government has marshalled and collected $4,344,160.00 when $3,014,819.00 was the Total Amount Ordered by the court in the Criminal Case** (ECF #20, p. 7; ECF #84, p. 4; Criminal Case, ECF #386, pgs. 1 & 6). Furthermore, **the government has NEVER explained** why it marshalled and collected **$4,344,160.00** when **$3,014,819.00** was the Total Amount Ordered by the court in the Criminal Case (ECF #20, p. 7; ECF #84, p. 4; Criminal Case, ECF #386, pgs. 1 & 6). Zinnel's position that he has maintained for years now, the government has now over-collected **$1,329,341.00 that must be returned to Steven Zinnel with interest.**

---

[16] Zinnel's opinions, beliefs, and viewpoints.

[17] In Zinnel's Reply Brief to the government's opposition to Zinnel's Motion for Judicial Determination of the Amounts Due, filed on August 19, 2022, Zinnel wrote he was *quite confident that Judge Troy L. Nunley and Magistrate Allison Claire would be completely reversed on appeal by the Ninth Circuit Court of Appeals* (Criminal Case ECF #715, pg. 2; Exhibit 8, pg. 2). Zinnel was determined to be right on June 9, 2025 when in a Published Opinion, the Ninth Circuit reversed Judge Troy L. Nunley for the third time in an appeal in Zinnel's case.

1
2
3
4

**II.    THE DISTRICT COURT ERRED IN MAY 2021 WHEN IT DID NOT HOLD AN EVIDENTIARY HEARING, AS REQUIRED BY 28 *U.S.C.* §3202(D), THAT ZINNEL TIMELY REQUESTED, TO DETERMINE WHAT AMOUNTS HAD BEEN MARSHALED FROM ZINNEL'S ASSETS AND WHAT, IF ANYTHING, WAS STILL OWED TO SATISFY THE RESTITUTION AND FINE ORDER**

5
6
7
8
9

The district court erred when it did not hold an evidentiary hearing, as required by 28 *U.S.C.* §3202(d), and timely requested by Zinnel, when the government lawyers made judicial admissions and representations in writing that forfeited assets from Zinnel would be used to pay the restitution recipients and fine.

10
11
12
13
14
15
16
17
18

Zinnel timely requested the mandatory evidentiary hearing mandated by 28 *U.S.C.* §3202(d) for an accounting and a court determination of how much of the $3,149,604.14  (ECF #20, p. 8; ECF #84, p. 11; ECF #138, p.13) the government had marshaled must be credited to the court-ordered restitution of $2,513,319.00 and the fine of $500,000.00 (ECF #1, p. 2; ECF #20, p. 7; ECF #84, p. 4;  Criminal Case, ECF #386, pgs. 1 & 6). Zinnel proffered compelling evidence that he did not owe any of the $3,014,294.00 the government claimed he still owed, and in fact, the government had over-collected at least $165,310.14   that the district court should have ordered returned to Zinnel in the garnishment writ proceedings. (ECF nos. 20 & 84).

19
20

A. The *Federal Debt Collection Practices Act* requires that an evidentiary hearing must be held if timely requested by the debtor

21
22
23
24
25
26
27

The *Federal Debt Collection Practices Act*, 28 *U.S.C.* §§ 3001-3308, ("*FDCPA*") sets forth the "exclusive civil procedures for the United States . . . to recover a judgment on...an amount that is owing to the United States on account of . . . restitution." *United States v. Mays*, 430 F.3d 963, 965 (9th Cir. 2005) (quoting 28 U.S.C. §§ 3001(a)(1), 3002(3)(B).   Under the *FDCPA*, the government is required to provide the judgment debtor with notice of the commencement of garnishment proceedings. 28 *U.S.C.* § 3202(b)-(c). The judgment debtor has twenty days after

28

1   receipt of the notice to request a hearing **within five (5) days**, at which the judgment debtor may

2   move to quash any order granting the garnishment. 28 *U.S.C.* § 3202(d).

3
4       28 *U.S.C.* § 3202(d) states the court *shall* hold a hearing at the debtor's request and states in

5   relevant part:

6       (d) Hearing.—By requesting, within 20 days after receiving the notice described in
        section 3202(b), the court to hold a hearing, the judgment debtor may move to
7       quash the order granting such remedy. The court that issued such order shall hold a
        hearing on such motion as soon as practicable, or, if so requested by the judgment
8       debtor, within 5 days after receiving the request. (emphasis added)

9       The Supreme Court has found "shall to be the language of command." *Escoe v. Zerbst*, 295

10  U.S. 490, 493 (1935). In 1998, the Supreme Court again made it crystal clear that "shall" creates an

11  obligation not subject to judicial discretion. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,

12  523 U.S. 26 (1998). The Ninth Circuit has held the same: "The word 'shall' is ordinarily the

13  language of command." *United States v. Kowalczyk*, 805 F.3d 847, 857 (9th Cir. 2015). In this case,

14  Zinnel requested a hearing. (ECF #20, p. 1). The district court erred in failing to hold the hearing

15  as required by 28 *U.S.C.* § 3202(d).

16
17      B. The Judicial Admissions made by Plaintiff United States of America should  be enforced

18      Judicial admissions are "formal admissions in the pleadings which have the effect of

19  withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title

20  Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.1988). A judicial admission is binding before

21  both the trial and appellate courts. Id. Rule 11 of the *Federal Rules of Civil Procedure* imposes a

22  duty upon lawyers who sign court-filings. (ECF #84, p 6; ECF #138, pgs. 56 & 57). Rule 11 created

23  a certification that the "legal contentions are warranted by existing law" and that "the factual

24  contentions have evidentiary support."

25
26      Here, the government attorneys made judicial admissions that the stipulated forfeited assets

27  from Zinnel would be used to pay the restitution recipients and fine. In March 2014, when Zinnel

28

1  moved to stay the sale of real property forfeited prior to sentencing, the government opposed the

2  motion to stay. (ECF #84, pgs. 29-32; Criminal Case ECF nos. 314, 586-4., pgs. 2-5). The

3  government's opposition filed on March 3, 2014 stated:

4      The only way that he would be prejudiced by forfeiture and liquidation of these
       assets would be that they could generate funds that the Attorney General could in
5      his discretion direct to Zinnel's victims (including his ex-wife). (ECF #84, pg. 29;
       Criminal Case ECF #314, p. 1)
6

7

8      In the government's opposition to the Motion to Stay in the Criminal Case, AUSA Kevin

9  Khasigian represented to the court, restitution recipients, and Zinnel that any funds forfeited from

10 Zinnel would be used to pay restitution recipients and the government and its lawyers intended to

11 use forfeited funds to pay the restitution recipients right away. (ECF #84, p 6;  ECF #138, p. 45;

12 Criminal Case, ECF #314, p. 1).  Further, in the government's opposition to Zinnel's Criminal Case

13 Motion to Stay Forfeiture, AUSA Khasigian wrote, and four government attorneys certified under

14 Rule 11 the following:

15

16     After all, forfeiture is designed to create a pool of assets from which victims can be
       reimbursed…Delaying forfeiture will only prolong the ability of [Defendant's]
17     victims to receive distributions ... and would serve to further harm [them]. See
       *United States v. Davis*, No. 07-cr-011, 2009 WL 2475340, at *3 (D. Conn. June 15,
18     2009). Simply put, the sooner the properties are sold the better off Zinnel's victims
       will be.
19     (ECF #84, p 7;  ECF #138, p. 46; ECF #84 p. 32; Criminal Case, ECF #314, p. 5).

20     The government lawyers have made judicial admissions that they must abide by; to wit: that

21 forfeited funds would be applied to restitution.  This court should find the statements made by the

22 government lawyers in the Criminal Case on March 3, 2014 (ECF #84, pgs. 29-32; Criminal Case,

23 ECF #314) that the government would be applying the assets marshaled by the government from

24 Zinnel as of March 3, 2014, over nine (9) years ago, to pay Zinnel's court-ordered financial

25 obligations are judicial admissions.  (ECF #138 p. 49).

26

27     On September 21, 2016, AUSA Khasigian sent an email to Zinnel's criminal attorney

28 Suzanne Luban admitting that Plaintiff United States of America had marshaled $3,149,604.14 in

assets in Zinnel's Criminal Case, but "No funds have been applied to restitution or the fine." (ECF #84, pgs. 8 & 34; Criminal Case ECF #586-4, p. 19). Thus, as of September 21, 2016, the government had marshaled $3,149,604.14 (ECF # 84, pgs. 8 & 34) to be applied against the May 30, 2014 Court Ordered Monetary Penalties of $3,014,819. (Criminal Case, ECF # 386, p. 6; ECF # 1 p. 2; ECF # 84 p. 11). Therefore, as of September 21, 2016, by the government lawyer's own written admission, the government had over-collected by at least $134,785.00. (ECF # 84 p. 11).

Under 28 *U.S.C.* §3202(d) the district court erred when it did not hold an evidentiary hearing within ten (10) days, as mandated by Congress in 28 *U.S.C.* §3202(d) and Zinnel's timely request, to determine what amounts had been marshaled from Zinnel's assets and what, if anything, was still owed to satisfy the restitution and fine order.

C. Magistrate Allison Claire and District Court Judge Nunley erred in denying of Zinnel's right to a mandatory evidentiary hearing which was required by 28 *U.S.C.* §3202(d) and Zinnel's timely request

Completely ignoring the law and dispositive facts contained in Zinnel's request for an evidentiary hearing, motion to quash the continuing writ of garnishment, motion to dismiss (ECF nos. 20, 37 & 43), and Zinnel's Reply to the government's response (ECF #84), Magistrate Judge Allison Claire issued an Order and Findings and Recommendations (ECF #89) on July 20, 2021 denying Zinnel's motions contained in the court's docket at ECF nos. 70 , 71 , 72 , 85 and 87 and recommended that the District Court Judge deny Zinnel's Request for Evidentiary Hearing

1  (ECF #20) and Motion to Dismiss (ECF #43) and referred her Order and Findings and

2  Recommendations to Judge Troy L. Nunley. [18] [19] [20]

3

4       Magistrate Judge Allison Claire's "justification" for denying Zinnel's statutory right to a

5  hearing clearly missed the mark because her law and facts were copied word-for-word from District

6  of Arizona Magistrate Judge Lawrence O. Anderson's Findings and Recommendations that bore no

7  resemblance to the facts and court-filings in this case. (ECF nos. 89, p. 4 & 103, pgs. 10 & 11; see

8  *United States v. Bruneau*, No. CR-09-8098-1-PCT-FJM, 2013 WL 6409518 (D. Ariz. Oct. 23,

9  2013). (ECF #89, p. 4).  However, each of the cases Magistrate Allison Claire cites at ECF #89, p.

10  4:2-15, which were all cited by Magistrate Judge Lawrence O. Anderson, are completely

11  distinguishable from this case and offer not a scintilla of support for Magistrate Judge Allison

12  Claire's "Findings and Recommendations" and her "justification" for denying Zinnel his statutory

13  right to an evidentiary hearing in the District of Oregon. Thus Magistrate Allison Claire's Findings

14  and Recommendations are "clearly erroneous" and "contrary to law." Zinnel had objected to the

15  Writ of Garnishment for all the issues specified in 28 *U.S.C.* §3202(d) (see ECF nos. 20, 23, 29, 30,

16  31, 83, and 84).

17       Magistrate Allison Claire  erroneously relied on *United States v. Miller*, 588 F.Supp.2d 789

18  (W.D. Mich. 2008) in which the court stated, "the defendant was not entitled to an evidentiary

19  hearing because his objection did not include any of the grounds listed in 28 *U.S.C.* §3202(d)."

20

---

21  [18] 28 *U.S.C.* § 3202(d) and Zinnel's May 3, 2021 request,  mandated that the court hold the evidentiary hearing  by
May 13, 2021 which was ten (10) days after Zinnel's request. (ECF #20, p. 1). Thus, Magistrate Allison Claire's July

22  20, 2021 denial order was sixty-eight (68) days too late.

23  [19] Zinnel received Magistrate Allison Claire's Order and Findings and Recommendations filed on July 20, 2021 (ECF
#89) on July 27, 2021. (ECF #103-1, p.2). Because Zinnel received the Magistrate Judge's order, ECF #89, eight (8)

24  days after it was signed, Zinnel was prejudiced in filing his objections to the Magistrate Judge's order within fourteen
(14) days as specified on page 8 of the order. (ECF #103-1, p.2).

25  [20] Zinnel also filed a Motion to Compel Personal Service because of problems receiving United States Mail in prison.
(ECF #34).  Magistrate Allison Claire denied Zinnel's Motion.  (ECF #44). Thereafter, Zinnel filed a Notice of

26  Continued Prejudice Because the Prison Staff at FPC Sheridan Delays and Obstructs U.S. Mail and the Court Denied
Steven Zinnel's Motion for Personal Service in this Case. (ECF #82).   In the Notice, Zinnel explained the significant

27  delay in receiving court orders and opposing parties' legal filings which greatly prejudiced Zinnel in filing within court-
imposed deadlines.  (ECF #82).

28

Magistrate Allison Claire also cited *United States v. Baugus*, 310 Fed.Appx. 120 (9th. Cir. 2009), in which Baughus' appeal arose from the district court's order denying as untimely his motion for appointment of counsel and a hearing." Similarly, she improperly relied on *United States v. Pedro*, 2011 U.S. Dist. 64049 (D. Ariz. May 16, 2011), in which Pedro failed to claim any grounds identified in 28 *U.S.C.* §3202(d) and a violation of a court order was the reason no hearing was held.

Here, with Zinnel, it is the complete opposite and there is no similarity to *Pedro*. Id. Likewise, in *United States v. Tanya Marie Smith*, 88 Fed.Appx. 981 (8th Cir. 2004), Smith requested a hearing arguing that a fine was invalid and illegal. The district court denied Smith's request for a hearing because she did not dispute that the fine had been imposed and not paid. Rather, she sought to challenge the validity of the fine imposed, which she may not do in a *FDCPA* hearing. see 28 *U.S.C.* §3202(d). (ECF #103, pgs. 11-12).

**Here, Zinnel unequivocally disputed the government's claim that the restitution and fine imposed was not paid**. Zinnel requested a hearing because the government had collected, and was sitting on, $3,180,129.14 which is more than the total ordered in the judgment which is $3,014,819 by $165,310.14. (see ECF nos. 20 84, 103, p. 12). Further, Zinnel filed a Notice of Claim of Exemption. (see ECF #23).

Further, in her Findings and Recommendations, Magistrate Allison Claire cited *United States v. Mays*, 430 F.3d 963, 965 (9th Cir. 2005) (ECF #89, p. 3). However, Magistrate Allison Claire failed to acknowledge a significant fact in *Mays*, which was **the district court not only held one evidentiary hearing, but held two evidentiary hearings**. Here, Zinnel was unlawfully deprived of even a single evidentiary hearing when there was much disputed. Moreover, Mays argued that the district court lacked jurisdiction to issue a writ of garnishment under a criminal docket number, but Mays did not contest the government's right to seek a writ of garnishment against him; a fact pattern significantly different from the fact pattern in this case.

Here, Zinnel timely requested a hearing on the form Plaintiff United States provided him. (see ECF #20). Zinnel requested a hearing, within 10 days, which would have been by May 13, 2021, based upon the following relevant reasons:

1) Zinnel does not owe any money in the underlying Criminal Case and the government has actually over-collected $165,310.14 in the Criminal Case that should be returned to Zinnel;

2) Plaintiff United States of America and its attorneys had not complied with statutory requirements for the issuance of the post judgment remedy;

(see ECF nos. 20, 23, 29, 30, 31, 83, 84, 113, p. 9)

3) The United States was not entitled to a Litigation Surcharge.  (ECF #31).

Yet, Magistrate Allison Claire erroneously opined in her Order and Findings and Recommendations: *The defendant clearly owes the money at issue.* (ECF #89, p. 3). This statement is completely refuted by Zinnel's filings and the government's judicial admissions. (see ECF nos. 20, 84, 23, 37, 31, & 103). Zinnel timely filed his Objections to her erroneous Order and Findings and Recommendations to Judge Troy L. Nunley, thus preserving the issues and matters for appeal. (ECF #103).    The Government and David Zinnel also filed their own Objections to Magistrate Allison Claire's erroneous Order and Findings and Recommendations.  (ECF nos. 98 & 101).

Notwithstanding, bad, and biases, and three-times reversed on appeal Judge Troy L. Nunley *rubber-stamped* Magistrate Allison Claire's Order and Findings and Recommendations, overruled the Government's and David Zinnel's objections, and fully adopted the Magistrate Allison Claire's Findings and Recommendations. (ECF #110). District Court Judge Troy L. Nunley erred when he did not even consider Zinnel's timely filed objections (ECF #103) and wrote *only the government and third-party claimant David Zinnel filed objections to the findings and recommendations.* (ECF #110).

1    Thus, Magistrate Allison Claire and District Court Judge Nunley committed reversible

2  errors when they relied on non-binding decisions of other magistrate judges, in cases with different

3  dispositive facts, and thereafter denied Zinnel the mandatory evidentiary hearing required by 28

4  *U.S.C.* §3202(d). Further, Judge Nunley committed reversable error in not considering Zinnel's

5  objections.

6

7

8    D.  The government's judicial admissions at the Settlement Conference confirm that an

9    evidentiary hearing was required pursuant to 28 *U.S.C.* §3202(d)

10

11    During the Settlement Conference on June 3, 2022, government lawyer AUSA Lynn Trinka

12  Ernce, stipulated on the record on behalf of her client Plaintiff United States of America, that the

13  maximum Plaintiff United States would attempt to collect is now capped at $1,163.056.06.

14  (Transcript, p. 6). The government's math and ceiling are as follows:

15

16    Restitution            $ 513,056.06  (no explanation how govt. determined)

17    Fine                   $ 500,000.00

18    Litigation Surcharge  $   150,000.00    (no explanation how govt. determined)

19    Total Maximum    **$ 1,163,056.06** (Transcript, p. 6)

20

21    Therefore, Plaintiff United States of America  stipulated on the record that restitution is

22  reduced from $2,513,319.00 to a *maximum exposure* of $513,056.06, a **$2,000,262.94 reduction**

23  **without any explanation or accounting**, , and the claimed 10% Litigation Surcharge was reduced

24  from $301,429.40 to an arbitrary and unlawful 14.81% Litigation Surcharge *maximum exposure* of

25  **$150,00.00 without any explanation or accounting**. (Transcript, p. 6).  Further, government

26  lawyer AUSA Lynn Trinka Ernce  has made an admission on behalf of her client that *the Attorney*

27  *General (acting through the DOJ Money Laundering and Asset Section) exercised discretion to*

28

1   *transfer **some*** [why not all?] *forfeited funds to **some victims***. *See 28 C.F.R. § 9.8;* an admission

2   previously made by another government lawyer on March 3, 2014. (see Criminal Case ECF #314).

3         **This Court should ask why** for so many years now, the government lawyers, including

4   AUSA Lynn Trinka Ernce, have represented to two different courts that Zinnel's outstanding debt

5   was $3,014,294.00 and now the maximum exposure he faces was $1,013,056?

6         Thus, the district court erred when it did not hold an evidentiary hearing within ten (10) days

7   of Zinnel's May 3, 2021 request, as required by 28 *U.S.C.* §3202(d), to determine what amounts had

8   been marshaled from Zinnel's assets and what, if anything, was still owed to satisfy the restitution

9   and fine order.

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

**III.    THE DISTRICT COURT ERRED AFTER THE JUNE 3, 2022 SETTLEMENT CONFERENCE, WHEN IT DID NOT HOLD FURTHER PROCEEDINGS REGARDING THE AMOUNT ZINNEL ACTUALLY OWED, IF ANY, AND FOR AN ACCOUNTING BY THE GOVERNMENT, AS AGREED BY THE PARTIES AND CONFIRMED BY MAGISTRATE JUDGE NEWMAN, WHEN THE PARTIES REACHED A PARTIAL SETTLEMENT AGREEMENT. INSTEAD THE DISTRICT COURT ERRONEOUSLY ISSUED ITS FINAL DISPOSITION ORDER ON JULY 18, 2022 ORDERING GARNISHEE TD AMERITRADE CLEARING, INC. TO PAY ZINNEL'S MAXIMUM EXPOSURE FOR RESTITUTION, FINE, AND LITIGATION SURCHARGE TO THE GOVERNMENT AND THERE WAS NO ACCOUNTING BY THE GOVERNMENT**

A.  The district court erred when it did not conduct further proceedings as the parties agreed and Magistrate Judge Newman confirmed

    1.  The Settlement Conference Resulted in a **Partial** Settlement Agreement

In this case a complete agreement **was not** reached during the Settlement Conference on June 3, 2022 and presiding Magistrate Judge Newman acknowledged that Zinnel and the government were still litigating. This is reflected in the Transcript when Magistrate Judge Newman stated as follows:

*The parties have reached an agreement --**not a complete resolution** of this case -- but an agreement on a **path forward**.* and we're here to put the terms of that **path forward** on the record; make sure everyone understands and agrees. (emphasis added). (Transcript, p. 3)

Or if there is any money owed, it may be for a fine but not for any restitution. **But that is for him to litigate with the government**. (emphasis added) (Transcript, p. 5)

*Again, **until this entire matter** involving the Ameritrade account **is resolved**.* (emphasis added). (Transcript, p. 8)

THE COURT: Very good. All right. Folks, we have an agreement. I think **that helps with a path forward.** (emphasis added) (Transcript, p. 25)

1    This is also reflected in the Minute Order after the Settlement Conference, as reflected in the

2    Transcript when Chief Magistrate Judge Newman stated as follows:

3

4        06/03/2022    128    MINUTES    for    SETTLEMENT    CONFERENCE
         proceedings held via video conference (Zoom) on 6/3/2022 before Chief
5        Magistrate Judge Kendall J. Newman: Government Counsel, Lynn Trinka Ernce,
         present. Defendant, Steven Zinnel, present. Counsel, Kenneth Gregory Peterson,
6        present. Third Party Claimant, David Zinnel, present. The parties agreed to a
         number of material terms in Case No. 2:21-mc-0098 TLN AC **which help set**
7        **forth a path forward between the Government and Defendant, Steven Zinnel.**
         (emphasis added) (ECF #128)
8

9

10           2.   <u>During the Settlement Conference, the parties agreed to the *Maximum Exposure*</u>

11                <u>that Zinnel faced, but the parties **did not agree** that the *Maximum Exposure* was</u>

12                <u>the amount Zinnel actually owed</u>

13

14    During the June 3, 2022 Settlement Conference the government asserted and agreed  that

15    the *maximum exposure* Zinnel faced was $1,163,056.06 comprised of a $513,056.06 in restitution,

16    a $500,000.00 fine, and a litigation surcharge of $150,000.00. (Transcript p. 6). Immediately after

17    the magistrate judge confirmed the *maximum exposure* Zinnel faced, the magistrate judge

18    confirmed that the parties all agreed that *there was no agreement by Steven Zinnel that the*

19    *government is entitled to that amount* and the government agreed that would be the *maximum* they

20    were seeking. (Transcript p. 6). Zinnel's position that he maintained throughout the Settlement

21    Conference, without compromise, was that as of April 2, 2021, the date the government filed this

22    garnishment action, (ECF #1) the government had over-collected $165,310.14  which should be

23    returned to Zinnel. (Transcript, p. 6; ECF #20, p. 8; ECF#138, p. 37). Therefore, at the end of the

24    Settlement Conference there was a $1,329,341.00 difference and disagreement between the

25    government and Zinnel that all parties agreed would be adjudicated by Magistrate Allison Claire

26    and District Court Judge Troy L. Nunley  as part of the *path forward.* (Transcript, pgs. 6 & 20).

27    Further, an accounting by the government was part of the *path forward.*

28

1    In fact, Magistrate Judge Newman stated during the Settlement Conference:

2    Ameritrade is not to distribute any assets until it gets an order from the *federal court*
3    *as to what, __if anything__, the federal government is entitled to*. (emphasis added)
     (Transcript, p. 7);

4
5    If and when Ms. Ernce files for order to final. I think you're welcome to file
     something saying *Oh, you can't do that until I get a final accounting.*
6    Again, that's between you, Judge Claire, and Judge Nunley.
     (Transcript p. 29)

7

8    Zinnel never had an opportunity to say *Oh, you can't do that* as indicated above, and the

9    district court committed reversible error in not giving Zinnel the opportunity as mandated by what

10   Magistrate Judge Newman said during the Settlement Conference and 28 *U.S.C.* §3202(d).

11

12         3.   The parties agreed, and Magistrate Judge Newman confirmed there would be
13              continued proceedings and litigation between the government and Zinnel to
14              determine how much restitution, fine, and litigation surcharge Zinnel owed, if
15              any
16

17   As stated above, Magistrate Judge Newman memorialized that the parties reached a partial
18   settlement and a path forward for continued litigation between the government and Zinnel.
19   (Transcript pgs. 3, 6, 25, & 27). However, on June 10, 2022, a mere seven (7) days after the court-
20   supervised Settlement Conference, the government filed a Request for Findings and
21   Recommendations for Final Order of Garnishment. (ECF #135). In its filing, government lawyer
22   AUSA Lynn Trinka Ernce misrepresented to the court that *as of June 7, 2022, Debtor still owes*
23   *$1,013,056.06, comprised of the $500,000.00 fine, plus $513,056.06 in unpaid restitution* without
24   any supporting evidence or documentation. (ECF #135, p. 2). As stated above, during the June 3,
25   2022 Settlement Conference, the government agreed and asserted that the **maximum exposure**
26
27
28

1  Zinnel faced was $1,163,056.06 comprised of a $513,056.06 in restitution, a $500,000.00 fine, and

2  a litigation surcharge of $150,000.00. (Transcript, p. 6).

3

4  However, a mere three (3) days after the government filed its Request for Findings and

5  Recommendations for Final Order of Garnishment, on June 10, 2022, (ECF #135) and without

6  Zinnel even receiving the government's Request for Findings in the mail, on June13, 2022

7  Magistrate Allison Claire, *rubber-stamped* the government's request and issued a Findings and

8  Recommendations for Final Order of Garnishment recommending that the government receive

9  $1,163,056.06 comprised of a $513,056.06 in restitution, a $500,000.00 fine, and a litigation

10  surcharge of $150,000.00. ( ECF #135, p.2). Thus, Zinnel never had an opportunity to say *Oh, you*

11  *can't do that*. (Transcript, p. 29).

12  Again, Zinnel timely filed an Objection to Magistrate Allison Claire's erroneous ruling

13  granting the government's Request for Findings and Recommendations for Final Order of

14  Garnishment thus preserving the issues and matters for appeal. (ECF # 138). On July 18, 2022,

15  District Court Judge Troy L. Nunley issued an Order *rubber-stamping* Magistrate Judge Allison

16  Claire's Findings and Recommendations for Final Order of Garnishment. (ECF #149). The district

17  court erred when it did not hold further proceedings, as agreed by the parties and confirmed by the

18  Magistrate Judge Newman, when the parties reached a partial settlement agreement, but instead

19  issued its final Disposition Order on July 18, 2022 ordering garnishee TD Ameritrade Clearing, Inc.

20  to pay Zinnel's *Maximum Exposure* for restitution and fine of $1,012,047.08 to the Court Clerk and

21  pay Zinnel's *Maximum Exposure* of a Litigation Surcharge $150,000.00 to the government without

22  relying on any evidence whatsoever.

23

24  ///

25  ///

26

27  ///

28

**IV. THE DISTRICT COURT ERRED WHEN IT AWARDED THE UNITED STATES OF AMERICA AN UNLAWFUL 14.81% LITIGATION SURCHARGE OSTENSIBLY UNDER 28 *U.S.C.* §3011(A) WHEN THE GOVERNMENT WAS NOT ENTITLED TO ANY LITIGATION SURCHARGE BECAUSE ZINNEL'S FINANCIAL OBLIGATIONS HAD BEEN SATISFIED IN THEIR ENTIRETY PRIOR TO THE GOVERNMENT COMMENCING ITS GARNISHMENT WRIT ACTION**

A. Key Law

28 *U.S.C.* §3011(a) concerns a Litigation Surcharge and states in relevant part:

In an action or proceeding under subchapter B or C, and subject to subsection (b), the United States is entitled to recover a surcharge of **10 percent** of the amount of the debt in connection with the recovery of the debt, to cover the cost of processing and handling the litigation and enforcement under this chapter of the claim for such debt. (emphasis added)

The Sixth Circuit [21] has held **only the outstanding debt** when the garnishment action is filed, **is subject to the 10% litigation surcharge** and not 10% of the total amount of the financial penalties in the original criminal judgment. The court stated:

When the Government initiates an action or proceeding under FDCPA subchapter B or C to recover debt owed to the United States, the United States is entitled to recover a surcharge of 10% **of the outstanding debt**. (emphasis added)

*United States v. Pioch*, 5 F.4th 640 (6th Cir. 2021)

B. The government was not entitled to any Litigation Surcharge, but at an absolute *maximum*, the government may be entitled to a Litigation Surcharge of $50,000 which is 10% of the $500,000 fine imposed in the Criminal Case

As of April 2, 2021, the date the government filed this garnishment action (ECF #1), the government had marshaled $3,149,604.14 to be applied against the May 30, 2014 Court Ordered Monetary Penalties of $3,014,819. (ECF #20, p. 8; ECF #84, p. 11; ECF #138, p.13).   At the time

---

[21] Zinnel is unaware of any Ninth Circuit case regarding the propriety of a 10%  Litigation Surcharge pursuant to 28 *U.S.C.* §3011(a).

1  the government had over-collected $165,310.14  that should have been ordered returned to Zinnel
2  by the district court.  (ECF #20, p. 8; ECF #84, p. 11; ECF #138, p. 6 ).

3       However, on April 2, 2021, when the government filed its  garnishment action, seven (7)
4  years after the Criminal Case judgment, government lawyer AUSA Lynn Trinka Ernce
5  misrepresented to the court that Plaintiff United States of America was entitled to litigation
6  surcharge of ten percent (10%) of the amount of the debt ($301,429.40) pursuant to 28 *U.S.C.* §
7  3011(a). (Evidently, calculated by multiplying $3,014,294.00 by 10%). (ECF #1, p. 2).

8       On May 20, 2021, Zinnel filed his Objection to the United States' Request To Recover a
9  Litigation Surcharge of Ten Percent (10%) in the Amount of $301,429. (ECF #31). The grounds
10  were:

11      1) Plaintiff United States of America and its attorneys have not complied with the
12        statutory requirements for the issuance of the post-judgment remedy as detailed in
13        Zinnel's Request for Hearing filed on May 3, 2021 (ECF #20);

14
15      2) Steven Zinnel does not owe any money in the underlying criminal case and the
16        government has actually over-collected $165,310.14  in the criminal case which
17        should be returned to Zinnel. (ECF #20).
18
19
20       During the June 3, 2022 court-supervised Settlement Conference,  Magistrate Judge
21  Newman memorialized that the parties reached a <u>partial settlement</u> and <u>a path forward for continued</u>
22  <u>litigation between the government represented by its lawyer AUSA Lynn Trinka Ernce  and Zinnel</u>.
23  (emphasis added) (Transcript pgs. 3, 6, 25, & 27).  During the Settlement Conference, the
24  government asserted Zinnel's ***maximum* exposure** was $513,056 in restitution and a $500,000 fine
25  for a total of $1,013,056. (Transcript, p. 6).  The government never explained its position of its
26  entitlement to an arbitrary 14.81% Litigation Surcharge of $150,000 in violation of 28 *U.S.C.* §
27  3011(a).  It appears the government just pulled the $150,000 figure out of thin air.
28

1    As stated above, Zinnel asserts his restitution and fine have been paid in full, prior to the

2  filing of the garnishment writ action, and thus no litigation surcharge can be applied under 28 *U.S.C.*

3  §3011(a) and the Sixth Circuit holding in *United States v. Pioch*, 5 F.4th 640 (6th Cir. 2021).

4  However, even under the *maximum* exposure represented by the government at the Settlement

5  Conference of $1,013,056, exclusive of the $150,000 litigation surcharge asserted by the

6  government, the *maximum* permissible litigation surcharge per the statute and the Sixth Circuit

7  holding in *Pioch*, *supra.* would be $101,305. ($1,013,056 x 10%). Under 28 *U.S.C.* § 3011(a), the

8  Litigation Surcharge cannot be 14.81%. However, Magistrate Allison Claire and Judge Troy L.

9  Nunley   ordered a 14.81% litigation surcharge of $150,000 (ECF nos. 137 & 149) in violation of

10  28 *U.S.C.* §3011(a) which constitutes reversible error.

11

12

13  ## 5.  PARTING WORDS ON THE EASTERN DISTRICT OF CALIFORNIA JUDGES AND

14  PROSECUTORS

15    In Zinnel's unactionable opinion, belief, and viewpoint is that the United States District for

16  the Eastern District of California is a **cesspool [22] of judicial incompetence and weaponized DOJ**

17  **prosecutors that try to win at all costs.** In 1940, 85 years ago, the U.S. Attorney General, Robert

18  Jackson, stated:

19

20    The prosecutor has more control over life, liberty, and reputation, than any other
    person in America. If the prosecutor is obliged to choose his case, it follows that he
21    can choose his defendants. Therein is the most dangerous power of the prosecutor;
    he will pick the people that he thinks he should get, rather than cases that need to be
22    prosecuted. With the law books filled with a great assortment of crimes, a prosecutor
    stands a fair chance of finding at least a technical violation of some act on the part of
23    almost anyone. In such a case, it is not a question of discovering the commission of
    a crime and then looking for the man who has committed it, it is a question of picking
24    the man and then searching the law books, or putting investigators to work, to pin
    some offense on him. It is in this realm--in which the prosecutor picks some person
25    whom he dislikes or desires to embarrass, then looks for an offense, that the greatest
    danger or abuse of prosecuting power lies. It is here that law enforcement becomes
26

27

28  [22] Dictionary Definition: A filthy, disgusting, or morally corrupt place.

personal, and the real crime becomes that of being unpopular or being personally obnoxious to or in the way of the prosecutor himself.

Much of what the United States Attorney's office does isn't open to public scrutiny or judicial review. See *United States v. Redondo-Lemos*, 955 F.2d 1296 (9 CA, 1992). It is therefore particularly important that the DOJ attorneys discharge their responsibilities fairly, consistent with due process. But the temptation is always there: it's the easiest thing in the world for people trained in the adversarial ethic to think a prosecutor's job is simply to win. "It is disturbing to see the Justice Department change the color of its stripes to such a significant degree, portraying an individual as virtuous and honorable or as corrupt and perfidious, depending on the strategic necessities of the separate litigations." *United States v . Katter*, 840 F.2d 118, 137 (1 CA, 1988).

According to a report by the Project on Government Oversight, the Department of Justice identified more than 650 instances of federal prosecutors violating the profession's rules and ethical standards between 2002 and 2013. More than 400 of these were "at the more severe end of the scale." Prosecutors have been and remain the engines driving mass incarceration in America. This especially true when the prosecutors cheat, lie, and win at all costs like they did in Steve's case.

Department of Justice prosecutors are supposed to be wearing white hats and riding white stallions. Assistant United States Attorneys are required to act beyond reproach. Government lawyers should not even be in gray areas or come close to crossing legal and ethical lines. Unfortunately, throughout Zinnel's, the federal prosecutors have dressed in all black and have dipped so far below the legal and ethical lines to warrant Ninth Circuit, DOJ OPR, and State Bar intervention.

From the halls of Congress to the classrooms in our schools, we pledge allegiance to one nation under God with liberty and justice for alt. Justice means that the punishment must fit the crime.

Steven Zinnel and Derian Eidson were prosecuted, remanded into county jail, and sentenced to prison as if they were repeat violent offenders, drug cartel, mafia, or bigger than this nation's biggest financial fraudsters. In Zinnel's case, no one was killed, disfigured, raped, assaulted, had their innocence stolen, poisoned by drugs, had their identity stolen, or had their house burned down. **In Zinnel's case, there was no trust abused, no loss of someone's livelihood, no psychological scars, no violence, no loss of reputation, no life irreparably harmed, no life changing event, or no life destroyed except for Steve's and Derian's.**

When Zinnel was imprisoned at Federal Correctional Institution, Terminal Island, Zinnel shared a prison cell with two convicted murderers who each were sentenced to less time in prison than bad, biased, and three-time reversed on appeal Judge Troy L. Nunley sentenced Zinnel on March 4, 2014 to 212 months (17 years, 8 months) imprisonment and then at resentencing on May 6, 2019 152 months (12 years 8 months) of imprisonment for a bankruptcy fraud case that ASUAs Matthew D. Segal and Audrey Benison Hemesath represented on appeal to the Ninth Circuit that Zinnel's case was *the mine run of roughly similar cases.* (Government Answering Brief at page 154.) While incarcerated, when numerous BOP employees and inmates learned that Judge Troy L. Nunley sentenced Zinnel to almost eighteen (18) years in prison, they asked Zinnel *who did you kill?*

As the Judge Troy L. Nunley and the weaponized government prosecutors were all aware, similarly situated defendants received between 2 to 4 years in prison for a bankruptcy fraud conviction. At sentencing, Judge Troy L. Nunley compared Zinnel to Letantia Bussell, who after

being convicted of sophisticated bankruptcy fraud and money laundering by a jury, was sentenced to three (3) years in prison. The prison sentences and maximum fine imposed by biased Judge Troy L. Nunley are far beyond the norm for the offenses of conviction. Something is wrong in Denmark. The convictions and record-setting draconian sentences *strike as more than probably wrong, they strike as wrong with the force of a five-week old unrefrigerated dead fish*. *United States v. Bussell*, 504 F.3d 956, 962 (9 CA, 2007).

As Justice Douglas once warned, *The function of the prosecutor under the Federal Constitution is not to tack as many skins of victims as possible to the wall. His function is to vindicate the right people as expressed in the laws and give those accused of crime a fair trial.* "*Donnelly v. DeChristofra*, 416 U.S. 637, 648-49 (1974). Judge T.S. Ellis put it this way in his Virginia courtroom on May 4, 2018 in the Paul Manafort case: "What we don't want in the country is anyone with unfettered power" referring to prosecuting special counsel Robert Mueller.

The reality is that over criminalization and vague federal criminal laws combined with ambitious, prison-thirsty prosecutors, passive, rubber-stamping judges, corporate profit motives and ungodly harsh, cruel sentencing has created a prison industrial complex that gives America the dubious distinction of being the incarceration nation. We have become far too punitive as a society, mistakenly believing that prison is the answer for all transgressions of law. Rather than skinning every defendant, eradicating his hope and decimating his life, sanctions should include some mechanism through which offenders can work to redeem themselves.

The longer an individual languishes in prison, the less effective the intended punishment becomes. As the months turn into years, and the years turn into decades, the prisoner becomes alienated from society and retreats into a kind of hibernation, accepting the prison environment as the only world he knows. For nonviolent offenders it doesn't serve any interest other than vengeance.

1    And who wins when the pursuit is vengeance? History has shown vengeance does not work to the

2    benefit of anyone. It is not the Christian way, and yet it is frequently those who proclaim to uphold

3    the Christian faith that call for the pound of flesh. Shakespeare illustrated the errors of vengeance

4    in his timeless play "The Merchant of Venice" more than 400 years ago, yet the United States, the

5

6    government prosecutors in Zinnel's case, and biased and bad Judge Troy L. Nunley   continues to

7    perpetuate them today.

8

9        You can fuck over some of the people some of the time, but you can't fuck over all the

10   people all the time including Zinnel.  Zinnel's opinion, belief, viewpoint is that Judge Troy L.

11   Nunley, AUSA Matthew D. Segal, and  AUSA Audrey Benison Hemesath are such bad human

12   beings.  Some of the men, Judge Troy L. Nunley  and AUSA Mathew D. Segal forced  Zinnel to be

13   exposed to and incarcerated with,  called Judge Troy L. Nunley, AUSA Matthew D. Segal, and

14   AUSA Audrey Benison Hemesath *pieces of shit.* Further it is Zinnel's opinion, belief, and viewpoint

15   that Judge Troy L. Nunley, is a horribly bad judge, a biased judge, who does not follow the law.

16       Zinnel's opinion, belief, and viewpoint is that Judge Troy L. Nunley legal analysis and

17   decision-making boils down to this:  If it is a Government motion, Judge Troy L. Nunley's  ruling

18   is *motion  GRANTED.* If it is a Criminal Defendant motion, Judge Troy L. Nunley's ruling is *motion*

19   *DENIED.*  Likewise if it is a Government objection, Judge Troy L. Nunley's  ruling is  *objection*

20   *SUSTAINED.* If it is a Criminal Defendant objection, Judge Troy L. Nunley's  ruling is *objection*

21   *OVERRULED.*

22       Additionally, it is Zinnel's opinion, belief, and viewpoint that Judge Troy L. Nunley, AUSA

23   Matthew D. Segal, and  AUSA Audrey Benison Hemesath **completely and consistently ruin**

24   **defendants' lives and destroy their families, like they did to Steven Zinnel and Derian Eidson**

25   **without a second thought and without shame, regret, or remorse**.

26

27

28

For over a decade now, Zinnel has prayed to God many times asking God that when Judge Troy L. Nunley and AUSA Matthew D. Segal die, that God judges both of them harshly and **sentences them to burn in hell for eternity with hard labor**. Zinnel trusts God and defers to him to finally judge and sentence Judge Troy L. Nunley and AUSA Matthew D. Segal.

Zinnel's opinion, belief, viewpoint is that President Donald J. Trump thinks he is a king and can do what he wants without impunity. Likewise, Zinnel's opinion, belief, viewpoint is that Judge Troy L. Nunley also thinks he is a king and can do what he wants without impunity.

After Zinnel attended a bankruptcy proceeding in 2005, he met with bankruptcy trustee, attorney, **and government key trial witness** Stephen M. Reynolds in the courthouse hallway. Stephen M. Reynolds asked Zinnel if he knew what the difference between God and a District Court Judge? When Zinnel said no, bankruptcy trustee, attorney, **and government key trial witness** Stephen M. Reynolds responded: *God does not think he is a District Court Judge*. Judge Troy L. Nunley is the epitome of that saying.

It is Zinnel's opinion, belief, and viewpoint that Judge Troy L. Nunley should be impeached and Magistrate Allison Claire should never be a District Court judge. It is Zinnel's opinion, belief, and viewpoint that AUSA Matthew D. Segal, and AUSA Audrey Benison Hemesath should be disbarred. If Zinnel has any say or opportunity to assist in making this happen, he will jump on the opportunity.

///

///

///

///

///

///

///

///

1   Zinnel says **Good Riddance** to the Eastern District of California and
2   its judges and government prosecutors which this Status Report makes clear of what
3   Zinnel's opinions, beliefs, and viewpoints of them are. It seems fitting and applicable that **what**
4   **should be Zinnel's last words** to Judge Troy L. Nunley, Magistrate Allison Claire, AUSA Mathew
5   D. Segal, AUSA Audrey Benison Hemesath, and AUSA Lynn Trinka Ernce should be to simply
6   quote Tom Hanks' *Knock-Knock* joke in the 2002 movie *Catch Me If You Can*: **Go fuck**
7   **yourselves**. [23] [24]

8

9   **6. CONCLUSION**

10   For all the foregoing reasons, Judge Troy L. Nunley  must order the government to pay
11   Zinnel $650,000 in U.S. currency (i.e. cash) within ten (10) days and thereafter  transfer this
12   garnishment entitled *United States v. Steven Zinnel / TD Ameritrade, (Garnishee)*, U.S.D.C. ED CA
13   Case No. 2:21-mc-00098-TLN-AC to the District of South Dakota, Western Division, (Rapid City),
14   and at the same time dismiss the *United States v. Steven Zinnel / David Zinnel, Castana Trust*
15   *(Garnishee)*, U.S.D.C. ED CA Case No. 2:21-mc-00143-TLN-AC as "Misc. Case #2."

16

17   Fighting for what is Right, Saying what needs to be said, and Seeking a scintilla of justice in such
18   an unjust case,

19

20

21   

22   _____                    Dated:  August 19, 2025
    Steven Zinnel, In Pro Se
23

24

25

26   _____
    [23] https://www.youtube.com/watch?v=Yn38I0Y-zqg
27
    [24] Zinnel is quoting Tom Hanks in the movie, but also exercising his free speech rights under the United States and
28   California Constitutions.

# EXHIBIT 1

1  TD AMERITRADE CLEARING, INC.
   Incorporating Service, LTD.
2  7801 Folsom Blvd., #202
   Sacramento, CA 95826

**FILED**

APR 14 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              Case No.: 2:21-mc-00098-WBS-AC

12         Plaintiff,
                                           ACKNOWLEDGMENT OF SERVICE AND
13             v.                          ANSWER OF GARNISHEE (BANK, IRA, STOCKS
                                           OR BROKERAGE ACCOUNTS)
14  STEVEN ZINNEL,

15         Defendant and Judgment Debtor,  Criminal Case No.: 2:11-cr-00234-TLN

16

17  TD AMERITRADE CLEARING, INC.,
    (and its Successors and Assignees)
18
           Garnishee.
19

20       I, ____Mary Johnmeyer_____, declare (fill in as applicable):

21       1.    I am the Garnishee, a partner of the Garnishee, or an authorized representative of the

22  Garnishee.

23       2.    On __April 7, 2021_____, Garnishee acknowledges receipt of the Writ of Continuing

24  Garnishment (Bank, IRA, Stocks or Brokerage Accounts).

25       3.    As of the date of service, the Garnishee has custody, control, or possession of the following

26  property, in which Steven Zinnel, Judgment Debtor, maintains an interest, as described below:

27  ///

28  ///

ACKNOWLEDGMENT OF SERVICE AND ANSWER                     1

| Description of Property<br>(Include Account or Safe<br>Deposit Box Numbers) | Approximate Value | Description of Debtor's<br>Interest in Property |
|---|---|---|
| Rollover IRA Acct 787-727536 | $ 25.01 Cash / Securities | Steve Zinnell Account owner |
| Rollover IRA Acct 782-830613 | $1,458,451.66 Cash/Seurities | Ardith Ferris Owner (deceased)<br>Steve Zinnell Sole Beneficiary of Acct. |

4.    Garnishee anticipates owing to the Judgment Debtor in the future the following amounts:

Amount                                         Estimate Date or Period Due

Garnishee does not anticipate owing future amounts to the Judgment Debtor

5.    List any other party who may have an interest in the property described above:

Account/Safe Deposit Box Number                Name and Address

Garnishee is unaware of any other party who may have an interest in the property described above.

6.    Garnishee denies holding any property or does not expect to hold any property in the future
that is subject to this Writ of Garnishment (Bank, IRA, Stocks or Brokage Accounts) – (Explain below):

Not Applicable.

7.    Garnishee must file with the Court this **original** Acknowledgment of Service and Answer
of Garnishee (Bank, IRA, Stocks or Brokerage Accounts) at the following address:

United States District Court
Clerk of the Court
501 I Street, Room 4-200
Sacramento, CA 95814

ACKNOWLEDGMENT OF SERVICE AND ANSWER                    2

1    8.    The Garnishee will serve a copy of this Acknowledgment of Service and Answer of

2  Garnishee (Bank, IRA, Stocks or Brokerage Accounts) by first class mail to the Judgment Debtor's

3  attorney, the attorney for the United States:

4  Addressees

5        MICHAEL TANAKA, Attorney
         12400 Wilshire Blvd., Suite 400
6        Los Angeles, CA  90025

7        United States Attorney's Office
         KURT A. DIDIER
8        Assistant United States Attorney
         501 I Street, Suite 10-100
9        Sacramento, CA  95814

10       9.    I hereby execute this Acknowledgment of Service and Answer of Garnishee

11  (Bank, IRAs, Stocks or Brokerage Accounts) and declare under penalty of perjury that the foregoing is

12  true and correct to the best of my knowledge, information and belief.

13  Dated:    April 13, 2021                        TD Ameritrade, Inc.
                                                    Name of Garnishee (Printed)
14

15                                                  Signature of Declarant*
                                                    Mary Johnmeyer
16                                                  Printed Name of Declarant
17                                                  Paralegal
                                                    Full Title of Declarant
18                                                  700 Maryville Centre Dr., St. Louis, MO 63141
19                                                  Full Address
                                                    636-614-8781
20  (*Declarant: Person completing this form)       Telephone Number:

21

22

23

24

25

26

27

28

1                        **CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that he/she is a person of such age and discretion to be

3    competent to serve papers.

4          That on __April 13, 2021__, I served a copy of the attached Acknowledgement

5    of Service and Answer of Garnishee (Bank, IRAs, Stocks or Brokerage Accounts), by placing copies in a

6    postage paid envelope addressed to the addressees shown below, which are their last known addresses,

7    and by depositing the envelope and contents in the United States mail

8    at _St. Louis, Missouri_.

9    Addressees

10
            MICHAEL TANAKA, Attorney
11          12400 Wilshire Blvd., Suite 400
            Los Angeles, CA  90025
12
            United States Attorney's Office
13          KURT A. DIDIER
            Assistant United States Attorney
14          501 I Street, Suite 10-100
            Sacramento, CA  95814
15

16

17

18

19    By: _____

20          Declarant/ Mary Johnmeyer

21

22

23

24

25

26

27

28

ACKNOWLEDGMENT OF SERVICE AND ANSWER                4

# EXHIBIT  2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN ZINNEL,<br><br>Debtor. | Case No. 2:21-mc-00098-TLN-AC<br><br>**ORDER ADOPTING FINDINGS AND RECOMMENDATIONS FOR FINAL ORDER OF GARNISHMENT**<br><br>Criminal Case No. 2:11-cr-00234-TLN |
| TD AMERITRADE CLEARING, INC.,<br>(and its Successors and Assignees)<br><br>Garnishee. | |

Defendant-debtor Steven Zinnel ("Defendant") proceeds in this action pro se. The matter was referred to a United States Magistrate Judge pursuant to Local Rule 302(c)(21).

On June 13, 2022, the magistrate judge filed findings and recommendations for a final order of garnishment herein which were served on the parties and which contained notice to the parties that any objections to the findings and recommendations were to be filed within fourteen days. (ECF No. 137.) Defendant filed objections to the findings and recommendations on June 30, 2022. (ECF No. 138.) On July 11, 2022, the United States filed a response to Defendant's objections. (ECF No. 147.)

///

1    The Court has reviewed the file and concludes that the findings and recommendations are

2  supported by the record and by the magistrate judge's analysis.

3        Accordingly, IT IS HEREBY ORDERED THAT:

4    1.    Defendant's objections (ECF No. 138) are OVERRULED and the Findings and

5  Recommendations for Final Order of Garnishment (ECF No. 137) are ADOPTED IN FULL;

6    2.    TD Ameritrade Clearing, Inc. ("Garnishee") shall pay the Clerk of the United States

7  District Court $1,012,047.08 of the funds held by Garnishee within fifteen (15) days of the filing of this

8  Order. Payment shall be made in the form of a cashier's check, money order, or company draft, made

9  payable to the "Clerk of the Court", and delivered to:

10        Office of the Clerk
              501 I St., Rm. 4-200
11            Sacramento, CA 95814

12  The criminal docket number (2:11-cr-00234-TLN) shall be stated on the payment instrument;

13    3.    The United States shall recover a $150,000.00 litigation surcharge pursuant to 28 U.S.C.

14  § 3011(a) and the United States' agreement to reduce its litigation surcharge to $150,000;

15    4.    Garnishee shall pay $150,000.00 to the United States Department of Justice via a single

16  payment within fifteen (15) days of the filing of this Order and send the payment in the form of a

17  cashier's check, money order, or company draft made payable to "United States Department of Justice"

18  and delivered to:

19        U.S. Department of Justice
              Nationwide Central Intake Facility
20            P.O. Box 790363
              St. Louis, MO 63179-0363
21

22  "CDCS Number 2015A03982" shall be stated on the face of the payment instrument;

23    5.    Garnishee shall hold any remaining funds after full payment of $1,162,047.08 has been

24  made to the Clerk and the United States as set forth in paragraphs 2-4 above, pending further order of

25  the Court;

26    6.    The Court shall retain jurisdiction to resolve matters through ancillary proceedings in the

27  case, if necessary; and

28  ///

ORDER ADOPTING FINDINGS AND RECOMMENDATIONS        2
FOR FINAL ORDER OF GARNISHMENT

1    7.    The garnishment shall terminate when Garnishee has paid the $1,162,047.08 as directed

2  in paragraphs 2-4 above.

3        IT IS SO ORDERED.

4  **DATED: July 15, 2022**

Troy L. Nunley
United States District Judge

ORDER ADOPTING FINDINGS AND RECOMMENDATIONS    3
FOR FINAL ORDER OF GARNISHMENT

# EXHIBIT 3

# Settlement Agreement and Mutual Release

1.    <u>Parties</u>.

      This Settlement Agreement and Mutual Release ("Agreement") is entered into by the following parties and entities—collectively referred to herein as the "Parties":

    1.1.    Michael Brumbaugh;

    1.2.    Michael Brumbaugh, Administrator of the Estate of David P. Zinnel (the "Estate");

    1.3.    Michael Brumbaugh, Trustee of the Castana Trust, dated March 4, 2009 (the "Trust");

    1.4.    Steven Zinnel; and

    1.5.    Jennifer Zinnel.

2.    <u>Summary of Disputes</u>. The following actions, identified by Matter Name, Jurisdiction, and Case Number, and all allegations and claims made therein by Steven Zinnel against Jennifer Zinnel and Michael Brumbaugh, individually, in his capacity as Administrator of the Estate, and/or in his capacity as Trustee of the Trust, and all allegations and claims made therein by Jennifer Zinnel or Michael Brumbaugh individually, in his capacity as Administrator of the Estate, or in his capacity as Trustee of the Trust, against Steven Zinnel, shall be referred to collectively as the "Dispute".

    2.1.    Matter Name: *In the Matter of the Castana Trust Dated March 4, 2009*.

        2.1.1.  Jurisdiction: Sacramento County Superior Court.

        2.1.2.  Case Number: 34-2016-00200990.

    2.2.    Matter Name: *Estate of David P. Zinnel*.

        2.2.1.  Jurisdiction: Sacramento County Superior Court.

        2.2.2.  Case Number: 34-2023-00336772.

2.3.    Matter Name: *Steven Zinnel v. Estate of David P. Zinnel, Michael Brumbaugh, Jennifer Zinnel et. al.*

  2.3.1.  Jurisdiction: Sacramento County Superior Court.

  2.3.2.  Case Number: 24CV002915.

2.4.    Matter Name: *United States v. Steven Zinnel / TD Ameritrade.*

  2.4.1.  Jurisdiction: United States District Court, Eastern District of California.

  2.4.2.  Case Number: 2:21-mc-00098-TLN-AC.

2.5.    Matter Name: *United States v. Steven Zinnel / David Zinnel, Castana Trust.*

  2.5.1.  Jurisdiction: United States District Court, Eastern District of California.

  2.5.2.  Case Number: 2:21-mc-00143-TLN-AC.

2.6.    Matter Name: *United States v. Steven Zinnel.*

  2.6.1.  Jurisdiction: United States District Court, Eastern District of California.

  2.6.2.  Case Number: 2:19-mc-00241-TLN-EFB.

2.7.    Matter Name: *Steven Zinnel v. United States of America and Jennifer Zinnel / Michael Brumbaugh.*

  2.7.1.  Jurisdiction: United States Court of Appeals in and for the Ninth Circuit.

  2.7.2.  Case Number: 22-16128.

2.8.    Matter Name: *Steven Zinnel v. Michael Brumbaugh and Jennifer Zinnel.*

  2.8.1.  Jurisdiction: California Third District Court of Appeal

4.14.   <u>Waiver of Potential Claims for Recovery by Jennifer Zinnel, the Estate, and the Trust</u>. Jennifer Zinnel, Michael Brumbaugh in his capacity as Trustee of the Trust, and Michael Brumbaugh in his capacity as Administrator of the Estate, shall make no claim to any money or proceeds that Steven Zinnel may obtain as a result of his continued litigation with the United States in the Matters identified in Section 2.4, Section 2.5, or Section 2.7.

4.15.   <u>Fees and Costs</u>. The Parties agree that each of the Parties must bear their own attorney fees and costs in each of the Matters identified in Section 2. This provision shall not prevent Michael Brumbaugh from making and/or seeking payment of his attorney fees from the Trust or the Estate. In the event Michael Brumbaugh pays any attorney's fees or costs from the Trust or the Estate, nothing in this Agreement shall be construed as a consent or waiver on the part of Jennifer Zinnel regarding such attorney's fees and costs.

5.   <u>Mutual Release of Claims</u>. Excepting the obligations that are expressly set forth in this Agreement, Jennifer Zinnel, Michael Brumbaugh, Michael Brumbaugh in his capacity as Trustee of the Trust, and Michael Brumbaugh in his capacity as Personal Representative of the Estate on one hand, and Steven Zinnel on the other hand, shall and do hereby mutually release and forever discharge the other, and the other's predecessors, successors, heirs, assigns, executors, administrators, trustees, partners, former partners, agents, employees, former employees, officers, former officers, directors, former directors, shareholders, former shareholders, representatives, attorneys, affiliates, insurers, spouses, children, and all other persons acting by, under, through or in concert with them, living or deceased, from any and all claims, damages, actions, causes of action, claims of indemnity, claims of contribution, liabilities, judgments, liens, contracts, agreements, rights, debts, suits, obligations, promises, acts, costs and expenses, fees, attorneys' fees, damages, losses, personal injury claims and charges of whatever nature, whether known or

22.    No Admission.  By entering into this Agreement the Parties do not admit any fact, conclusion of law, or liability as to any matters contained in this Agreement.

Dated: 11/15/2024 .

Signed by:

*Steven Zinnel*
C01C42884EB4445

Steven Zinnel

Dated: 11/18/2024 .

DocuSigned by:

*Michael Brumbaugh*
5819DE36AC04400

Michael Brumbaugh, individually, in his capacity as Administrator of the Estate, and as Trustee of the Trust.

Dated: 11/19/2024 .

DocuSigned by:

*Jennifer Zinnel*
F0570F44EA89440

Jennifer Zinnel

# EXHIBIT 4

K. Greg Peterson, Esq. (SBN: 118287)
K. GREG PETERSON, a Professional Law Corporation
455 Capitol Mall, Suite 325
Sacramento, California 95814
Telephone:     (916) 443-3010
Facsimile:     (916) 492-2680
Email:         greg@kgregpeterson.com

Attorney for Michael Brumbaugh, Administrator of the Estate
of David P. Zinnel and Trustee of the Castana Trust, dtd Mar. 4, 2009

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 2:21-mc-00098 TLN AC |
| Plaintiff, | **STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA ACCOUNT (\*0613) PURSUANT TO SETTLEMENT AGREEMENT** |
| v. | |
| STEVEN ZINNEL | |
| Defendant and Judgment Debtor. | |
| DAVID ZINNEL, SUCCESSOR TRUSTEE OF THE CASTANA TRUST, DATED MARCH 4, 2009, | |
| Garnishee. | |

IT IS HEREBY STIPULATED AND AGREED UPON by and between Third-Party

Michael Brumbaugh, Administrator of the Estate of David P. Zinnel and as successor Trustee of

the Castana Trust, dated March 4, 2009, by and through K. Greg Peterson, his attorney of record,

and STEVEN ZINNEL, appearing Pro Se, as follows:

RECITALS

This action involves an Application for Writ of Garnishment filed on April 2, 2021, by

Plaintiff UNITED STATES OF AMERICA ("**USA**") in connection with criminal monetary

penalties totaling $3,014,294 assessed against STEVEN ZINNEL ("**Steven**") in criminal case

-1-

1   number 2:11–CR–00234–TLN;

2   The Garnishee, TD AMERITRADE CLEARING, INC. ("**TD Ameritrade**"), responded
3   in this action by disclosing its possession of Rollover IRA Accounts 787–727536 and 72–830613
4   (together, the "**TD Ameritrade IRA**") in which it claimed Steven has an interest;

5   Third Party Claimant DAVID ZINNEL ("**David**"), who was served with a copy of the
6   USA's Application for Writ of Garnishment, responded in his capacity as Successor Trustee of
7   The Castana Trust, Dated March 4, 2009 (the "**Castana Trust**") and in his capacity as a 50%
8   beneficiary of the Castana Trust by claiming an interest in the entirety of the TD Ameritrade IRA
9   as an asset of the Castana Trust.

10   1.   On June 3, 2022, the USA agreed to limit the total amount of its criminal
11   monetary penalties owed by Steven to $1,013,056.06 ($513,056.06 restitution; $500,000.00
12   penalty) and its litigation surcharge to $150,000.00, for a total amount of $1,163,056.06 (the
13   "**Agreed Amount**") [Transcript 6:15][1];

14   2.   David and Steven previously agreed that David is then entitled to everything that
15   remains in the TD Ameritrade IRA [Transcript 5:22-6:5] as an asset of the Castana Trust
16   [Transcript 6:19-22, 9:20-21], and any balance remaining is to be sent to the Castana Trust
17   [Transcript 7:10] or the account may be converted to a Castana Trust account [Transcript 7:11-
18   12]. Steven and David agreed, prior to David's death, that any remaining balance of the TD
19   Ameritrade IRA will be a Castana Trust asset and that they will agree to execute whatever
20   paperwork is necessary to effectuate their agreement [Transcript 15:23-16:3, 16:7-12, 26:13-18];

21   3.   The parties acknowledge that the USA has been paid in full from the TD
22   Ameritrade IRA;

23   4.   On October 14, 2022, David passed away.

24   _____

25   [1] All references to Transcript are to the Transcript of Proceedings of the Settlement Conference
26   held on June 3, 2022, before the Hon. Kendall J Newman, Chief Magistrate Judge in this matter
27   and as transcribed Thresha Spencer, CSR (**ECF 134**).
28

STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA
ACCOUNT (*0613) PURSUANT TO SETTLEMENT AGREEMENT

5.      On August 15, 2023, Michael Brumbaugh was appointed as Administrator of the Estate of David P. Zinnel. On August 30, 2023 Michael Brumbaugh was appointed as successor trustee of the Castana Trust.

6.      Michael Brumbaugh and Steven entered into a settlement agreement reiterating their agreement that the remaining funds in the TD Ameritrade IRA are assets of the Castana Trust, and should be distributed to Michael Brumbaugh in his capacity as Successor Trustee of the Castana Trust.

7.      Steven Zinnel has no further interest in the TD Ameritrade IRA.

<u>STIPULATION</u>

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED TO by and between Third-Party Michael Brumbaugh, Administrator of the Estate of David P. Zinnel and as successor Trustee of the Castana Trust, dated March 4, 2009, and Steven Zinnel:

On the basis of their settlement agreement, Steven and Michael Brumbaugh agree to the entry of an order by this Court as follows:

1.      Any and all amounts remaining in the TD Ameritrade IRA are the property of Michael Brumbaugh in his capacity as successor trustee of the Castana Trust, and TD Ameritrade shall either convert the remaining balance in the existing TD Ameritrade IRA to an account held by Michael Brumbaugh in said capacity or TD Ameritrade shall transfer the balance of the account to another financial institution in care of "Michael Brumbaugh, Successor Trustee of the Castana Trust" and pursuant to written instructions provided by Michael Brumbaugh.

IT IS SO STIPULATED.

Dated: November 18, 2024              <u>/s/ Michael Brumbaugh</u>
                                      Michael Brumbaugh, Administrator of the Estate
                                      and Successor Trustee of the Castana Trust


Dated: November 15, 2024              <u>/s/ Steven Zinnel</u>
                                      STEVEN ZINNEL, PRO SE

STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA
ACCOUNT (*0613) PURSUANT TO SETTLEMENT AGREEMENT

1

## ORDER

2

The Court, having received, read, and considered the stipulation of Michael Brumbaugh,

3

Administrator of the Estate of David Zinnel and Successor Trustee of the Castana Trust, and

4

STEVEN ZINNEL (the "**Parties**"), and good cause appearing, hereby adopts the stipulation of

5

the Parties in its entirety as its order, as follows:

6

1. Any and all amounts remaining in the TD Ameritrade IRA are the property of Michael

7

Brumbaugh in his capacity as Trustee of the CASTANA TRUST, DATED MARCH 4, 2009 (the

8

"**Castana Trust**"), and TD Ameritrade shall either convert the remaining balance in the existing

9

TD Ameritrade IRA to another financial institution in care of "Michael Brumbaugh, Successor

10

Trustee of the Castana Trust" and pursuant to written instructions provided by Michael

11

Brumbaugh;

12

IT IS SO ORDERED.

13

14

Dated: November 22, 2024

15

Troy L. Nunley
Chief United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

STIPULATION AND ORDER RE DISPOSITION OF REMAINING BALANCE OF TD AMERITRADE IRA
ACCOUNT (*0613) PURSUANT TO SETTLEMENT AGREEMENT

# EXHIBIT 5

**firsthalfsteve@gmail.com**

| | |
|---|---|
| **From:** | Coleman, Keisha <colemank@ballardspahr.com> |
| **Sent:** | Monday, July 21, 2025 4:56 PM |
| **To:** | firsthalfsteve@gmail.com |
| **Cc:** | Vartabedian, Melanie J.; Taryle, Adam |
| **Subject:** | RE: United States v. Zinnel - TD Ameritrade Account |

Mr. Zimmel,

I received the email you sent, below. Apologies that you did not receive our substitution papers as that was certainly not intentional. We have made a note of your address for any future mailings so this isn't an issue again. Also, with respect to whether you may use the e-filing system, Schwab would not oppose that.

Melanie's address is:
Ballard Spahr LLP
201 South Main Street, Suite 800
Salt Lake City, UT 84111-2221

Additionally, I confirmed that the account is closed.

Regards,
Keisha

**Keisha O. Coleman**

**Ballard Spahr**

999 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-4421
678.420.9320 DIRECT
678.420.9301 FAX

770.833.5289 MOBILE | colemank@ballardspahr.com
VCARD

. . . . . . . . . . . . . . . . . . . . . . . . . . .

www.ballardspahr.com

**From:** firsthalfsteve@gmail.com <firsthalfsteve@gmail.com>
**Sent:** Monday, July 21, 2025 1:41 PM
**To:** Vartabedian, Melanie J. <vartabedianm@ballardspahr.com>
**Subject:** United States v. Zinnel - TD Ameritrade Account

⚠ **EXTERNAL**
Ms. Vartabedian:

# EXHIBIT 6

1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                               EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,

12                  Plaintiff,                    No. 2:21-mc-00098-TLN-AC

13

14         v.                                     **ORDER**

15    STEVEN ZINNEL,

16                  Debtor.

17

18    TD AMERITRADE CLEARING, INC.,
      (and its Successors and Assignees)
19
                    Garnishee.
20

21          After a jury convicted Steven Zinnel ("Zinnel") of bankruptcy fraud, money laundering,

22    and other financial crimes, the United States filed an application for writ of garnishment under the

23    Federal Debt Collection Procedures Act of 1990 (FDCPA) seeking to recover funds from Zinnel's

24    TD Ameritrade Clearing, Inc.'s ("TD Ameritrade") account. (*See generally* ECF No. 1; *see also*

25    Third Amended Judgment, *United States v. Zinnel*, Case No. 2:11-cr-00234-TLN, ECF No. 696.)

26    Zinnel subsequently filed a motion to transfer proceedings to the United States District Court for

27    the District of Oregon — the district where he claimed to reside at the time. (ECF No. 21.) The

28    assigned magistrate judge denied Zinnel's motion to transfer. (ECF No. 27.) The magistrate

1

1    judge later issued findings and recommendations for a final order of garnishment, recommending

2    the Court direct TD Ameritrade to pay the District Court Clerk $1,012,047.08[1] and provide the

3    Department of Justice $150,000 for a litigation surcharge. (ECF No. 137.) Zinnel objected, again

4    arguing this Court should transfer venue. (ECF No. 138 at 2.) This Court overruled those

5    objections and granted the magistrate judge's findings and recommendations in full. (ECF No.

6    149.) Zinnel appealed. (ECF No. 151.) While the appeal was pending, TD Ameritrade disbursed

7    the required $1,012,047.08 to the District Court Clerk, who distributed $512,047 to Zinnel's

8    victims, and $500,000 to the Department of Justice's Crime Victims Fund. (*See* ECF No. 168 at

9    7.) TD Ameritrade also disbursed $150,000 to the Department of Justice for the litigation

10   surcharge. (*Id.*)

11        The Ninth Circuit found this Court did not have the discretion to deny Zinnel's motion to

12   transfer the proceedings. (ECF Nos. 167, 168.) The Ninth Circuit determined that the

13   appropriate remedy was to reverse and vacate this Court's order granting the writ of final

14   garnishment rather than review for harmless error. (ECF No. 168 at 18–19.) In its order, the

15   Ninth Circuit stated that on remand, "the district court could vacate the portion of the garnishment

16   order requiring TD Ameritrade to disburse $650,000 for the unpaid fines and the litigation

17   surcharge and direct the United States to return the funds to TD Ameritrade." (*Id.* at 4.)

18   Additionally, the Ninth Circuit noted that because Zinnel had preserved his objection to venue,

19   the district court could reconsider a transfer request to the district in which Zinnel now resides.

20   (*Id.* at 19 n.4.)

21        Pursuant to the Ninth Circuit's mandate, the Court vacates its Final Order of Garnishment.

22   (ECF No. 149.) Given the Ninth Circuit's order, the Court intends to direct the United States to

23   return $650,000 to TD Ameritrade. Prior to doing so, the Court DIRECTS the parties to meet and

24   confer and file a joint status report in fourteen (14) days containing: (1) any response to the Ninth

25   Circuit's order regarding the appropriate remedy, and (2) outlining how they intend to proceed in

26   _____

27   [1]    The proposed findings and recommendations directed TD Ameritrade to pay
     $1,013,056.06 to the District Court Clerk. (ECF No. 137 at 2.) The United States subsequently
28   amended its request to a payment amount of $1,012,047.08. (ECF No. 147 at 1.)

1 | this action, including whether Zinnel intends to file a renewed motion to transfer proceedings.

2 |      IT IS SO ORDERED.

3 | Date: August 8, 2025

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

3

# EXHIBIT 7

**FILED**

JUL 5 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

1  STEVEN ZINNEL
2  11 Verdin Lane
   Aliso Viejo, CA 92656
3
   In pro se
4

5           IN THE UNITED STATES DISTRICT COURT

6           EASTERN DISTRICT OF CALIFORNIA

7

8  UNITED STATES OF AMERICA,          Case No.: 2:11-cr-00234-TLN

9           Plaintiff,

10          v.                        **DEFENDANT STEVEN ZINNEL'S**
                                       **NOTICE OF MOTION AND MOTION FOR**
11 STEVEN ZINNEL,                      **JUDICIAL DETERMINATION OF AMOUNT**
                                       **DUE AND CONTINUED OBJECTIONS;**
12          Defendant.                 **MEMORANDUM OF POINTS AND**
                                       **AUTHORITIES AND EXHIBITS**
13

14

15                                     Hearing

16                                     Date:   August 4, 2022
                                       Time:   9:30 AM
17                                     Judge:  Troy L. Nunley
                                       Ct. Rm: 2
18

19

20      To the Court, the United States of America, and any interested persons and organizations:

21      **PLEASE TAKE NOTICE** that on August 4, 2022 at 9:30 AM in Courtroom 2, of the

22 United States District Court located in the Robert T. Matsui United States Courthouse, 501 I Street,

23 Sacramento, CA 95814, a hearing will be held on Defendant and **alleged** judgment debtor Steven

24 Zinnel's ("Zinnel") MOTION FOR JUDICIAL DETERMINATION OF AMOUNT DUE AND

25 CONTINUED OBJECTIONS.

26      The grounds for the motion are that after eight (8) years, for the first time on June 3, 2022

27 during a Settlement Conference on-the-record stipulation before Chief Magistrate Judge Kendall J.

28 Newman, Plaintiff United States of America ("government") claims and agrees on the record that

---

1  **the maximum amount Steven Zinnel owes** in the case entitled *United States v. Steven Zinnel*,

2  U.S.D.C. ED CA Case No. 2:11-cr-00234-TLN ("Criminal Case") is **$1,163,056.06** instead of

3  **$3,315,723.40;** an admission and stipulation by the government and its lawyers that the government

4  and its officers-of-the-court lawyers have been **overstating**, for almost a decade, the amount owed

5  by Steven Zinnel in the Criminal Case by at least **$2,152,667.34** which Zinnel maintains is a fraud

6  on the Court and blatant lying by the government lawyers including AUSA Matthew Dean Segal,

7  AUSA Audrey Benison Hemesath, former AUSA Kurt Didier (now practicing at The Law firm of

8  Knapp, Petersen & Clarke), and AUSA Lynn Trinka Ernce [1] to the Court, Steven Zinnel, David

9  Zinnel, and TD Ameritrade Clearing, Inc.

10  For over eight (8) years, Steven Zinnel has consistently and emphatically maintained that

11  the government has **marshalled $3,150,129.14 that the government has been sitting on for**

12  **almost a decade**, to be applied against $3,014,819.00 in court-ordered restitution, and fine

13  resulting in Zinnel being owed **$ 135,310.14** by the government for its over-collecting of the court-

14  ordered restitution and fine. This is a position that Zinnel has never waivered on including during

15  the Settlement Conference on June 3, 2022 before Chief Magistrate Judge Kendall J. Newman in

16  *United States v. Steven Zinnel / TD Ameritrade*, U.S.D.C. ED CA Case No. 2:21-mc-00098-TLN-

17  AC ("Misc. Case #1). The Settlement Conference parties, to wit; the United States of America,

18  Steven Zinnel, and David Zinnel, and their respective counsel, stipulated and agreed on the record

19  on June 3, 2022 that that maximum the United States of America may now seek in the underlying

20  Criminal Case is **$1,163,056.06** and Steven Zinnel continues to maintain he owes nothing and the

21  government and in fact, the government has over-collected **$135,310.14** that is owed by the

22  government to Steven Zinnel.

23  This Motion seeks a judicial determination, based on the government's recent judicial

24  admission [2], and before any appeal to the Ninth Circuit Court of Appeals, of the amount Steven

---

[1] Steven Zinnel will be reporting the Offending Attorneys conduct unbecoming a member of the State Bar and blatant misrepresentations to a Court to the State Bar of California and the Department of Justice's Office of Professional Responsibility.

[2] Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. The government lawyers previously citing *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

1    Zinnel actually owes in the criminal case entitled *United States v. Steven Zinnel*, U.S.D.C. ED CA

2    Case No. 2:11-cr-00234-TLN. Further, this court-filing is Steven Zinnel's continued objection that

3    he does not owe any money in the Criminal Case and in fact that the government has over-collected

4    **$135,310.14** that is owed by the government to Steven Zinnel.

5        This Motion is based on this Notice of Motion and Motion, the attached Memorandum of

6    Points and Authorities and Exhibits, the stipulation and agreement reached on the record during

7    Settlement Conference on June 3, 2022 before Chief Magistrate Judge Kendall J. Newman in *United*

8    *States v. Steven Zinnel / TD Ameritrade*, U.S.D.C. ED CA Case No. 2:21-mc-00098-TLN-AC

9    ("Misc. Case #1), ), all the filings in *United States v. Steven Zinnel / TD Ameritrade*, U.S.D.C. ED

10   CA Case No. 2:21-mc-00098-TLN-AC ("Misc. Case #1), all the filings in *United States v. Steven*

11   *Zinnel / David Zinnel, Castana Trust*, U.S.D.C. ED CA Case No. 2:21-mc-00143-TLN-AC ("Misc.

12   Case #2") , all the filings in *United States v. Steven Zinnel*, U.S.D.C. ED CA Case No. 2:11-cr-

13   00234-TLN, and any oral argument at the hearing.

14       NOTICE IS FURTHER GIVEN that Steven Zinnel continues his objection to the amount

15   the government claims is due in the underlying Criminal Case entitled *United States v. Steven Zinnel*,

16   U.S.D.C. ED CA Case No. 2:11-cr-00234-TLN.

17       NOTICE IS FURTHER GIVEN that Steven Zinnel continues his objection that District

18   Court Judge Troy L. Nunley cannot hear or decide this Motion and Objection because on May 23,

19   2021, over a year ago, Zinnel filed an OBJECTION to Judge Troy L. Nunley presiding over this

20   case, Misc. Case #1, #ECF #18, that has still not been ruled on by District Court Judge other than

21   Judge Troy L. Nunley.

22

23   Respectfully submitted,

24

25

26

27   _____    Dated: July 1, 2022
     Steven Zinnel

28

---

Steven Zinnel's Motion for Judicial Determination Amount Due and Continued Objections
- 3 -

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. KEY LAW

3       The right to adjudication before an Article III judge is an important constitutional right.

4   *United States v. Mortensen*, 860 F.2d 948, 950 (9th Cir. 1988); *Pacemaker Diagnostic Clinic of*

5   *America, Inc. v. Instromedix, Inc.*, 725 F.2d 537, 541 (9th Cir. 1984) (en banc). Critically, under the

6   magistrate judge system, even though a magistrate judge may be designated to determine most

7   pretrial matters directly, the parties can ask the district court to reconsider any such matter if "the

8   magistrate judge's order is clearly erroneous ·or contrary to law." 28 U.S.C. 636(b)(l)(A); *Louis*

9   *Branch v. D. Umphenour*, 936 F.3d 994 (9th Cir. 2019) (**reversing an Eastern District of**

10  **California judicial decision**). Under the magistrate judge system, no party will be denied

11  independent review by an Article III judge. *Louis Branch. Id.* This includes Zinnel who in fact is

12  the named defendant in this case. Any denial would  lack the requisite supervision by an Article III

13  officer.

14

15

## 2.  DOCKET CITATIONS IN THIS OBJECTION

16      On a clarification matter, as this Motion cites court-filings in five (5) different cases filed in

17  the United States District Court, Eastern District of California, (Sacramento) and the Superior Court

18  of California, County of Sacramento, Zinnel will refer to court-filings in the cases:

19

20      • *United States v. Steven Zinnel*, Case No. 2:11-cr-00234-TLN as "**Criminal Case**;"

21      • *United States v. Steven Zinnel / TD Ameritrade*, Case No. 2:21-mc-00098-TLN-AC as

22          "**Misc. Case #1**;"

23      • *United States v. Steven Zinnel / David Zinnel, Castana Trust* Case No. 2:21-mc-00143-

24          TLN-AC as "**Misc. Case #2**;"

25      • *United States v. Steven Zinnel / David Zinnel*, Case No. 2:19-mc-00242-TLN as

26          "**Subpoena Case**;"

27      • *In The Matter of The Castana Trust Dated March 4, 2009*, Superior Court of California,

28          County of Sacramento Case No. 34-2016-00200990-PR-TR-FRC as "**Probate Case**."

1  ## 3.  ANALYSIS

2  ### 3.1    Steven Zinnel does not owe any money in the underlying Criminal Case and
3  the government has actually over-collected $135,310.14 in the Criminal Case
4  that should be returned to Zinnel

5

6  During the Settlement Conference on June 3, 2022, on the record the parties stipulated that

7  Steven Zinnel maintains that Plaintiff has over-collected from Zinnel in the Criminal Case thus the

8  government owes Zinnel **$135,310.14.**  (Misc. Case #1. ECF nos. 128 & 134). The parties further

9  stipulated on the record that now, the absolute maximum, the government can attempt to collect in

10  the underlying Criminal Case and Misc. Cases #1 and #2 is capped at **$1,163,056.06.** (Misc. Case

11  #1. ECF nos. 128 & 134). The agreement reached between the parties at the Settlement Conference

12  on June 3, 2022 was that the Court would have an evidentiary hearing to make a judicial

13  determination, before Zinnel appeals to the Ninth Circuit, as to what amount the District Court

14  believes Zinnel owes in the Criminal Case and the stipulated range between the parties is between

15  a negative $135,310.14 and a positive $1,163,056.06 which is a **delta of $1,298,366.14** for either

16  the District Court or the Ninth Circuit Court of Appeals to adjudicate. During the June 3, 2022

17  Settlement Conference there was no agreement between the parties, especially Steven Zinnel, that

18  Plaintiff United States would simply be able to garnish the government's stipulated cap of

19  $1,163,056.06. It was never agreed to or contemplated by Steven Zinnel that after the June 3, 2022

20  Settlement Conference that either the Magistrate Court or the District Court would simply enter a

21  garnishment order for the government's stipulated cap of $1,163,056.06.

22

23  To provide background to the Court, Steven Zinnel's position, and preserve the appellate

24  record, Zinnel attaches hereto, as Attachment #1, STEVEN ZINNEL'S NON-CONFIDENTIAL

25  SETTLEMENT CONFERENCE STATEMENT submitted to Chief Magistrate Judge Kendall J.

26  Newman, and the parties, on or about May 31, 2022 and incorporates STEVEN ZINNEL'S NON-

27  CONFIDENTIAL SETTLEMENT CONFERENCE STATEMENT into this Objection as if fully

28  set forth herein.

1    On May 6, 2019, Zinnel was resentenced for a second time to the longest sentence in the

2  history of the United States for Bankruptcy Fraud. Zinnel's 152-month prison sentence exceeds the

3  longest sentence ever in a bankruptcy fraud case by 25%. (see Criminal Case, ECF #585-9, pgs. 2-

4  5).    Similarly situated bankruptcy fraud defendants were sentenced to an average of 19 months

5  imprisonment with the longest prison sentence being 78 months. (see Criminal Case ECF nos. 585-

6  7, pgs. 3-26 and 615, pgs. 11-14). Nevertheless, on May 15, 2019 the district court filed a Second

7  Amended Judgment in Criminal Case. (see Criminal Case, ECF #653).

8    The Second Amended Judgment ordered Zinnel to pay a Special Penalty Assessment of

9  $1,500, Victim Restitution of $2,513,319, and the statutory maximum fine of $500,000. (Criminal

10  Case, ECF #653). The total ordered is thus $3,014,819. A U.S. Courts Case Inquiry printed on

11  1/11/21 that reflects the Total Ordered was $3,014,819. (Misc. Case #1, ECF #84, pg. 21). U.S.

12  Courts Case Inquiry printout details a "balance" of $3,014,819 **because the government refuses to**

13  **deposit the marshalled $3,150,129.14 that the government has been sitting on for almost a**

14  **decade with the Court leaving $ 135,310.14 to be returned to Steve Zinnel**. The printout reflects

15  that since Zinnel has been incarcerated for almost nine (9) years now, the Bureau of Prisons has

16  collected $525 from Zinnel as of 1/11/21, through the Inmate Financial Responsibility Program

17  pursuant to the operative judgment. (Misc. Case #1, ECF #84, pg. 21).

18

19    In April of 2014, Zinnel and the government agreed and stipulated to restitution so that the

20  funds the government had marshalled to date, $3,025,209.86 as of March 3, 2014, would be

21  immediately paid to the restitution recipients including $150,000 to each of Zinnel's children so

22  they both had money for college. (see Criminal Case ECF #615, pg. 359; Misc. Case #1, ECF #84,

23  pg. 23). Both of Zinnel's children are college graduates now and they never received the money for

24  college **because the government refuses to deposit with the Court the marshalled $3,150,129.14**

25  **that the government has been sitting on for almost a decade.** On April 1, 2014, Zinnel's attorney

26  Suzanne Luban sent an email to government attorney AUSA Kevin Khasigian memorializing the

27  agreement. (see Misc. Case #1, ECF #84, pg. 21; Criminal Case, ECF #586-4, pg. 10). The same

28  day, Zinnel's attorney and two of the government attorneys entered into a formal Stipulation and

1   Order Re: Restitution that provided Zinnel's children with $150,000 each for college. (see Misc.

2   Case #1, ECF #84, pgs. 25-27; Criminal Case ECF nos. 343 and 586-4, pgs. 11-13).

3        When Zinnel moved to stay the sale of real property forfeited prior to sentencing, the

4   government opposed the motion to stay (Misc. Case #1, ECF #84, pgs. 29-32; Criminal Case ECF

5   nos. 314, 586-4., pgs. 2-5). Plaintiff's Opposition filed on March 3, 2014 stated:

6

7        "The only way that he would be prejudiced by forfeiture and liquidation of
         these assets would be that they could generate funds that the Attorney General

8        could in his discretion direct to Zinnel's victims (including his ex-wife).
         **Zinnel's spite is a sentencing factor, not a basis for a motion to stay."**

9        (Misc. Case #1, ECF #84, pg. 29)

10

11       The court-filed Opposition to the Motion to Stay was signed by and filed by Plaintiff's

12  lawyer AUSA Kevin Khasigian. (Criminal Case ECF #314).

13       Rule 11 of the *Federal Rules of Civil Procedure* imposes a duty upon lawyers who sign

14  court-filings. With each court-filing by a lawyer for the government, Rule 11 creates a certification

15  that the "legal contentions are warranted by existing law" and that "the factual contentions have

16  evidentiary support." Barrels of ink have been spilled in judicial opinions, scholarly journals, trade

17  publications, and legal education conferences on Rule 11 and Zinnel will not spill any more ink

18  regarding the Rule 11 certification and sanctions that may be imposed here.

19       In Plaintiff's Opposition to the Motion to Stay, AUSA Kevin Khasigian represented to the

20  court, restitution recipients, and Zinnel that any funds forfeited from Zinnel can be used to pay

21  restitution recipients and the government and its lawyers wanted to use forfeited funds to pay the

22  restitution recipients right away. However, contrary to the government lawyers' lofty

23  representations to the court about getting the victims paid, it took the government until March and

24  June of 2016 to sell the property. Therefore, it took the government 756 days to sell the property

25  that the government lawyers represented to the court on March 3, 2014 was "expensive to maintain."

26  (Misc. Case #1, ECF #84, pgs. 29-32; Criminal Case ECF nos. 615, 26 p. 359; 314).

27

28

1    Additionally, in Plaintiff's Opposition to Zinnel's Motion to Stay Forfeiture, AUSA Kevin

2    Khasigian wrote, and four government attorneys certified under Rule 11 the following:

3

4    "After all, forfeiture is designed to create a pool of assets from which victims can
     be reimbursed."

5
     "Delaying forfeiture will only prolong the ability of [Zinnel's] victims to receive
6    distributions and would serve to further harm [them]."
     See *United States v. Davis*, No. 07-cr-011, 2009 WL 2475340,
7    at *3 (D. Conn. June 15, 2009)."

8    "Simply put, the sooner the properties are sold the better off Zinnel's victims will

9    be." [Misc. Case #1, ECF #84, pg. 32; Criminal Case ECF #314, p. 5]

10

11   **The government lawyers have made judicial admissions that**

12   **they must be forced to abide by**. The Court must find the statements made by the

13   government lawyers in a court filing in the Criminal Case on March 3, 2014 (Criminal Case, ECF

14   #314; Misc. Case #1, ECF #84, pgs. 29-32) that the government will be applying the **$3,025,209.86**

15   marshalled by the government from Zinnel as of **March 3, 2014**, over eight (8) years ago, to pay

16   Zinnel's court-ordered financial obligations. See *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224,

17   226 (9th Cir. 1988) ("**Judicial admissions are formal admissions in the pleadings which have**

18   **the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of**

19   **the fact**") (emphasis added, internal citation omitted); id. at 227. ("[S]tatements of fact contained in

20

21   a brief may be considered admissions of the party in the discretion of the district court").

22   Further, four (4) government lawyers have represented and certified under Rule 11 in April

23   of 2014, that all forfeited funds in the Criminal Case would be used to pay the restitution recipients

24   including $150,000 to each of Zinnel's children for college. Zinnel's two children have now

25   graduated from college, but yet the government lawyers who are sitting on $3,149,604.14 in

26   marshalled funds and refuse to pay the restitution recipients. In aggravation, the same government

27   lawyers are attempting double-dip by trying to collect in State Court in this matter.

28

1    Four government lawyers have represented to Judge Troy Nunley, Zinnel's lawyers, and to

2    Zinnel in a court-filing April 2014 that "forfeiture is designed to create a pool of assets from which

3    victims can be reimbursed" and that the government lawyers wanted to get the restitution recipients

4    paid right away. (Misc. Case #1, ECF #84, pgs. 29-32; Criminal Case ECF #314).

5    The same government lawyers should be stopped from taking a contrary position here.

6    On September 21, 2016, Plaintiff's lawyer AUSA Kevin Khasigian sent an email to Zinnel's

7    attorney Suzanne Luban admitting Plaintiff United States had marshalled $3,149,604 in assets in

8    Zinnel's Criminal Case, but "**No funds have been applied to restitution or the fine**." (emphasis

9    added). (Misc. Case #1, ECF #84, pg. 34; Criminal Case ECF #586-4, p. 19). The September 16,

10   2016 email was a sentencing exhibit and was brought to the court's attention in Zinnel's Sentencing

11   Memorandum. (Criminal Case ECF nos. 586-4, p. 19, 615, p. 360).

12   After Zinnel received AUSA Khasigian's representation to another lawyer in an email

13   regarding the funds Plaintiff had marshalled for the restitution and fine, over the next year, Zinnel

14   wrote several letters to Plaintiff's lawyers trying to get Plaintiff United States to pay the restitution

15   recipients, including Zinnel's children paid. Plaintiff's counsel did not respond to Zinnel's letters.

16   Therefore, on December 5, .2017, Zinnel filed a Motion to Enforce the Judgment and Hold Plaintiff

17   and its lawyers in contempt of court for failing to pay the restitution recipients including Zinnel's

18   children $150,000 for college. (Misc. Case #1, ECF #84, pgs. 36-39; Criminal Case ECF nos. 409,

19   586-4, pgs 21-40).

20   The Department of Justice, Asset Forfeiture and Money Laundering Section ("AFMLS")

21   published in 2016 an "Asset Forfeiture Policy Manual" that is a compilation of policies governing

22   the Department of Justice Asset Forfeiture Program. The purpose of the Policy Manual is to provide

23   Department of Justice prosecutors with a reference manual containing the policies and procedures

24   of the DOJ. For his resentencing in May 2019, Zinnel filed relevant portions of the AFMLS "Asset

25   Forfeiture Policy Manual" as a sentencing O exhibit. (Criminal Case ECF #586-4, pgs. 58-68), In

26   this Misc. Case #1, Zinnel has previously filed with the Court the relevant portions of the Policy

1  Manual with Zinnel's hand-written notations on the pages. (Misc. Case #1, ECF #84, pgs. 41-51).

2  The DOJ "Asset Forfeiture Policy Manual" states in relevant part:

3      This procedure enables the Attorney General to transfer forfeited funds to a court for

4  satisfaction of a criminal restitution order. (Misc. Case #1, ECF #84, pg. 42; Criminal Case ECF

5  #586-4 p. 59). Potential victims must be notified of the opportunity to file a petition for remission. ·

6  (Misc. Case #1, ECF #84, pg. 43; Criminal Case ECF #586-4 p. 60).  The Restoration Procedures

7  enable the government to complete the forfeiture. This permits victims to obtain fair compensation

8  from the forfeited assets, in accordance with the court's restitution order. (Misc. Case #1, ECF #84,

9  pg. 46; Criminal Case, ECF #586-4 p. 63).  Payment will be made only in accordance with the

10  court's restitution order. (Misc. Case #1, ECF #84, pg. 48; Criminal Case, ECF #586-4 p. 65). Is a

11  prosecutor bound, ethically or otherwise, to forego forfeiture in favor of restitution? (Misc. Case #1,

12  ECF #84, pg. 50; Criminal Case, ECF #586-4 p. 67). Department of Justice policy is to collect and

13  marshal assets for the benefit of victims. (Misc. Case #1, ECF #84, pg. 50; Criminal Case, ECF

14  #586-4 p.67). Thus, a prosecutor who uses forfeiture tools as a means to provide remission or

15  restoration of assets to crime victims fulfills any obligation that the prosecutor may have under the

16  Justice for All Act to crime victims. (Misc. Case #1, ECF #84, pg. 51; Criminal Case, ECF #586-4

17  p. 68). The government uses forfeited property to recompense victims. (Misc. Case #1, ECF #84,

18  pg. 51; Criminal Case, ECF #586-4, pg. 68).  At Zinnel's resentencing in May of 2019, Zinnel

19  informed the Court and Plaintiff's counsel that the restitution, fine, and special assessment in this

20  case are paid. (Misc. Case #1, ECF #84, pgs. 53-55; Criminal Case, ECF #615, pgs. 359-360).

21

22      An attorney can never lie to another attorney Plaintiff's attorney AUSA Kevin Khasigian's

23  representations to Zinnel and his attorney in the September 21, 2016 email (Misc. Case #1, ECF

24  #84, pg. 34; Criminal Case ECF #586-4 p. 19) and Opposition to Motion to Stay (Misc. Case #1,

25  ECF #84, pgs. 29-32; Criminal Case ECF #314) are party-opponent admissions which is a hearsay

26  exception under *Federal Rules of Evidence* 801(d)(2). Further, the Court must find the statements

27  made by the government lawyers in the court filing in the Criminal Case on March 3, 2014 (Criminal

28  Case, ECF #314; Misc. Case #1, ECF #84, pgs. 29-32) as judicial admissions that now cannot be

1    changed. See *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("**Judicial**

2    **admissions are formal admissions in the pleadings which have the effect of withdrawing a fact**

3    **from issue and dispensing wholly with the need for proof of the fact**") (emphasis added, internal

4    citation omitted); id. at 227. ("[S]tatements of fact contained in a brief may be considered admissions

5    of the party in the discretion of the district court").

6        Not only is AUSA Kevin Khasigian an attorney, but he is a federal prosecutor with a

7    heightened duty to be honest. In the Criminal Case, for Zinnel's May 2019 resentencing, Zinnel

8    briefed that an attorney can never lie to another attorney. (Criminal Case ECF nos. 615, pgs. 244-

9    248; 586-7, pgs. 27-66).

10       • Rules of professional conduct impose a duty of candor to the court and opposing counsel;

11       • In its simplest application, Rule 4.l(a) merely codifies a simple proposition: although

12         **lawyers** are supposed to be zealous partisans of their clients, they **must draw the line**

13         **at lying. A lawyer must not make misrepresentations to a court or another lawyer**.

14         Rule 4.l (a) recodifies the traditional rule that a lawyer's word is his bond. (Criminal

15         Case ECF nos. 615, p. 245; 586-7, p. 3).

16       • The failure to disclose a material fact is an ethical violation ... A lawyer's responsibility

17         to act with candor and honesty necessarily requires disclosure of significant facts, even

18         though the disclosure might not be in the interest of the client. (Criminal Case ECF nos.

19         615, p. 245; 586-7, p. 43).

20

21       Additionally, in Misc. Case #2, Zinnel requested that the Court take Judicial Notice that in

22    the criminal case entitled *United States v. Keith Raniere*, U.S.D.C. ED NY case number 18-cr-204-

23    NGG, Plaintiff United States of America, by and through its Department of Justice attorneys, take

24    the position that criminal forfeited funds in the criminal case will be used to pay defendant Keith

25    Raniere's victims $3.4 million.  (Misc. Case #2, ECF #50).  Again, this is a Judicial Admission by

26    government lawyers that forfeited funds must be used to satisfy Zinnel's restitution windfall

27    recipients.

28

1    Here is the proper accounting of Criminal Case funds with the U.S. Attorney's Office and

2    the amount government lawyers for the United States have over-collected:

3        $3,150,129.14
         -$3,014,819.00
4        **$ 135,310.14 (the amount the government owes Zinnel)**

5    Thus, when the government filed its first garnishment action, Misc. Case #1, Steven Zinnel

6    owed no restitution, fine, or special assessment and Zinnel was actually owed the $135,310.14 the

7    government lawyers had over-collected.

8    However, after sleeping on its perceived rights for around seven (7) years, on April 2, 2021,

9    the government initiated its first garnishment proceeding, Misc. Case #1, by filing an

10   APPLICATION FOR WRIT OF CONTINUING GARNISHMENT (BANK, IRA, STOCKS OR

11   BROKERAGE ACCOUNTS). ("Application"). (Misc. Case #1, ECF #1). In its application, the

12   government lawyers misrepresented to the Court, Zinnel, and TD Ameritrade Clearing, Inc. that as

13   of April 2, 2021, in the underlying Criminal Case Zinnel owes $3,014,294.00 as of March 24, 2021.

14   (Misc. Case #1, ECF #1, pg. 2).  The government lawyers further misrepresented that Plaintiff

15   United States of America is entitled to litigation surcharge of ten percent (10%) of the amount of

16   the debt ($301,429.40) pursuant to 28 U.S.C. § 3011(a). The total amount sought by the government

17   in Misc. Case #1 was thus **$3,315,723.40** on April 2, 2021.

18   The government's math was as follows:

19

20   | Restitution | $2,513,319.00 |
     | Fine | $ 500,000.00 |
21   | Special Assessment | $ 1,500.00 |
     | 10% Litigation Surcharge | $ 301,429.40 |
22   | Less BOP IFRP payments | <$ 525.00> |
     | **Total Claimed Owed** | **$3,315,723.40** |

23

24   After stead fasting maintaining its specious position for over a year of constant litigation in

25   both Federal Court and State Probate Court, including the two garnishment cases Misc. Case #1 and

26   Misc. Case #2, during the Settlement Conference on June 3, 2022, government lawyer AUSA Lynn

27   Trinka Ernce, in a binding admission on behalf of her client Plaintiff United States of America,

28   admits that at least **$2,152,667.34 has magically disappeared.** Further, the government refuses to

1   explain why the $3,150,129.14 the government has marshalled in the Criminal Case as of September

2   16, 2016 has not satisfied ALL of the restitution, fine, and special assessment.  Nor has the

3   government provided any accounting. Nor does the government explain why they now think they

4   are entitled to a Litigation Surcharge pursuant to 28 U.S.C. § 3011(a) of an arbitrary **$150,000.00**

5   instead of the original claimed amount of **$301,429.40**.  Under the law and facts, the government is

6   not entitled to a Litigation Surcharge $301,429.00 because when the government filed this

7   garnishment action on April 2, 2021, Zinnel's outstanding debt was $0.00. This is because by March

8   3, 2014, over eight (8) years ago, the government had marshalled $3,025,209.86. (Criminal Case,

9   ECF #313; Misc. Case #1, ECF #84, pg. 34) and  by September 16, 2016, the government had

10   marshalled $3,149,604.14.

11        During the Settlement Conference on June 3, 2022, government lawyer AUSA Lynn Trinka

12   Ernce, stipulated on the record on behalf of her client Plaintiff United States of America, that the

13   maximum Plaintiff United States could attempt to collect is now capped at **$1,163.056.00.**

14        The government's math and cap is as follows:

15

16   Restitution                          $   513,056.06  (no explanation how govt. determined)
     Fine                                 $   500,000.00
17   Special Assessment                   $        0.00   (no explanation how govt. determined)
     10% Litigation Surcharge             $   150,000.00  (no explanation how govt. determined)
18   Total Maximum                        **$1,163,056.06**
     The government
19   Can argue for

20

21        Therefore, Plaintiff United States of America has stipulated on the record that its position is

22   restitution is reduced from $2,513,319.00 to $513,056.06; a **$2,000,262.94 reduction without**

23   **explanation or an accounting**, Special Assessment is reduced from $1,500 to $0.00; a $1,500.00

24   reduction without explanation or an accounting, and the claimed 10% Litigation Surcharge is

25   reduced from 301,429.40 to **$150,00.00 without explanation or accounting**.

26        Again, after taking an absurd position for over a year in garnishment litigation, Plaintiff

27   United States of America, admits that at least **$2,152,667.34 has magically disappeared** from the

28   alleged amount owing by Zinnel.  Zinnel also understands that recently government lawyer AUSA

1   Lynn Trinka Ernce has made an admission on behalf of her client that *the Attorney General (acting*

2   *through the DOJ Money Laundering and Asset Section) exercised discretion to transfer some*

3   *forfeited funds to **some victims**. See 28 C.F.R. § 9.8;* an admission previously made by another

4   government lawyer on March 3, 2014. (see Criminal Case ECF #314). **The Court should ask why**

5   for many years now, the government lawyers, including AUSA Lynn Trinka Ernce, have

6   represented to the Court that Zinnel's outstanding debt was $3,014,294.00?

7          **Zinnel requests that Court order the government, including it lawyer AUSA Lynn**

8   **Trinka Ernce, provide Zinnel and the Court with an accounting of all funds that have been**

9   **recently paid to the restitution windfall recipients and provide Zinnel with all documents that**

10  **evidence said payments forthwith**. Further, Zinnel requests that the government lawyers explain

11  why "some victims" were paid, but not all.

12         The District Court should **hold an evidentiary hearing to make a judicial determination**

13  on how much Plaintiff United States owes Zinnel or how much Zinnel owes in the underlying

14  Criminal Case and how much the government can garnish in Misc. Case #1 and Misc. Case #2.

15

16

17         **3.2     The United States is not entitled to any 10% Litigation Surcharge and the**
           **$150,000 the United States now claims it is entitled to is pulled from thin air**

18

19

20         Zinnel incorporates all the law and facts contained in Section 3.1 above as of fully set forth

21  herein.

22         Even though Zinnel owed nothing in the Criminal Case when this garnishment action, Misc.

23  Case #1, was filed on April 2, 2021, for over a year of constant litigation in both Federal Court and

24  State Probate Court, the government lawyers have misrepresented that Plaintiff United States of

25  America is entitled to litigation surcharge of ten percent (10%) of the amount of the debt

26  ($301,429.40) pursuant to 28 U.S.C. § 3011(a). The government evidently calculated this fictitious

27  amount by taking 10% of an alleged outstanding balance in the Criminal Case for restitution, fine,

28  and special assessment of $3,014,294.00.

1  During the Settlement Conference on June 3, 2022, on the record the parties stipulated that

2  Steven Zinnel maintains that Plaintiff is not entitled to any 28 U.S.C. §3011(a) Litigation Surcharge

3  and the maximum the government can claim is $150,000. (Misc. Case #1. ECF nos. 128 & 134).

4  The agreement reached between the parties at the Settlement Conference on June 3, 2022

5  was that the Court would have an evidentiary hearing to make a judicial determination, before Zinnel

6  appeals to the Ninth Circuit, as to what amount the District Court believes Zinnel owes in 28 U.S.C.

7  §3011(a) Litigation Surcharge.

8  During the Settlement Conference on June 3, 2022, the government provided no explanation

9  or rational for its claim now that it is entitle to $150,000 surcharge. **It appears the government**

10  **has pulled the $150,000 figure out of thin air**.

11  If Zinnel is correct that he owes nothing in the underlying Criminal Case, the 10%, 28 U.S.C.

12  §3011(a) Litigation Surcharge, is zero. If Zinnel owes a $500,000 fine, the 10% 28 U.S.C. §3011(a)

13  Litigation Surcharge is $50,000. If Zinnel owes $513,056.06 in restitution and a $500,000 fine, for

14  a total of $1,013,056.06, the 10%, 28 U.S.C. §3011(a) Litigation Surcharge, is $101,305.60. There

15  is no way it can be $150,000 as government lawyers claim and a Magistrate Judge recommends.

16  The District Court should hold an evidentiary hearing to make a judicial determination on

17  how much 3011(a) Litigation Surcharge Plaintiff United States is entitled to if any.

18

19  **3.3    Objection to Judge Troy L. Nunley ruining on any matter in this case**

20  On May 3, 2021, Zinnel filed an Objection to Judge Troy L. Nunley presiding over the

21  garnishment case. (Misc. Case #1, ECF #18). To date, over a year has passed since Zinnel's

22  objection, but his objection has never been ruled on. Zinnel continues his objection to Judge Troy

23  L. Nunley making any rulings in this case including ruling this motion.

24

25  Fighting for what is Right...Seeking Justice in an unjust case,

26

27

28

Steven Zinnel, In Pro Se                                Dated:  July 1, 2022

# EXHIBIT 8

**FILED**

**AUG 19 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

STEVEN ZINNEL
11 Verdin Lane
Aliso Viejo, CA 92656

In pro se

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN ZINNEL,<br><br>Defendant. | Case No.: 2:11-cr-00234-TLN<br><br>**DEFENDANT STEVEN ZINNEL'S REPLY TO OPPOSITION [ECF #713] TO MOTION FOR JUDICIAL DETERMINATION OF AMOUNT DUE**<br><br><u>Hearing</u><br><br>Taken under submission<br><br>Judge:  Troy L. Nunley |

Defendant Steven Zinnel ("Zinnel") hereby Replies to the Government's Opposition to Motion for Judicial Determination of Amount Due (ECF #713) as follows:

On a clarification matter, as this Reply cites court-filings in different cases filed in the United States District Court, Eastern District of California, (Sacramento), Zinnel will refer to court-filings in the cases:

- *United States v. Steven Zinnel*, Case No. 2:11-cr-00234-TLN as "**Criminal Case**;"

- *United States v. Steven Zinnel / TD Ameritrade*, Case No. 2:21-mc-00098-TLN-AC as "**Misc. Case #1**;"

- *United States v. Steven Zinnel / David Zinnel, Castana Trust* Case No. 2:21-mc-00143-TLN-AC as "**Misc. Case #2**;"

1    Further, so the appellate record is clear, it must be clear that biased Judge Troy L. Nunley
2  ruled on the government's motion for extension of time to file an opposition the same day on July
3  29, 2022 (see Criminal Case ECF nos. 710 & 710), but yet biased Judge Troy L. Nunley has not
4  ruled on Zinnel's Motion to E-File filed on July 6, 2022; 40 days ago.  (See Criminal Case, ECF
5  #706).

6                                    **ARGUMENT**

7    The government ignores that at any time, alleged judgment debtor Zinnel can and will, file
8  motions for a judicial determination for the amount outstanding in this Criminal Case.  The
9  government cites no authority to the contrary.  The government is correct that Zinnel filed a Notice
10  of Appeal in the first Garnishment case that is still pending.  (See Misc. Case #1, ECF nos. 151, 152
11  & 153).  Zinnel is quite confident that District Court Judge Troy L. Nunley and Magistrate Judge
12  Allison Claire will be completely reversed on appeal by the Ninth Circuit Court of Appeals.  As
13  Zinnel told Judge Troy L. Nunley and the government lawyers at his resentencing in May 2019, this
14  case could have and would have ended in May 2019 if the right sentence of time-served was
15  imposed, but it could and would be litigated for the next decade or so if necessary.  Zinnel will be
16  filing a 28 U.S.C. 2255 to vacate the convictions in this Criminal Case, within the statutory time
17  provided, and seek again to seek the Disqualification Judge Troy L. Nunley under 28 U.S.C. § 455
18  based on his bias against Zinnel and in favor of the government  and Zinnel will fully prosecute the
19  pending appeal in Misc. Case #1. (See Misc. Case #1, ECF nos. 151, 152 & 153).

20    Nevertheless, Zinnel's Motion for Judicial Determine of Amount Due in this Criminal Case
21  remains ripe for a court order **and** an appeal of that order.

22    On July 18, 2022, Judge Troy L. Nunley issued an order, **albeit erroneously**, titled "Order
23  Adopting Findings and Recommendations for Final Order of Garnishment." (See Misc. Case #1,
24  ECF 149 and Exhibit A attached hereto). wherein Judge Nunley Found and Ordered in relevant part:

26    • TD Ameritrade Clearing, Inc. ("Garnishee") shall pay the Clerk of the United States
         District Court $1,012,047.08 of the funds held by Garnishee within fifteen (15) days
27       of the filing of this Order [by August 2, 2022];

- Garnishee shall pay $150,000.00 to the United States Department of Justice via a single payment within fifteen (15) days of the filing of this Order and send the payment in the form of a cashier's check, money order, or company draft made payable to "United States Department of Justice" [by August 2, 2022];

- The garnishment shall terminate when Garnishee has paid the **$1,162,047.08** as directed in paragraphs 2-4 above [by August 2, 2022];

- The Court shall retain jurisdiction to resolve matters through ancillary proceedings in the case, if necessary. (see Misc. Case #1, ECF 149).

As detailed in Zinnel's Motion for Judicial Determination, during the Settlement Conference on June 3, 2022 in Misc. Case #1, the government stipulated that the Maximum that Zinnel owes in this Criminal Case, subject to further litigation and judicial review, is **$1,162,047.08.** (see Misc. Case #1, ECF #134).

All parties agree that there was sufficient funds in the subject TD Ameritrade Clearing, Inc. IRA of Ardith Ferris to pay the $1,162,047.08 ordered. TD Ameritrade Clearing, Inc. was ordered to pay the government **$1,162,047.08** by August 2, 2022. (See Misc. Case #1, ECF 149 and Exhibit A attached hereto).

As of the date of this Reply of August 15, 2022, thirteen (13) days have past since the August 2, 2022 court-ordered deadline that TD Ameritrade, Inc, was ordered to pay the **$1,162,047.08** which fully satisfies the Maximum Amount the government agreed on the record is owed in the Criminal Case. As stated on the record, during the June 3, 2022 Settlement Conference, Zinnel maintains, and continues to litigate that he does not owe $1,162,047.08 and in fact the government owes Zinnel **$ 135,310.14** because the government has over-collected of the court-ordered restitution and fine.

Notwithstanding, Zinnel's current Motion (ECF# 705) seeks a judicial determination that as of August 15, 2022, the government has collected the absolute maximum that it agreed on the record on June 3, 2022 that is owed of **$1,162,047.08** and that **as of August 15, 2022, Zinnel owes no restitution, fine, forfeiture, or special assessment in this Criminal Case**.

1    Fighting for what is Right...Seeking Justice in an unjust case,

2

3

4

5    Steven Zinnel, In Pro Se                                Dated: August 15, 2022

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply to Opposition [ECF #713] to Motion for Judicial Determination of Amount Due
- 4 -

# EXHIBIT 9

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                    No. 2:11-cr-00234-TLN

12                   Plaintiff,

13         v.                                       **ORDER**

14    STEVEN ZINNEL,

15                   Defendant.

16

17         The Court has reviewed Defendant's Motion for Judicial Determination of Amount Due

18    and related briefing thereto. (ECF No. 705.) The Court DENIES Defendant's motion as it is

19    duplicative of a motion Defendant filed in his related garnishment action that the Court already

20    resolved and Defendant appealed. (*See* 2:21-mc-00098-TLN-AC.)

21         The Court has also reviewed Defendant's *Ex Parte* Application to Use the Court's

22    Electronic Filing System. (ECF No. at 706.) Under the Court's Local Rules, any person

23    appearing *pro se* may not use electronic filing except with permission of the assigned Judge or

24    Magistrate Judge. E.D. Cal. L.R. 133(b)(2). Defendant has not persuaded the Court that there is

25    good cause to allow him to use the Court's electronic filing system. The Court also notes that an

26    identical request was denied in the related garnishment action. Accordingly, the Court DENIES

27    Defendant's *ex parte* application.

28    ///

                                                   1

1          IT IS SO ORDERED.

2    **DATED:  September 8, 2022**

3                                                      Troy L. Nunley
                                                       United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT 10

Case 2:11-cr-00234-TLN    Document 585-5    Filed 02/21/19    Page 65 of 99

Administrative Office of the United States Courts,
Annual Reports of the Director

Criminal Defendants Sentenced After Conviction by Offense,
Table D-5

**Bankruptcy Fraud**

| Year | Total Defendants Sentenced | Total Imprisoned / Percent Imprisoned | 6 Months or Less | 7 to 12 Months | Sweet Spot<br>13 to 36 Months | 37 to 72 Months | 73 to 144 Months | 145 Months or More | Median Sentence in Months | Ex. Nos. |
|------|------|------|------|------|------|------|------|------|------|------|
| 2010 | 59 | 33 / 55% | 8 | 5 | 11 | 7 | 0 | 0 | 22 | 1328 |
| 2011 | 76 | 46 / 60% | 8 | 7 | 18 | 9 | 2 | 0 | 25 | 1334 |
| 2012 | 57 | 34 / 59% | 4 | 6 | 14 | 6 | 0 | 0 | 21 | 1340 |
| 2013 | 53 | 27 / 50% | 4 | 4 | 11 | 5 | 1 | 0 | 24 | 1346 |
| 2014 | 54 | 35 / 64% | 2 | 7 | 17 | 5 | 0 | 1<br>[Zinnel - 212] | 18 | 1352 |
| 2015 | 65 | 36 / 55% | 6 | 7 | 17 | 4 | 0 | 0 | 18 | 1358 |
| 2016 | 53 | 32 / 60% | 5 | 8 | 8 | 4 | 1 | 0 | 12 | 1364 |
| 2017 | 53 | 26 / 49% | 10 | 2 | 9 | 4 | 0 | 0 | 12 | 1371 |

470

59 / year
is the average

**19 months**
is the
average of
median
for 8 years

Ex. 110

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that at the date of service, I was over the age of 18. I further certify that on

3

the date specified executed below, I served the foregoing document(s) on the following persons

4

and/or organization:

5

| | |
|---|---|
| Lynn Trinka Ernce<br>United States Attorney's Office<br>501 I Street, Suite 10-100<br>Sacramento, CA 95814<br><br>Email: lynn.trinka.ernce@usdoj.gov<br><br>Attorneys for the United States of America | Kenneth Gregory Peterson<br>Boutin Jones Inc.<br>555 Capitol Mall, Suite 1500<br>Sacramento, CA 95814<br><br>Email: gpeterson@boutinjones.com<br><br>Attorney for Michael Brumbaugh, the<br>*Castana Trust*, and the *Estate of David P.*<br>*Zinnel* |
| Melanie Vartabedian, Esq.<br>Ballard Spahr LLP<br>201 South Main Street, Suite 800<br>Salt Lake City, UT 84111-2221<br>Email: vartabedianm@ballardspahr.com<br><br>Attorneys for TD Ameritrade Clearing, Inc | Honorable Kendall J. Newman<br>Courtroom 25, 8th floor<br>United States Courthouse<br>501 I Street<br>Sacramento, CA 95814 |
| Kimberly A. Sanchez, Acting U.S. Attorney<br>United States Attorney's Office<br>501 I Street, Suite 10-100<br>Sacramento, CA 95814<br>Attorneys for the United States of America | |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

I further certify I served the foregoing document(s) by the following method checked:

21

☑ **BY MAIL**: I deposited such envelope in a U.S. Mail receptacle, with postage prepaid,
and addressed as above described.

22

23

Executed on **August 19, 2025**, at Aliso Viejo, California. I certify under penalty of perjury under
the laws of the United States of America that the foregoing is true and correct.

24

25

26

*Derian Eidson*

27

Derian Eidson
11 Verdin Lane

28

Aliso Viejo, CA 92656